UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

　　VS.

HORTENCIA MEDELES-ARGUELLO – 01
aka RAQUEL MEDELES GARCIA aka TENCHA

DELIA DÍAZ – 02

JOSÉ L. URAGA aka WICHO – 03

ALFONSO DÍAZ-JUAREZ aka PONCHO aka EL GRENAS – 04

JORGE ANTONIO TELOXA-BARBOSA aka ELI – 05

EDUARDO GUZMÁN GONZALES – 06
aka MIGUEL ROJAS aka EL PANTERA

ALBERTO MENDEZ FLORES aka ARDILLA – 07

GUADALUPE VALDEZ LUGO aka LUPE – 08

LILIA MEDELES CERDA aka LILLY – 09

ABEL MEDELES aka CHITO – 10

ODELIA HERNÁNDEZ – 11

TALAT CRIPPIN aka CHACHO – 12

DIANA MEDELES GARCÍA aka DIANA GARCIA MARQUEZ – 13

GRACIELA MEDELES OCHOA – 14

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CRIMINAL NO. 10-10-13

1 3 CR 628
UNSEALED
PER ARREST

Public access to this document are
to ... ... ... ... are
prohibited by court order.

United States Courts
Southern District of Texas
FILED

OCT 09 2013

David J. Bradley, Clerk of Court

## CRIMINAL INDICTMENT

THE GRAND JURY CHARGES THAT:

**INTRODUCTION**

At all times material herein:

1.      The Defendants, HORTENCIA MEDELES-ARGUELLO aka RAQUEL MEDELES GARCIA aka TENCHA, DELIA DÍAZ, JOSÉ L. URAGA aka WICHO, ALFONSO DÍAZ-JUAREZ aka PONCHO aka EL GRENAS, JORGE ANTONIO TELOXA-BARBOSA aka ELI, EDUARDO GUZMÁN GONZALES aka MIGUEL ROJAS aka EL PANTERA, ALBERTO MENDEZ FLORES aka ARDILLA, GUADALUPE VALDEZ LUGO aka LUPE, LILIA MEDELES CERDA aka LILLY, ABEL MEDELES aka CHITO, ODELIA HERNÁNDEZ, TALAT CRIPPIN aka CHACHO and DIANA MEDELES GARCÍA aka DIANA GARCIA MARQUEZ owned, controlled, participated in, and/or operated bars/brothels where the Defendants profited by charging entrance fees and selling drinks to customers, and also profited by offering young, undocumented Mexican women and girls for prostitution on the premises of the bars/brothels and at locations nearby for the Defendants' financial benefit.

2.      The Defendants, HORTENCIA MEDELES-ARGUELLO aka RAQUEL MEDELES GARCIA aka TENCHA, DELIA DÍAZ, JOSÉ L. URAGA aka WICHO, ALFONSO DÍAZ-JUAREZ aka PONCHO aka EL GRENAS, JORGE ANTONIO TELOXA-BARBOSA aka ELI, EDUARDO GUZMÁN GONZALES aka MIGUEL ROJAS aka EL PANTERA, ALBERTO MENDEZ FLORES aka ARDILLA, GUADALUPE VALDEZ LUGO aka LUPE, LILIA MEDELES CERDA aka LILLY, ABEL MEDELES aka CHITO, ODELIA HERNÁNDEZ and TALAT CRIPPIN aka CHACHO and, operated the bar portion of the enterprise in the downstairs area of their establishments.   In the upstairs area they provided rooms for customers to engage in acts of prostitution.

3.      The Defendants, HORTENCIA MEDELES-ARGUELLO aka RAQUEL

2

MEDELES GARCIA aka TENCHA, DELIA DÍAZ, JOSÉ L. URAGA aka WICHO, ALFONSO DÍAZ-JUAREZ aka PONCHO aka EL GRENAS, JORGE ANTONIO TELOXA-BARBOSA aka ELI, EDUARDO GUZMÁN GONZALES aka MIGUEL ROJAS aka EL PANTERA, ALBERTO MENDEZ FLORES aka ARDILLA, GUADALUPE VALDEZ LUGO aka LUPE, LILIA MEDELES CERDA aka LILLY, ABEL MEDELES aka CHITO, ODELIA HERNÁNDEZ and TALAT CRIPPIN aka CHACHO and relied on pimps known as "padrotes," to recruit, smuggle, and supply the young, undocumented Mexican women and girls to engage in acts of prostitution at the Defendants' bars/brothels and to generate proceeds for Defendants' illegal commercial sex enterprise.

4.      The undocumented Mexican women and girls provided to the Defendants for prostitution at the Defendants' bars/brothels included minors under the age of 18.      The Defendants knowingly and intentionally offered girls under the age of 18 for prostitution, charging premium prices to customers to engage in commercial sex acts with minor girls.

5.      The undocumented Mexican women and girls provided to the Defendants for prostitution at the Defendants bars/brothels included women and girls who were compelled into commercial sex acts through the use of force, fraud, coercion, and a combination of such means, including the use of locked rooms to maintain control over the young women and girls and the use of violence to punish and control the young women and girls.

6.      HORTENCIA MEDELES-ARGUELLO aka RAQUEL MEDELES GARCIA aka TENCHA (hereinafter "TENCHA") is the matriarch of this criminal organization.      DELIA DÍAZ, DIANA MEDELES GARCÍA aka DIANA GARCIA MARQUEZ and GRACIELA MEDELES OCHOA are TENCHA's daughters.      Her siblings include ABEL MEDELES aka CHITO and LILIA MEDELES CERDA aka LILLY.      ODELIA HERNÁNDEZ is LILIA

MEDELES CERDA aka LILLY's daughter and TENCHA's niece. TALAT CRIPPIN aka CHACHO is married to TENCHA's granddaughter. GUADALUPE VALDEZ LUGO aka LUPE is TENCHA's childhood friend.   JOSÉ L. URAGA aka WICHO, ALFONSO DÍAZ-JUAREZ aka PONCHO aka EL GRENAS, JORGE ANTONIO TELOXA-BARBOSA aka ELI, EDUARDO GUZMÁN GONZALES aka MIGUEL ROJAS aka EL PANTERA and ALBERTO MENDEZ FLORES aka ARDILLA are TENCHA's employees and/or business partners.

7.     The following are bars and bars/brothels owned and operated by HORTENCIA MEDELES-ARGUELLO aka RAQUEL MEDELES GARCIA aka TENCHA: LAS FLORES was TENCHA's original bar/brothel located at 2027 McCarty Street, Houston, Texas, LAS PALMAS, a bar, located at 4660 Telephone Road, Houston, Texas, LA FERIA, a bar/brothel located at 5612 Telephone Road, Houston, Texas, and LAS PALMAS II, a bar/brothel, located at 5618 Telephone Road, Houston, Texas.

