UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.    § | CRIMINAL NO. H-13-628 |
| § | |
| HORTENCIA MEDELES-ARGUELLO § | |

## UNITED STATES UNOPPOSED MOTION
## FOR PRELIMINARY ORDER OF FORFEITURE

The United States of America respectfully moves for a Preliminary Order of Forfeiture imposing a personal money judgment against Defendant Hortencia Medeles-Arguello, and forfeiting cash seized in October 2013. The Defendant is unopposed to the relief sought in this motion. The United States represents:

Following a trial in April 2015, a jury found Defendant guilty of a sex trafficking conspiracy beginning in or about January 2009 and continuing until October 2013, a conspiracy to harbor illegal aliens from in or about August 1999 to October 2013, three counts of money laundering, and a money laundering conspiracy beginning on or about September 15, 2011 and continuing through in or around November 7, 2011. The evidence at trial established that Defendant operated brothels in Houston, Texas, where illegal aliens were harbored, concealed and shielded from law enforcement detection and where females were provided for commercial sex acts.

1

The United States provided notice to Defendant in the Superseding Criminal Indictment that in the event of conviction, property would be subject to forfeiture under federal law, including proceeds obtained directly or indirectly from the sex trafficking conspiracy charged in Count One and from the alien harboring conspiracy charged in Count Two.  Dkt. No. 419, pp. 6 – 7. The notice listed several properties subject to forfeiture, including but not limited to, at least $12,500,000.00 in United States dollars and certain sums of cash seized on or about October 10, 2013. Dkt. No. 419, pp. 8 – 11. The notice also stated that a money judgment may be imposed equal to the total value of property subject to forfeiture.  Dkt. No. 419, p. 12.

Prior to the jury's deliberations regarding the criminal charges, Defendant informed the Court that she did not elect to retain the jury to determine forfeiture. In light of Defendant's conviction, the United States now seeks the imposition of a money judgment and the forfeiture of certain sums of cash seized on October 10, 2013.

## LAW AND ARGUMENT

### I. Standard of Law Governing Criminal Forfeiture

Rule 32.2(b)(1)(A) of the Federal Rules of Criminal Procedure provides that after a guilty verdict on any count in an indictment for which criminal forfeiture is sought, the Court must determine what property is subject to forfeiture.  For

specific property, the Court must determine whether the government has established the requisite nexus between the property and the offense, and for a money judgment, the Court must determine the amount of money that the defendant will be ordered to pay. Fed. R. Crim. P. 32.2(b)(1)(A). If the Court determines that property is subject to forfeiture, it must enter a preliminary order of forfeiture "without regard to any third party's interest in the property." *Id.* ("Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)."). "Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4)." Fed. R. Crim. P. 32.2(b)(2)(B).

The standard for forfeiture determinations is by a preponderance of the evidence. *United States v. Gasanova*, 332 F.3d 297, 300-01 (5th Cir. 2003). The Court's determination "may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). A court may consider relevant, reliable hearsay evidence in a forfeiture proceeding. *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 709 n.1 (E.D. Va. 2005)(acknowledging that the court may consider hearsay because

"the traditional rules of evidence do not apply in determining issues related to criminal forfeiture."); *United States v. Gaskin*, 2002 WL 459005, at *9 (W.D.N.Y. Jan. 8, 2002).

## II. Money Judgment

Federal law requires the forfeiture of all property that constitutes or is derived from proceeds obtained directly or indirectly from an offense in violation of 8 U.S.C. § 1324 (alien harboring), *see* 18 U.S.C. 982(a)(6) and from an offense in violation 18 U.S.C. § 1594 (sex trafficking conspiracy), *see* 18 U.S.C. § 1594(d)(2). The United States seeks a personal money judgment against Defendant representing the amount of proceeds obtained directly or indirectly from the alien harboring conspiracy and the sex trafficking conspiracy.