8.     The individual defendants are identified as follows:

9.     HORTENCIA MEDELES-ARGUELLO aka RAQUEL MEDELES GARCIA aka TENCHA owned, controlled, participated in and/or operated a bar/brothel known as LAS PALMAS II located at 5618 Telephone Road as well as a bar/brothel known as LA FERIA located at 5612 Telephone Road, both located in Houston, Texas.

10.    To conceal the illegal proceeds derived from the sex trafficking enterprise, TENCHA procured or caused to be procured cashier's checks in amounts less than $10,000.00 in order to avoid the bank's financial reporting requirements.

11.    DELIA DIAZ (hereinafter "DELIA"), TENCHA's daughter, worked at LAS PALMAS II located at 5618 Telephone Road in Houston, Texas, behind the bar counter selling beer.   She also would bring customers to the second floor to have sex with female minors who

4

she knew were kept in a locked room for that purpose.

12.     TENCHA placed the physical property where the bar/brothel is located in DELIA's name in order to conceal the true ownership and from where the funds were derived.

13.     To conceal the illegal proceeds derived from the sex trafficking enterprise, DELIA procured or caused to be procured cashier's checks in amounts less than $10,000.00 in order to avoid the bank's financial reporting requirements.

14.     JOSÉ L. URAGA aka WICHO (hereinafter "WICHO"), an employee of TENCHA between 1999 to 2004, worked on the second floor of LAS PALMAS II, where the prostitution rooms were, providing condoms.

15.     WICHO would also beat the minor females when a customer was dissatisfied with the commercial sex act provided by the minor.   WICHO occasionally brought the special clients to the second floor where TENCHA or her daughter DELIA would be waiting, to allow the clients to choose which minor they wanted out of the group locked up in the room.   In or about April 2013, WICHO sold a fake social security card and Texas Identification Card to an employee of LAS PALMAS II.   Victim MR identified WICHO from a photograph as the male who charged for condoms on the second floor of LAS PALMAS II.   Victim MDG also identified WICHO as the person selling the condoms and beating the minor females.

16.     ALFONSO DIAZ-JUAREZ aka PONCHO aka EL GRENAS (hereinafter "PONCHO"), an illegal alien as well as a padrote (pimp), made an agreement to rent LAS PALMAS II from TENCHA, for the purpose of continuing the commercial sex enterprise.

17.     JORGE ANTONIO TELOXA-BARBOSA aka ELI (hereinafter "JORGE"), EDUARDO GUZMAN GONZALEZ aka MIGUEL ROJAS aka EL PANTERA (hereinafter "PANTERA"), ALBERTO MENDEZ FLORES aka ARDILLA (hereinafter "ARDILLA"), all

illegal aliens as well as a padrotes (pimps), rented LAS PALMAS II from TENCHA and continued to run it as a bar/brothel using the new name of NUEVO AMANECER for the purpose of continuing the commercial sex enterprise. Besides collecting money for renting the bar/brothel, TENCHA continued to come by NUEVO AMANCER to inspect the premises, collect money from the pool tables, juke box, and gaming machines as well as placing ads in a local paper to hire an employee to work in the bar/brothel.

18.     GUADALUPE VALDEZ LUGO aka LUPE (hereinafter "LUPE") served as a manager for the bar/brothel named LAS PALMAS II located at 5618 Telephone Road in Houston, Texas.   To conceal illegal proceeds derived from the sex trafficking enterprise, LUPE procured a cashier's check in an amount less than $10,000.00 in order to avoid the bank's financial reporting requirements.

19.     LILIA MEDELES CERDA aka LILLY (hereinafter "LILIA"), TENCHA's sister, worked at LAS PALMAS II selling condoms and cleaning the prostitution rooms.

20.     ABEL MEDELES aka CHITO (hereinafter "CHITO"), TENCHA's brother, worked for TENCHA collecting money in the parking lot of LAS PALMAS II.

21.     CHITO collected the fee for parking from customers, provided security for the parking lot premises, and at one point, collected the fee charged for acts of prostitution performed off the premises of LAS PALMAS II at nearby hotels.

22.     CHITO also kept track when females arrived at LAS PALMAS II so TENCHA could assess late fees.

23.     To conceal the illegal proceeds derived from the sex trafficking enterprise, CHITO procured a cashier's check in an amount less than $10,000.00 in order to avoid the bank's financial reporting requirements.

24.     ODELIA HERNANDEZ (hereinafter "ODELIA"), was TENCHA's niece.   She worked at LAS PALMAS II selling alcohol until she was charged with selling alcoholic beverages without a liquor license.   In addition to selling alcoholic beverages and sodas, she also provided the condoms to the women and girls prostituted at LAS PALMAS II.

25.     TALAT CRIPPIN aka CHACHO (hereinafter "CHACHO") worked for TENCHA at LAS PALMAS II collecting money for parking, watching over the vehicles, serving as a lookout, and performing other duties at the bar/brothel at the direction of TENCHA.

26.     To conceal the illegal proceeds derived from the sex trafficking enterprise, CHACO procured a cashier's check in an amount less than $10,000.00 in order to avoid the bank's financial reporting requirements.

27.     RL (hereinafter "RL"), an unindicted co-conspirator, whose identity is known to the Grand Jury, worked at LAS PALMAS II as a security guard for TENCHA.

28.     AC (hereinafter "AC"), an unindicted co-conspirator, whose identity is known to the Grand Jury, an illegal alien, worked at LAS PALMAS II charging the females for the condoms, as well as working in the parking lot, and executing other duties inside the bar/brothel as directed by TENCHA.

29.     DIANA MEDELES GARCIA aka DIANA GARCIA MARQUEZ (hereinafter "DIANA"), TENCHA'S daughter,   was a bookkeeper for TENCHA'S bars/brothels and procured or caused to be procured cashier's checks in amounts less than $10,000.00 in order to avoid the bank's financial reporting requirements, thus concealing the true nature of the proceeds derived from the illegal commercial sex enterprise.

30.     GRACIELA MEDELES OCHOA (hereinafter "GRACIELA"), TENCHA'S daughter, procured cashier's checks in amounts less than $10,000.00 in order to avoid the bank's

financial reporting requirements, thus concealing the true nature of the proceeds derived from the illegal commercial sex enterprise.

31.     Witness "G.Q.", an undocumented alien, whose identity is known to the Grand Jury, was a Mexican female, born in October 1976.

32.     Victim "M.D.G.", an undocumented alien, whose identity is known to the Grand Jury, was a minor Mexican female, born in January 1983.

33.     Witness "A.H.", an undocumented alien, whose identity is known to the Grand Jury, was a Mexican male, born in September 1980.

34.     Victim "R.M.G.", an undocumented alien, whose identity is known to the Grand Jury, was a Mexican female, born in January 1978.