Rule 32.2 of the Federal Rules of Criminal Procedure expressly authorizes the imposition of forfeiture money judgments. *See* Fed. R. Crim. P. 32.2(a), 32.2(b)(1)(A), 32.2(b)(2)(A), 32.2(b)(2)(C), and 32.2(c)(1). Further, the Fifth Circuit has held that a money judgment is appropriate in criminal forfeiture. *United States v. Olguin*, 643 F.3d 384, 397 (5th Cir. 2011)("We join our sister circuits and hold that money judgments are appropriate in the criminal forfeiture context." (quoting *United States v. Day*, 524 F.3d 1361, 1378 (D.C. Cir. 2008))). In a conspiracy case, a money judgment may represent the full amount of the proceeds of the conspiracy and need not be limited to the amount actually received

4

by that particular defendant. *See Olguin*, 643 F.3d at 398-99 (rejecting defendant's argument that he should not be liable for amounts received by co-conspirators); *United States v. Hernandez*, 470 F. App'x 333, 335 (5th Cir. 2012)(citing *Olguin*, 643 F.3d at 399)); *United States v. Edwards*, 303 F.3d 606, 643 (5th Cir. 2002) (affirming a money judgment that held defendant jointly and severally liable for proceeds of a racketeering conspiracy including an amount extorted by his co-conspirator); *United States v. Elder*, 682 F.3d 1065, 1073(8th Cir. 2012).

    The evidence at trial showed that the alien harboring and sex trafficking conspiracies, of which Defendant was convicted, generated millions of dollars. Several witnesses, including victims and employees of Las Palmas II (a brothel run by Defendant), testified that, in addition to the cost for sex acts paid to the prostitutes/pimps, fees were charged by Las Palmas II for entrance into the brothel, for the use of prostitution rooms, and for condoms. There was also testimony from victims and others that, on top of these fees, the prostitutes had to pay fees to Las Palmas II, including fees for being late to work, missing work, leaving early, engaging in sex acts at a hotel instead of Las Palmas II, and for Saturday cleaning. Government's Exhibit 39, which was admitted into evidence, showed that the cover charges, fees for condoms, and fees for prostitution rooms alone generated

$1,607,400.00 from February 15, 2012 through August 26, 2013.[1] In other words, these fees alone (not counting other amounts charged at Las Palmas II) generated, on average, about $20,000 a week.

This evidence is consistent with the testimony of Jorge Antonio Teloxo-Barbosa, one of the individuals hired by Defendant to manage Las Palmas II. The evidence established that Teloxo-Barbosa and other individuals began managing Las Palmas II (also known as Nuevo Amanecer) in or about November 2012, and Teloxo-Barbosa testified that they paid Defendant $20,000.00 a week from the proceeds of Las Palmas and that they kept the remaining amount after paying expenses. Additionally, as shown in the Declaration of Edwin Chapuseux (Exhibit A to this Motion), one of the agents who investigated this case, the business was actually more profitable in earlier years, including as far back as 1999, than it was in the 2012/2013 time period captured in Exhibit 39 when police activity had increased.

The trial evidence also demonstrated that almost all of the prostitutes and other employees were illegally present in the United States and that the commercial sex business depended upon the employment, concealment, shielding and harboring of illegal aliens. As a result, the cash proceeds were generated not

---

[1] Exhibit 39 does not take into account all of the fees received during this time period because it only reflects money for prostitution rooms, condoms, and entrance fees that an employee Juan Carlos Munoz, collected for the brothel while he was working. *See* Exhibit A (Declaration of Edwin Chapuseaux).

only by the sex trafficking conspiracy, but they were also obtained directly or indirectly from the conspiracy to harbor illegal aliens, which was charged as beginning in or about August 1999 and continuing until October 2013. *See United States v. Farkas*, 474 F. App'x 349, 359-60 (4th Cir. 2012); *United States v. Farkas*, No. 1:10cr200, 2011 WL 5101752, at *2-*3, *5 (E.D. Va. Oct. 26, 2011)(applying "obtained directly and indirectly" language to money that would not have been obtained but for defendant's criminal activity); *United States v. Warshak*, 631 F.3d 266, 332 (6th Cir. 2010)(applying "obtained directly and indirectly" language). Given the evidence that the conspiracies generated at least $20,000 a week from February 2012 to August 2013, which was a less profitable time for the business, the United States respectfully submits that a money judgment in the amount of $12,500,000 would be reasonable and just to represent the amount of proceeds obtained from August 1999 to October 2013 as a result of the alien harboring and sex trafficking conspiracies for which Defendant has been convicted.

### III. Seized Cash

The United States also moves for a preliminary order of forfeiture of $603.00 that was seized from Las Palmas II (the brothel located at 5618 Telephone Road, Houston, Texas) and $713.41 that was seized from an apartment in Houston, Texas where one of the managers of Las Palmas II resided. The evidence

establishes that this cash constitutes proceeds of the sex trafficking and alien harboring conspiracies, and therefore is subject to forfeiture to the United States under 18 U.S.C. § 982(a)(6) and 18 U.S.C. § 1594(d)(2).