35.     Victim "I.F.", an undocumented alien, whose identity is known to the Grand Jury, was a Mexican female, born in May 1982.

36.     Victim "A.A.", an undocumented alien, whose identity is known to the Grand Jury, was a minor Mexican female, born in November 1988.

37.     Victim "E.V.", an undocumented alien, whose identity is known to the Grand Jury, was a Mexican female, born in December 1974.

38.     Victim "R.A.", an undocumented alien, whose identity is known to the Grand Jury, was a minor Mexican female, born in June 1989.

39.     Victim "G.P.", an undocumented alien, whose identity is known to the Grand Jury, was a Mexican female, born in May 1988.

40.     Victim "A.V.", an undocumented alien, whose identity is known to the Grand Jury, was a Mexican female, born in June 1991.

41.     Victim "E.E.", an undocumented alien, whose identity is known to the Grand

Jury, was a Honduran female, born in May 1987.

42.     Victim "L.L.", an undocumented alien, whose identity is known to the Grand Jury, was a minor Mexican female, born in September 1994.

43.     Victim "M.R.", an undocumented alien, whose identity is known to the Grand Jury, was a minor Mexican female, born in July 1987.

44.     Victim "A.L.", an undocumented alien, whose identity is known to the Grand Jury, was a minor Mexican female, born in June 1996.

45.     Witness Confidential Human Source (CHS 1) is a witness to the sex trafficking and smuggling conspiracies.

46.     Witness Confidential Human Source (CHS 2) is a witness to the sex trafficking and smuggling conspiracies.

## COUNT ONE

### Sex Trafficking Conspiracy

**[Title 18, Sections 1591 and 1594(c)]**

A.     **INTRODUCTION**

The introductory allegations as set forth in paragraphs 1 through 46 are re-alleged and incorporated as if fully set out herein.

B.     **THE CONSPIRACY**

Beginning in or about the summer of 1999, and continuing until the date of this indictment, in the Houston Division of the Southern District of Texas and elsewhere, defendants,

**HORTENCIA MEDELES-ARGUELLO aka
RAQUEL MEDELES GARCIA aka TENCHA**

**DELIA DÍAZ**

**JOSÉ L. URAGA aka WICHO**

9

**GUADALUPE VALDEZ LUGO aka LUPE**

**ALFONSO DÍAZ-JUAREZ aka PONCHO aka EL GRENAS**

**LILIA MEDELES CERDA aka LILLY**

**ABEL MEDELES aka CHITO**

**ODELIA HERNANDEZ**

**TALAT CRIPPIN aka CHACHO**

together and with others known and unknown to the Grand Jury, did knowingly conspire, combine, confederate and agree, to commit offenses against the United States; that is:

a.     To, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means young women and girls, and to benefit, financially and by receiving a thing of value, from participation in a venture which engaged in such acts, knowing and in reckless disregard of the fact that force, threats of force, fraud, coercion and combination of such means, as defined in Title 18, United States Code, Section 1591, would be used to cause the young women and girls to engage in a commercial sex act, contrary to Title 18, United States Code, Section 1591 (a), and

b.     To, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means young girls, and benefit, financially and by receiving a thing of value, from participation in a venture which engaged in a commercial sex act, knowing and in reckless disregard of the fact that such girls had not attained the age of 18 years and knowing that they would be caused to engage in a commercial sex act, contrary to Title 18, United States Code, Section 1591.

In violation of Title 18, United States Code, Sections 1591 and 1594(c).

C.      **THE OBJECT**

It was the object of the conspiracy to profit by providing, obtaining, and maintaining females for acts of prostitution in bars/brothels owned and operated by TENCHA, located within the Southern District of Texas and elsewhere for the conspirators' financial benefit, using threats of force and psychological coercion to maintain the females for acts of prostitution.

It was also the object of the conspiracy for the conspirators to rely on "padrotes" (pimps) to bring the women they forced into prostitution to work at the conspirators' bars/brothels for the conspirators' financial gain.

D.      **MANNER AND MEANS**

1.      In furtherance of the conspiracy, the conspirators would use force and threats of force to compel and maintain the service of the women and girls.

2.      It was a part of the conspiracy that the conspirators relied on padrotes (pimps) to supply women and girls for their brothel.   The conspirators profited from the entrance fees, drink sales and by charging $20.00 for providing a room for the sex act as well as condoms. The amount of money charged for a commercial sex act would vary from $65.00 for 15 minutes up to $500.00 per hour for minors.

3.      It was also a part of the conspiracy that a $5.00 admission ticket would be charged at the entrance of the bar/brothel.   In addition, a second $5.00 ticket had to be purchased to gain access to the prostitution room.   For bookkeeping purposes, numbers in ascending order would be written on the back of the second tickets indicating the number of individuals going to the prostitution rooms.   Another $15.00 for the use of prostitution rooms and condoms also had to be paid before the prostitute and her customer would be allowed to use the room.   The $20.00 fee for the condoms and use of the rooms totaled $1,265,820.00 in such charges from February

15, 2012 through August 26, 2013.   The money that was paid to the women and girls for commercial sex was taken from them by their individual padrotes (pimps) at the end of each day.

4.      It was a further part of the conspiracy that LAS PALMAS II and LA FERIA, TENCHA's bars/brothels, were provided as the locations for padrotes (pimps) to bring women and girls to solicit commercial sex acts from customers.   As per their agreement with the bar/brothel owners and their pimps, the prostituted women and girls would take their customers to the prostitution rooms on the second floor of the LAS PALMAS II bar/brothel to engage in commercial sex acts with the women and girls.   On occasion, the women and girls would leave TENCHA's bars/brothels to perform a commercial sex act at a nearby hotel, but they still had to pay a fee to the conspirators to be able to leave the premises.   TENCHA and CHITO provided individuals to work in the parking lot. These individuals provided security for the exterior of the bar/brothel and reported any signs of police presence to the conspirators.   When LA FERIA closed at 2:00 a.m. each day, LAS PALMAS II was open for business as an afterhour's bar/brothel.   Many padrotes (pimps) who took their women to other brothels in the Houston, Texas, area would then take their women when those brothels closed at 2:00 a.m. to LAS PALMAS II to have them working as prostitutes at LAS PALMAS II until they closed.

5.      It was a further part of the conspiracy that TENCHA, in order to avoid detection by law enforcement, made it known to the female workers that she did not want the pimps to drop off or pick up the women and girls being prostituted at LAS PALMAS II.   Beginning in or about fall 2011, TENCHA had managers running the day-to-day operations at LAS PALMAS II because of her fear of police intervention.   The managers still had to get final approval from TENCHA to employ the women and girls who were brought to engage in prostitution.

6.      It was a further part of the conspiracy that the conspirators paid employees in

cash.   The employees received their money in an envelope addressed to them.