The evidence amply establishes that the $603.00 that law enforcement seized from Las Palmas II during a search on October 10, 2013 constitutes proceeds from the sex trafficking and alien harboring conspiracies. Indeed, the trial evidence established that Las Palmas (located at 5618 Telephone Road, Houston, Texas) was a focus of the sex trafficking and alien harboring conspiracies; it was the brothel where the sex acts occurred and where illegal aliens were harbored and shielded from law enforcement detection. Indeed, at the time of the raid by law enforcement on October 10, 2013, there were a number of illegal aliens working at Las Palmas II. *See* Exhibit A (Declaration of Edwin Chapuseaux). During the search, law enforcement observed small rooms with bare mattresses on box springs and used condoms on the floors, and they seized (in addition to the $603.00) ledgers noting sex trafficking activities, boxes of unused condoms, and tickets used in the sex trafficking business. *Id.* Further, the trial evidence established that the brothel generated cash on a daily basis. Therefore, the evidence demonstrates by a preponderance of the evidence that the $603.00 seized from Las Palmas II on October 10, 2013 constitutes proceeds from the sex trafficking and alien harboring conspiracies charged in Count One and Count Two.

The $713.41 that was seized from an apartment during the October 10, 2013 searches also constitutes proceeds from the conspiracies. That money was found during the search of an apartment where Alberto Mendez Flores resided.[2] *See* Exhibit A (Declaration of Edwin Chapuseaux). Flores was one of the managers of Las Palmas II, and he was also a pimp for one of the females who worked at Las Palmas II. *Id.* That female also resided at this apartment. *Id.* In addition to the cash, law enforcement also seized several cell phones and two full boxes of condoms from this apartment. *Id.* Notably, the boxes of condoms seized from this apartment are the same brand and quantity of condoms as the box of condoms admitted into evidence as Exhibit 27, which an employee of Las Palmas II had provided to law enforcement and which came from Las Palmas II. *Id.* Accordingly, the evidence establishes by a preponderance of the evidence that the $713.41 seized on October 10, 2013 constitutes proceeds of the sex trafficking and alien harboring conspiracies.

The United States represents that upon entry of a final order of forfeiture (following the resolution of any third-party petitions), the total amount of cash that is forfeited to the United States as proceeds will be credited against any money

---

[2] As stated above, a preliminary order of forfeiture must be entered without regard to whether a third party has an interest because such determinations must be deferred until a third party files a claim in an ancillary proceeding. Fed. R. Crim. P. 32.2(b)(2)(A). Even so, Alberto Mendez Flores previously signed a waiver of interest as to the $713.41 and other sums of cash, including the $603.00 seized from Las Palmas II, and agreed he would not contest the forfeiture of such property. A copy of the waiver is filed as Exhibit B to this Motion.

judgment imposed against Defendant.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests a preliminary order of forfeiture imposing a money judgment against Defendant in the amount of $12,500,000 and forfeiting the cash ($603.00 and $713.41) that was seized in October 2013.

    Respectfully submitted,

    KENNETH MAGIDSON
    UNITED STATES ATTORNEY

By:   <u>s/ Lori S. Roth</u>
      Lori S. Roth
      Email: lori.roth@usdoj.gov
      Texas State Bar No. 24076691
      SDTX Bar No. 1383270

      <u>/s E. Vincent Carroll</u>
      E. Vincent Carroll
      Email: vincent.carroll@usdoj.gov
      SDTX Bar No. 1804030

      Assistant United States Attorneys
      United States Attorney's Office
      1000 Louisiana, Suite 2300
      Houston, TX 77002
      Telephone: (713) 567-9000
      Fax: (713) 718-3300

## CERTIFICATE OF CONFERENCE

Ali Fazel, counsel for Defendant, was contacted and stated that his client, Hortencia Medeles-Arguello, is unopposed to the relief sought in this motion.

s/ E. Vincent Carroll
E. Vincent Carroll
Assistant United States Attorney

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served on counsel of record via the Court's electronic filing system on August 10, 2015.

s/ E. Vincent Carroll
E. Vincent Carroll
Assistant United States Attorney