## E.   **ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY**

1.     In furtherance of the conspiracy and to effect the objects thereof, within the Southern District of Texas and elsewhere, TENCHA, together with others known and unknown to the Grand Jury, committed and caused to be committed at least one of the following overt acts, among others:

a.     From in or about August 1999, Witness GQ was hired by TENCHA to engage in prostitution at LAS FLORES, TENCHA's original bar/brothel located at 2027 McCarty, Houston, Texas.   TENCHA acquired this Las Flores bar/brothel in 1990.   In order to conceal the true ownership of Las Flores bar/brothel, TENCHA directed it to be initially titled in the name of her daughter DELIA DIAZ, then in the name of her other daughter DIANA MEDELES GARCIA, and later in the name of TENCHA's son.

b.     From in or about September 1999 through August 2001, Witness GQ engaged in acts of prostitution at the direction of TENCHA at TENCHA's bar/brothel known as LAS PALMAS II.   A portion of the money Witness GQ earned for each sex act was provided to the bar/brothel to pay for a condom and the use of the prostitution rooms.   TENCHA had approximately eight girls under the age of eighteen working as prostitutes at LAS PALMAS II during the period of time witness GQ worked at the bar/brothel.

c.     TENCHA did not require her employees or prostitutes, most of who were in the United States illegally, to have "papers".   The fact that most of the people at TENCHA's bars/brothels did not have "papers" (undocumented aliens) was common knowledge to the individuals who worked at and/or frequented the bars/brothels. The majority of the females working at LAS PALMAS II had padrotes (pimps).

d.      LILLY, TENCHA's sister, charged for condoms at LAS PALMAS II.

e.      From in or about August 2000, TENCHA housed Victim MDG, an undocumented minor female, and other minor and adult females at her property located at 10113 Rumar Lane, Houston, Texas 77029 for the purpose of commercial sex.   TENCHA hired Victim MDG to work for her as a prostitute knowing she had no "papers" and that she was described as "fresh meat" from Mexico.

f.      From in or about August 2000, TENCHA transported Victim MDG and the other minor and adult females living at 10113 Rumar Lane back and forth to LA FERIA/LAS PALMAS II where Victim MDG and the other minor and adult females worked as prostitutes engaging in commercial sex acts.   Victim MDG and the other minor and adult females were locked in an upstairs room at LAS PALMAS II.   The conspirators allowed them to come out of the locked room when a special client or big spender paid to have sex with one of them.

g.      In or about September 2000, TENCHA moved Victim MDG and the other minor and adult females to LAS PALMAS II where TENCHA kept her and the other minor and adult females locked in a room at the premises.   To avoid law enforcement, TENCHA caused Victim MDG along with others, who she continued to use as prostitutes, to be moved from LAS PALMAS II into an apartment.

h.      From in or about August 2000 through September 2001, conspirators TENCHA and/or DELIA would bring special clients or big spenders to the second floor of LAS PALMAS II so they could choose Victim MDG or one of the other minor or adult females kept locked in the room upstairs with her for commercial sex acts.   TENCHA and/or DELIA monitored the minor females on the second floor.   TENCHA decided how much customers were to be charged

for sex with Victim MDG and the other minor and adult females kept in the room with Victim MDG based on the age of the female and how pretty she was.

i.     TENCHA and DELIA collected the money in advance from the client in front of Victim MDG and the others in the room.   TENCHA and DELIA gave the minor or adult female the condom before the minor or adult female and the client proceeded to the prostitution room. When clients came to the room at LAS PALMAS II where Victim MDG was located, TENCHA and DELIA told the clients that the minor females were 14 to 17 years of age.   TENCHA and DELIA also told the client which females had been used more and which ones were "fresh meat".

j.     The clients were allowed to have oral sex, anal sex, or even spank and hit Victim MDG and the other minor and adult females as long as they didn't hit them in the face.   A client could pay up to $500.00 for an hour or $250.00 for half an hour for the youngest and prettiest of the group.   Victim MDG's price was $350.00 to $400.00 for an hour during the period of time she was locked in the room upstairs which was paid directly to TENCHA, DELIA, or MELISSA.

k.     On several occasions between in or about August 2000 and November 2001, TENCHA and her employees punched and kicked the minors and/or adult females when clients complained about their dissatisfaction with the commercial sex act they performed.

l.     On one occasion, one of the minor girls locked in the room was beaten in TENCHA's presence because a client left dissatisfied.   TENCHA informed the females that this beating would happen to each of them if one of them did not keep the clients happy.   TENCHA then spoke in a nurturing manner while tending to the injuries of the minor girl who was beaten. TENCHA stated that they needed to be good girls, and that TENCHA did not want to do these things to them, but the girl's failure to satisfy the client caused her to do it.

m.    From in or about September 2001 through November 2001, Victim MDG had to give the money she received from the client to Melissa LNU (hereinafter "Melissa"), an unindicted conspirator, before entering the prostitution room.   Melissa, in turn, would then give TENCHA a cut or share of Victim MDG's earnings. Victim MDG has seen Melissa pay TENCHA. Victim MDG was never allowed to keep any of prostitution proceeds she generated at LA FERIA/LAS PALMAS II.

n.    TENCHA told Victim MDG and the other minor and adult females locked in the room that they couldn't leave until they had paid her back the money she (TENCHA) had spent on them for clothing, perfumes, food, as well as the rent TENCHA was charging them. TENCHA kept increasing the debt because of her additional charges instead of decreasing the debt based on the prostitution proceeds.   TENCHA told Victim MDG she owed her $2,000.00, then later told her she increased the debt to $5,000.00.   TENCHA convinced Victim MDG that if she left without paying, she would look for her and find her.

o.    TENCHA told Victim MDG and the other minor and adult females locked in the room together that they were her property until they paid the money owed to her.

p.    At times, when one of the special clients or big spenders came to LA FERIA/LAS PALMAS II, they would knock on the outside of the door located in the parking lot, near the taco stand, and CHITO would unlock the door for the client and let them in.   TENCHA or DELIA would already be upstairs on the second floor waiting for the client to come upstairs.   Victim MDG and the other minor and adult females wanted to escape so they tried to see if one of their clients would be willing to help them escape.

q.      When another employee, Witness AH was hired, Victim MDG overheard TENCHA asking him if he had "papers".   Witness AH told TENCHA that he did not have "papers".

r.      In or about September 2001, Witness AH worked at LA FERIA/LAS PALMAS II.   Witness AH knew TENCHA to be the owner of both bars/brothels.   TENCHA told Witness AH that she was going to pay him in cash and she was not going to ask for any immigration documents.

s.      While working at LA FERIA/LAS PALMAS II, Victim MDG told Witness AH that she was sad and wanted to leave, just take off running but she could not because they were watching.

t.      From in or about January 2003 through October or November 2003, Victim RMG was forced by her padrote (pimp) to engage in prostitution at LA FERIA/LAS PALMAS II.   A portion of the prostitution proceeds Victim RMG generated for each sex act was provided to the bars/brothels to pay for a condom and the use of the prostitution rooms.   Victim RMG heard TENCHA ask females at the bars/brothels who had signs of being beaten why they had not paid attention to their padrote (pimp).

u.      TENCHA requested that she be paid money she was owed for smuggling her employees into the United States.

v.      LILIA charged the prostitutes for the use of the rooms in LAS PALMAS II for commercial sex.

w.      From in or about May 2003 through May 2006 as well as most of 2007, Victim IF was forced by her pimp to engage in prostitution at LA FERIA/LAS PALMAS II.   A portion

of the prostitution proceeds was provided to the bars/brothels to pay for a condom and the use of the prostitution rooms.

       x.      TENCHA hired Victim IF to work at LAS PALMAS II as a prostitute.

       y.      From in or about 2003 or 2004, Victim AA, an undocumented minor female, engaged in prostitution at LAS PALMAS II.

       z.      TENCHA charged cover fees to customers for entering LAS PALMAS II after 2:00 a.m.

       aa.      In or about 2005, Victim EV was forced to engage in prostitution at LAS PALMAS II and LA FERIA by her padrote (pimp). Her padrote (pimp) took her to LA FERIA and LAS PALMAS II to continue working in prostitution after working all day at another bar/brothel. The proceeds of her prostitution acts were divided between the conspirators for providing a condom and prostitution room and her padrote (pimp).

       bb.      In or about 2005, the female in charge at LAS PALMAS II saw Victim EV with visible injuries and told Victim EV to tell her padrote (pimp) not to beat her up and send her to work looking like that because clients would ask questions.

       cc.      From in or about May 2005 through July 2005, Victim RA, a minor undocumented female, was forced to perform acts of prostitution at LAS PALMAS II by EL GALLO, her padrote (pimp).

       dd.      From in or about April 2005 to July 2005, Victim MR, an undocumented minor female, was allowed to engage in prostitution at LAS PALMAS II by TENCHA. LILIA provided Victim MR with a condom prior to Victim MR performing a commercial sex act at LAS PALMAS II.

ee.     From in or about March 2009 to June 2009, Victim GP was forced to perform acts of prostitution at LAS PALMAS II and other bars/brothels by her padrote (pimp), ALFONSO DIAZ-JUAREZ aka PONCHO.   PONCHO used beatings and the threat of not seeing her child again to coerce Victim GP to engage in prostitution.

ff.     PONCHO admitted smuggling Victim GP, who worked as a prostitute at LAS PALMAS II, into the United States.

gg.     From in or about October 2009 through March 2010, Victim AV was forced to perform acts of prostitution at LAS PALMAS II by her padrote (pimp).   Victim AV's padrote (pimp) beat her regularly for not making enough money at the bar/brothel.

hh.     From in or about November 2010 through December 2010, Victim EE was forced to perform acts of prostitution at LAS PALMAS II by her padrote (pimp).

ii.     ODELIA tended bar at LAS PALMAS II knowing that Victim EE who was working as a prostitute there was illegally in the United States.

jj.     From in or about February 2, 2011 through March 2011, Victim LL, an undocumented minor female engaged in prostitution at LAS PALMAS II, charging $70.00 for 15 minutes of sex.   Of the $70.00 in prostitution proceeds, $20.00 was paid to the owners of LAS PALMAS II for the use of the room and a condom.

kk.     From in or about March 2012 through August 2012, Victim AL, an undocumented minor female, performed acts of prostitution at LAS PALMAS II.   LUPE, whom Victim AL identified as the manager in charge of the bar/brothel LAS PALMAS II, questioned Victim AL about her age because she looked very young.   At the time, Victim AL was 15 years of age. Victim AL continued to be offered for commercial sex acts at LAS PALMAS II despite her young appearance and age.

ll.     When prostituted women or girls arranged to perform acts of prostitution in hotels, they had to pay $40.00 directly to CHITO per TENCHA's orders.   In or about February 2012, CHITO made comments that some of the girls prostituting at LAS PALMAS II looked really young.

mm.     LILIA, TENCHA's sister, who previously collected money for use of prostitution rooms, ceased doing so and thereafter primarily came to LAS PALMAS II to clean the prostitution rooms.

nn.     In or about in 2009, TENCHA allowed LILIA to keep the proceeds from the sale of the condoms.

oo.     In or about April 10, 2012, TENCHA stated that she was aware that padrotes (pimps) would beat their women, including coming to LAS PALMAS II to take the women out and beat them for infractions such as taking too long with a customer or talking to a customer. In or about April 2012 TENCHA stated she knew of a pimp called El Gallo who would put tattoos of a rooster on his women.

pp.     On April 15, 2012, CHITO stated that La Camelia was the best brothel, better than TENCHA's.

qq.     On or about April 24, 2012, TENCHA told her brother CHITO that NANCY (MARIA ROJAS) had been sentenced, and all her properties had been taken, referring to a prosecution for sex trafficking conspiracy.   CHITO told TENCHA that she (TENCHA) had some girls at LAS PALMAS II who looked too young and TENCHA responded that she was going to look into it.

rr.     On May 13, 2012, Witness CHS1 recorded a conversation with CHITO and told CHITO he/she (CHS1) did not have legal status in this country.

ss.     On May 22, 2012, Witness CHS1 reported that LUPE had an argument with one of the prostituted females and subsequently threatened to report her to immigration for being here illegally.   LUPE stated she was in charge of the business when TENCHA was not present.

tt.     On or about July 4, 2012, CHACHO indicated, in a recorded conversation, that he was aware that everyone working at LAS PALMAS II were undocumented aliens.

uu.     On or about July 5, 2012, LORENZO indicated, in a recorded conversation, that he knows that many of the women who had worked and were presently working at LAS PALMAS II did not have "papers".

vv.     On or about July 8, 2012, CHITO indicated in a recorded conversation that he knew that some of the employees at LAS PALMAS II did not have "papers".

ww.     On or about October 16, 2012, PONCHO indicated in a recorded conversation that the best way to handle the female prostitutes working at LAS PALMAS II was "with a stiff hand".

xx.     On or about October 28, 2012, TENCHA indicated in a recorded conversation that she would meet with a girl's padrote (pimp).

yy.     On or about November 7, 2012 and November 9, 2012, TENCHA indicated in recorded conversations that padrotes (pimps) wanted to lease LAS PALMAS II from her.

zz.     On or about December 21, 2012, JORGE indicated in a recorded conversation that he knew that some of the prostitutes were beaten very badly by the padrotes (pimps).

aaa.     On or about January 21, 2013, PANTERA indicated in a recorded conversation that everyone at LAS PALMAS II including him were undocumented aliens.

bbb.    On or about February 20, 2013, JORGE, PANTERA, and ARDILLA were told that some of the people working at NUEVO AMANECER (formerly LAS PALMAS II) were undocumented aliens.

ccc.    On or about March 28, 2013, ARDILLA indicated in a recorded conversation how he used fraud and coercion to cause a female illegal alien to engage in prostitution in the United States.

ddd.    On or about April 9, 2013, TENCHA scolded Victim LL, a minor undocumented female, while Victim LL was engaging in prostitution at LAS PALMAS II.

eee.    On March 6, 2012, LUPE indicated that she knew that the prostitutes working at LAS PALMAS II were naïve girls from Mexico who had padrotes (pimps) that sometimes beat them.

fff.    On April 4, 2012, TENCHA discussed in a recorded conversation that the reason a particular female often missed appearing at LAS PALMAS II to engage in prostitution was because her padrote (pimp) beat her up.

ggg.    On April 15, 2012, TENCHA discussed the fact that there was an underage female working at LAS PALMAS II who was fired from another brothel for being too young and having a fake identification.  TENCHA stated she would talk with the young girl.  The underage female continued to engage in prostitution at LAS PALMAS II even after TENCHA was made aware of the young girl's age and fake identification.

hhh.    On May 18, 2012, TENCHA stated that she knew a good and affordable coyote (human smuggler) who could arrange for illegal entry into the United States.

iii.    On May 20, 2012, TENCHA indicated in a recorded conversation that she did not want a particular prostitute's padrote (pimp) to enter LAS PALMAS II.

jjj.      On June 29, 2012, TENCHA indicated in a recorded conversation that a coyote (human smuggler) helped her employee cross illegally the United States/Mexico border.

kkk.      On July 9, 2012, LUPE indicated in a recorded conversation that if the police came to LAS PALMAS II most everyone would get arrested there since no one had papers.

lll. On August 17, 2012, TENCHA indicated in a recorded conversation that in deciding whether or not a girl was too young to engage in prostitution at TENCHA's bar/brothel the concern was not how young she actually was but how young she appeared.

mmm.      On or about April 9, 2013, LUPE said it was fine for an underage girl to engage in prostitution at LAS PALMAS II as long as she had an identification showing her to be older.

nnn.      On or about April 5, 2013, an undercover vice officer with the Harris County Sheriff's Office, conducted an investigation at Nuevo Amanecer, formerly LAS PALMAS II, and obtained evidence of engaging in prostitution against the female belonging JORGE ANTONIO TELOXA-BARBOSA, one of three pimps leasing the bar/brothel from TENCHA.

ooo. On or about June 4, 2013, Witness CHS 1 reported that one of the female prostitutes had a problem with a customer.   ARDILLA (ALBERTO MENDEZ FLORES) and EL PANTERA (EDUARDO GUZMAN) were upset with her about this and wanted to lay her off for a month.   The following day, the female prostitute came to the bar/brothel to ask for her job back and had bruises on her arms and face.

ppp.   On or about July 23, 2013, Witness CHS 1 reported that both EL PANTERA (EDUARDO GUZMAN) and ARDILLA (ALBERTO MENDEZ FLORES) complained to TENCHA     about     problems     at     the     bar/brothel.     JORGE     (JORGE     ANTONIO

TELOXA-BARBOSA) blamed EL PANTERA and ARDILLA for them now having to be at the bar/brothel.   Witness CHS 1 also reported that TENCHA wanted to take back the bar/brothel.

## COUNT TWO

### Conspiracy to Harbor Illegal Aliens

**[Title 8 U.S.C. Sections 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(iii), and 1324(a)(1)(B)(i)]**

**A.**  **INTRODUCTION**

The introductory allegations as set forth in paragraphs 1 through 46 and the description of the conspiracy's manner and means as set forth in paragraphs 1 through 6 and are realleged and incorporated herein.

**B.**  **THE CONSPIRACY**

From in or about August 1999 to the present, within the Southern District of Texas and elsewhere, defendants,

**HORTENCIA MEDELES-ARGUELLO aka
RAQUEL MEDELES GARCIA aka TENCHA**

**DELIA DIAZ**

**ABEL MEDELES aka CHITO**

**ODELIA HERNANDEZ**

**GUADALUPE VALDEZ LUGO aka LUPE**

**EDUARDO GUZMAN GONZALEZ aka MIGUEL ROJAS aka
EL PANTERA**

**JORGE ANTONIO TELOXA-BARBOSA aka ELI**

**ALBERTO MENDEZ FLORES aka ARDILLA**

**ALFONSO DIAZ-JUAREZ aka PONCHO aka
EL GRENAS**

**TALAT CRIPPIN aka CHACHO**

together and with others, did knowingly and willfully conspire, confederate and agree with

persons known and unknown to the Grand Jury, to commit offenses against the United States,

that is:

To knowingly and in reckless disregard of the fact that aliens had come to, entered and

remained in the United States in violation of law, attempted to and did conceal, harbor, and

shield from detection, such aliens in buildings and other places in and around Houston, Texas,

for purposes of commercial advantage and private financial gain.

In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I),

1324(a)(1)(A)(iii), 1324(a)(1)(B)(i).

## COUNT THREE

### Money Laundering

### [Title 18, U.S.C. Section 1956(a)(1)(B)(i)]

From on or around June 9, 2010 and continuing through on or around August 30, 2010, in

the Southern District of Texas and elsewhere, defendant,

**HORTENCIA MEDELES-ARGUELLO**
**aka "RAQUEL MEDELES GARCIA"**
**aka "TENCHA"**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and

foreign commerce, to wit, four (4) check payments to Vanderbilt Mortgage from a Chase bank

account ending in *6350 totaling $22,265.78, which involved the proceeds of a specified

unlawful activity, that is sex trafficking in violation of Title 18 United States Code Section 1591,

knowing that the transaction was designed in whole or in part to conceal and disguise the nature,

location, source, ownership and control of the proceeds of said specified unlawful activity and

that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18 United States Code, section 1956(a)(1)(B)(i).

## COUNT FOUR

### Money Laundering

### [Title 18, U.S.C. Section 1956(a)(1)(B)(i)]

From on or around February 8, 2011 and continuing through on or around May 2, 2012, in the Southern District of Texas and elsewhere, defendant,

**HORTENCIA MEDELES-ARGUELLO**
**aka "RAQUEL MEDELES GARCIA"**
**aka "TENCHA"**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, sixteen (16) check payments to an individual in the name of RH from Chase account ending in *6350 totaling $21,249.50, which involved the proceeds of a specified unlawful activity, that is sex trafficking in violation of Title 18 United States Code Section 1591, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18 United States Code, section 1956(a)(1)(B)(i).

## COUNT FIVE

### Money Laundering

### [Title 18, U.S.C. Section 1956(a)(1)(B)(i)]

From on or around September 3, 2010 and continuing through on or around May 3, 2012, in the Southern District of Texas and elsewhere, defendant,

### HORTENCIA MEDELES-ARGUELLO
### aka "RAQUEL MEDELES GARCIA"
### aka "TENCHA"

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, seventeen (17) check payments and one (1) cashier's check payment to an individual in the name of JL from a Chase bank account ending in *6350 totaling $26,326.13, which involved the proceeds of a specified unlawful activity, that is sex trafficking in violation of Title 18 United States Code Section 1591, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18 United States Code, section 1956(a)(1)(B)(i).

## COUNT SIX

### Money Laundering

### [Title 18, U.S.C. Section 1956(a)(1)(B)(i)]

On or about February 16, 2012, in the Southern District of Texas and elsewhere, defendant,

**HORTENCIA MEDELES-ARGUELLO**
**aka "RAQUEL MEDELES GARCIA"**
**aka "TENCHA"**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, four (4) cash payments and one (1) check payment, from a Chase bank account ending in *6350, to JP Morgan Chase totaling $20,769.68, which involved the proceeds of a specified unlawful activity, that is sex trafficking in violation of Title 18 United States Code Section 1591, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18 United States Code, section 1956(a)(1)(B)(i).

## COUNT SEVEN

### Conspiracy to Commit Money Laundering

**[Title 18 U.S.C. Section 1956(h)]**

**THE CONSPIRACY**

Beginning on or around September 15, 2011, and continuing through in or around November 7, 2011, within the Southern District of Texas and elsewhere, defendants,

**DELIA GARCIA DIAZ**

**HORTENCIA MEDELES-ARGUELLO**
**aka RAQUEL MEDELES GARCIA**
**aka TENCHA**

**GRACIELA OCHOA**

**DIANA MEDELES GARCIA aka DIANA GARCIA MARQUEZ**

**ABEL MEDELES aka CHITO**

**GUADALUPE VALDEZ LUGO aka LUPE**

**TALAT CRIPPIN aka CHACHO**

together and with others known and unknown to the Grand Jury, conspired and agreed with one another to knowingly commit an offense against the United States, in violation of Title 18, United States Code, Section 1956, to wit:

a)  did knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, Title 18, United States Code, Section 1591, (1) knowing that the transactions were designed in whole or in part to avoid the currency transaction reporting requirement threshold greater than $10,000.00 of U.S. Currency of said specified unlawful activity, (2) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1).

**THE OBJECT**

The object of this conspiracy was to purchase cashier's checks for amounts not greater

than $10,000.00 in U.S. Currency thus avoiding the bank reporting requirement threshold of greater than $10,000.00 in U.S. Currency, and to hide and conceal the source of and the ill-gotten financial gains generated by the bars/brothels owned, operated and participated in by the conspirators.

**MANNER AND MEANS**

Defendant DELIA DIAZ relied on family members and/or employees of LAS PALMAS II, where the specified unlawful activity occurred, to aid with purchasing the cashier's checks in order to avoid the bank's reporting requirement, and conceal the source and nature of the proceeds from the commercial sex enterprise at the bars/brothels.

Defendants DELIA DIAZ, HORTENCIA MEDELES-ARGUELLO aka RAQUEL MEDELES GARCIA aka TENCHA, GRACIELA MEDELES OCHOA, DIANA MEDELES GARCIA aka DIANA GARCIA MARQUEZ, ABEL MEDELES aka CHITO, GUADALUPE VALDEZ LUGO aka LUPE, and TALAT CRIPPIN aka CHACHO, who were either family members and/or employees of LAS PALMAS II where the specified unlawful activity occurred, knew that these transactions were designed in whole or in part to avoid the reporting requirement threshold of greater than $10,000.00, and/or to conceal the source and nature of the proceeds from the commercial sex enterprise at the bars/brothels.

a.    In or about September 15, 2011 and continuing through in or around November 7, 2011, defendants and others purchased twenty-nine (29) cashier's checks with cash, each under the reporting requirement threshold of greater than $10,000.00 in U.S. Currency, totaling $259,689.07.

b.    On or around September 22, 2011, defendants HORTENCIA MEDELES-ARGUELLO aka RAQUEL MEDELES GARCIA aka TENCHA and GRACIELA

MEDELES OCHOA each purchased a cashier's check in the amount of $9,000.00, which purchases involve proceeds of specified unlawful activity, totaling $18,000.00.

c.    On or around October 20, 2011, defendants DELIA DIAZ, DIANA MEDELES GARCIA aka DIANA GARCIA MARQUEZ and ABEL MEDELES aka CHITO each purchased a cashier's check in the amount of $9,000.00, which purchases involve proceeds of specified unlawful activity, totaling $27,000.00.

d.    On or around October 24, 2011, defendant GUADALUPE VALDEZ LUGO aka LUPE and an unindicted conspirator each purchased a cashier's check in the amount of $9,000.00, which purchases involve proceeds of specified unlawful activity, totaling $18,000.00.

e.    On or around October 25, 2011, defendant DELIA DIAZ purchased two (2) cashier's checks each in the amount of $9,000.00, which purchases involve proceeds of specified unlawful activity, totaling $18,000.00.

f.    On or about October 26, 2011, defendants HORTENCIA MEDELES-ARGUELLO aka RAQUEL MEDELES GARCIA aka TENCHA and TALAT CRIPPIN aka CHACHO each purchased a cashier's check in the amount of $9,000.00, which purchases involve proceeds of specified unlawful activity, totaling $18,000.00.

g.    On or about November 4, 2011, defendant DELIA DIAZ and an unindicted conspirator purchased three (3) cashier's checks each less than $10,000.00, which purchases involve proceeds of specified unlawful activity, totaling $25,689.07.

h.    On or about November 7, 2011, defendants DELIA DIAZ and DIANA MEDELES GARCIA aka DIANA GARCIA MARQUEZ each purchased a cashier's check in the amount of $9,000.00, which purchases involve proceeds of specified unlawful activity, totaling $18,000.00.

i.      All of the above cashier's checks were received by the same individual during the course of this conspiracy for a debt attributed to DELIA DIAZ.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i), 1956(a)(1)(B)(ii), 1956(h).

## NOTICE OF FORFEITURE

### (18 U.S.C. § 1594(d); 18 U.S.C. § 1594(e) and 28 U.S.C. § 2461(c))

Pursuant to Title 18, United States Code, Section 1594(d) and Title 18, United States Code, Section 1594(e) and Title 18, United States Code, Section 2461(c), the United States gives notice to defendants,

**HORTENCIA MEDELES-ARGUELLO aka
RAQUEL MEDELES GARCIA aka TENCHA**

**DELIA DÍAZ**

**JOSÉ L. URAGA aka WICHO**

**GUADALUPE VALDEZ LUGO aka LUPE**

**ALFONSO DÍAZ-JUAREZ aka PONCHO aka
EL GRENAS**

**LILIA MEDELES CERDA aka LILLY**

**ABEL MEDELES aka CHITO**

**ODELIA HERNANDEZ**

**TALAT CRIPPIN aka CHACHO**

that in the event of conviction of the offense charged in Count One of this Indictment, the following real and personal property is subject to forfeiture:

(1) all property that was used or intended to be used to commit or to facilitate the commission of such violation; and

(2) all property constituting or derived from proceeds obtained, directly or indirectly, from or traceable to such violation.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 982(a)(6); 8 U.S.C. § 1324(b) and 28 U.S.C. § 2461(c)

Pursuant to Title 18, United States Code, Section 982(a)(6) and Title 18, United States Code, Section 1324(b) and Title 18, United States Code, Section 2461(c), the United States gives notice to defendants,

**HORTENCIA MEDELES-ARGUELLO aka
RAQUEL MEDELES GARCIA aka TENCHA**

**DELIA DIAZ**

**ABEL MEDELES aka CHITO**

**ODELIA HERNANDEZ**

**GUADALUPE VALDEZ LUGO aka LUPE**

**EDUARDO GUZMAN GONZALEZ aka MIGUEL ROJAS aka
EL PANTERA**

**JORGE ANTONIO TELOXA-BARBOSA aka ELI**

**ALBERTO MENDEZ FLORES aka ARDILLA**

**ALFONSO DIAZ-JUAREZ aka PONCHO aka
EL GRENAS**

**TALAT CRIPPIN aka CHACHO**

that in the event of conviction of the offense charged in Count Two of this Indictment, the following property is subject to forfeiture:

(1) all conveyances, including vessels, vehicles, and aircraft, used in the commission of the offense and all property traceable to such conveyances;

(2) all real and personal property that constitutes, or is derived from, or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; and

(3) all real and personal property that is used to facilitate, or is intended to be used to facilitate, the commission of the offense.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 982(a)(1)

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendants,

**HORTENCIA MEDELES-ARGUELLO**
**aka "RAQUEL MEDELES GARCIA"**
**aka "TENCHA"**

**DELIA GARCIA DIAZ**

**GRACIELA OCHOA**

**DIANA MARQUEZ**

**ABEL MEDELES aka CHITO**

**GUADALUPE VALDEZ LUGO aka LUPE**

**TALAT CRIPPIN aka CHACHO**

that in the event of conviction of any of the offenses charged in Counts Three through Seven, all real and personal property involved in such money laundering offenses or traceable to such property, is subject to forfeiture.

### Property Subject to Forfeiture

Defendants are notified that the property subject to forfeiture includes, but is not limited

to, the following property:

(1) At least $12,600,000.00 in United States dollars.

(2) The real property, improvements and appurtenances located at 7738 Bellfort Street, Houston, Texas 77061 and legally described as:

> Lot Thirteen (13) Block Twenty-Eight (28), of Glenbrook Valley, Section Eight (8), a subdivision in Harris County, Texas according to the map or plat thereof, recorded in Volume 50, Page 40 of the Map Records of Harris County, Texas.

(3) The real property, improvements and appurtenances with addresses of 5618 and 5612 Telephone Road, Houston, Texas 77087 and legally described as:

> Lots 15, 16 and 17, in Block "H", Houston Acreage Estates, an addition to the City of Houston, Harris County, Texas, according to the map or plat thereof, recorded in Volume 12, Page 63 of the Map Records of Harris County, Texas, save and except a tract or parcel of land out of said Lot 17, described by metes and bounds in a deed recorded in the real property records of Harris County, Texas on September 13, 1999 under file number T961377.

(4) The real property, improvements and appurtenances located at 2027 McCarty Drive, Houston, Texas 77029 and legally described as:

> Lot 15 Block 57 of Port Houston Addition, in Harris County, Texas.

(5) The real property, improvements and appurtenances located at 10113 Rumar Lane, Houston, Texas 77029 and legally described as:

> Lot Three (3) and the adjoining East Thirty Feet (E. 30′ ) of Lot Two (2) of Morrow Place, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 33, page 58 of the Map records of Harris County, Texas.

(6) The real property, improvements and appurtenances located at 403 Elsbeth Street, Channelview, Texas 77530 and legally described as:

A tract of land containing 0.264 acres, more or less, out of and a part of Lots Three (3) and Four (4), in Block Two (2), of Lakeside Park Estates, an addition in Harris County, Texas, according to the map or plat thereof, recorded in Volume 12, Page 88 of the Map Records of Harris County, Texas, as more particularly described by metes and bounds in the deed recorded in the real property records of Harris County, Texas on May 1, 2009 under file number 20090181850.

(7) The real property, improvements and appurtenances located 16501 North Shore

Drive, Channelview, Texas 77530 and legally described as:

Parcel Number 5 Being a part of Lots 2 and 3, in Block 2, in Lakeside Park Estates, a subdivision in the B.N. Garrett Survey, Abstract 1710 in Harris County, Texas, according to the map or plat thereof recorded in Volume 12, at Page 38 of the Map Records of Harris County, Texas, as more particularly described in a deed recorded in the real property records of Harris County, Texas on September 9, 2010 under file number 20100386344.

(8) The real property, improvements and appurtenances located 919 Freeport Street,

Houston, Texas, 77015 and legally described as:

Lot 2, in Block 165, of Clover Leaf Subdivision, Unit, 6, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 18, Page 47 of the Map Records of Harris County, Texas.

(9) The real property, improvements and appurtenances with addresses of 4670

Telephone Road Houston, Texas 77087 and 4660 Telephone Road, Houston, Texas

77087 and legally described as:

Tract I

The West 100.5 feet of Lot Seven (7), and the adjoining West 100.5 feet of the South 79.64 feet of Lot Six (6), Parkview Addition, an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 655, Page 244, Deed Records, Harris County, Texas.

Tract II

The North 70.36 feet of Lot Six (6) of Parkview Addition, an

Addition out of the Jacob Thomas Survey in Harris County, Texas, according to the map or plat thereof recorded in Volume 655, Page 243 of the Deed Records of Harris County, Texas, and being more particularly described by metes and bounds on Exhibits A and B to a deed recorded in the real property records of Harris County, Texas on August 2, 1999 under file number T878880.

## **Money Judgment**

Defendants are notified that in the event of conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable.

## **Substitute Assets**

Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendants up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as

incorporated by reference in Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL:
Original Signature on File

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By:

_____
RUBEN R. PEREZ
ASSISTANT UNITED STATES ATTORNEY

_____
JOSEPH C. MAGLIOLO
ASSISTANT UNITED STATES ATTORNEY