

## BUSINESS RECORDS AFFIDAVIT BY CUSTODIAN OF RECORDS

I, Diane Chambers, state the following under penalty of perjury in relation to the subpoena issued by the United States District Court in the Southern District of Texas and issued to Vanderbilt Mortgage and Finance, Inc (hereafter referred to as the "Company"):

1) I acknowledge that I am personally responsible for complying with the subpoena.

2) I have read the subpoena and understand what it requires.

3) I have made, or persons under my direct supervision have made, a full and complete search for all documents responsive to the subpoena. I understand that the Company is required to make a full and complete search for all responsive documents that are in its possession, custody, or control, irrespective of where those documents are now located or who currently possesses them.   I understand, for example, that if responsive documents have been provided to an outside accountant or attorney, or employee, or for some other reason are not on the Company's premises (but are within its legal ability to obtain), the Company would nonetheless be obligated to obtain those documents and produce them to the Court.   In addition, I understand that the Company is required to produce responsive documents and records that are in its possession, custody, or control, irrespective of who generated the document or record, or whether they are printed on Company letterhead.

4) On the date set forth below, I sent all documents responsive to the subpoena that were in the Company's possession, custody, or control to the investigative agent whose name appears on the subpoena.

5) All of the documents I furnished were authentic records maintained by the Company or maintained under the Company's ultimate control, direction, or supervision.

6) With the exceptions noted below, the documents I furnished were business records created by the Company or Company employees or business associates, or were business records received and kept by the Company or Company employees or associates in the ordinary course of the Company's business affairs.   That is, the records I furnished were made at or near the time of the events recorded therein; were made on the basis of personal knowledge of the events recorded; were made or received, and kept, in the course of a regularly conducted business; and were made or received, and kept, as part of a regular business practice.   Exceptions, if any, are the documents identified as follows:

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____

By: _Diane Chambers_____   Title/Position: _Call Center Manager_____

Signature _____



Date_____
844340

**RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT**   CONV ☒ FHA ☐ VA ☐

ASSIGNEE: Vanderbilt Mortgage and Finance, Inc.

| Buyer's Name: RAMON FLORES | Co-Signer's Name: |
| Buyer's Name: | Co-Signer's Name: |
| Buyer's Address: 15459 NORTHWOOD BV , BAYTOWN , TX 77521 | |

"Buyer" refers to all persons who sign this contract as buyer or co-buyer, jointly and severally. "Seller" refers to the seller. The Seller will submit this contract to Vanderbilt Mortgage and Finance, Inc,. P.O. Box 9800, Maryville, Tennessee 37802; and, if approved, the contract will be assigned to Vanderbilt Mortgage and Finance, Inc. Buyer promises to advise Seller in writing of any change of Buyer's mailing address while this contract is in effect. Seller should send any papers or notices concerning the Manufactured Home purchased under this contract to Buyer's mailing address. On the date of this contract, Buyer buys from Seller on a credit sale basis the Manufactured Home described below, together with furnishings, equipment, appliances and accessories included in the Manufactured Home at the time of purchase (collectively called "Manufactured Home").

**PROMISE TO PAY:** Buyer promises to pay Seller the "Unpaid Balance" as listed under "Itemization of Amount Financed" below plus interest from the contract date at the rate of **10.99 %** ("Contract Rate"). The "Unpaid Balance" includes any Prepaid Finance Charges advanced for Buyer. Prepaid Finance Charges, if any, shall be deemed fully earned by Seller when Buyer executes this Note. Buyer will pay the loan by making monthly payments in the amount(s) and on the dates listed in the Payment Schedule shown below. Buyer understands that the amount of the regular payment is based upon the assumption that all payments will be made on the scheduled due dates and in the scheduled amounts. If no Contract Rate is disclosed above, the initial interest rate is the Annual Percentage Rate shown below. The finance charge is figured on the assumption that Buyer will make each payment exactly as scheduled. (Buyers payment schedule).

**Description of Manufactured Home**   New ☒  Used ☐

| TRADE NAME: CMH | ADDITIONAL ACCESSORIES AND FURNISHINGS: ITEM AND SERIAL # | |
| --- | --- | --- |
| YEAR:        MODEL: SIERRA VIS | FURNACE E9ED9110744Z | MICROWAVE SH9163BBU |
| LENGTH:        WIDTH: | RANGE ZH1591499P | A/C RS3H50786 11 |
| SERIAL NO:   CLW023487TX | WATER HEATER 125276980 | |
| SERIAL NO: | DISHWASHER VH7537848 | |

| | Amount Financed The amount of credit provided to Buyer or on Buyer's behalf: | Total of Payments The amount Buyer will have paid after Buyer has made all payments as scheduled: | Total Sale Price The total cost of Buyer's purchase on credit including Buyer's down payment of $2,000.00 |
| --- | --- | --- | --- |
| | $40,320.00 | $82,443.60 | $84,443.60 |

Buyer's payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
| --- | --- | --- |
| 180 | $458.02 | Monthly, beginning, 9/01/2006 |
| | | Monthly, beginning, |
| | | Monthly, beginning, |
| | | Monthly, beginning, |

**Security:** Buyer gives Seller a security interest in:
☒  The goods or property being purchased including the Manufactured Home as described above.
☐  Real property located at:
**Late Charge:** If a payment is more than 15 days late, Buyer will be charged 5% of the unpaid amount of such payment, not to exceed $5.00.
**Rebate for Prepayment :** At any time, Buyer has the right without penalty to pay this contract in full or to pay more than Buyers schedule requires. Buyer earns the Prepaid Finance Charge when Buyer receives the Home and no part of it will be refunded if Buyer pays in full ahead of schedule.
**Assumption:** Someone buying the Manufactured Home may be allowed to assume the remainder of Buyer's obligations under this contract on the original terms only if such person is approved by Seller.
See "Additional Terms and Conditions" on reverse side for additional information about nonpayment, default, required payment in full before the scheduled date and prepayment refunds and penalties.



Page 1

002061701-00005

13cr628-026948

2

## ITEMIZATION OF AMOUNT FINANCED:

1. Cash Price for:
- l. Cash Price (Including Sales Tax of $.00 ) .................. **$39,900.00**
- b. Home Prot Plan ........................................ **$769.00**
- c. Total Cash Price ...................................... **$40,669.00**
2. Downpayment
   - a. Cash Downpayment ......... **$2,000.00**
     - Trade-In (Year, Make, Model) N/A
     - Length    N/A    Width    N/A
     - Trade Allowance    N/A    Liens    N/A
   - b. Net Trade-in Allowance        N/A
   - c. Total Downpayment ................... **$2,000.00**
3. Unpaid Balance of Cash Price (1c minus 2c) .............. **$38,669.00**
4. Amounts paid to others on Buyer's behalf ..
   - a. To Insurance Companies
     - (1) Property Insurance ............. **$1,432.00 \*\***
   - b. To Public Officials
     - (1) Certificate of Title ................. **$130.00**
     - (2) Filing Fees ....................... **$.00**
   - c. To ........................................ **$.00 \*\***
   - d. To ........................................ **$.00 \*\***
   - e. To MHIT .............................. **$89.00 \*\***
   - f. To ........................................ **$.00 \*\***
   - g. To ........................................ **$.00 \*\***
   - h. To ........................................ **$.00 \*\***
   - i. To ........................................ **$.00 \*\***
   - j. To ........................................ **$.00 \*\***
   - k. To ........................................ **$.00 \*\***
   - l. To ........................................ **$.00 \*\***
   - m. To ........................................ **$.00 \*\***
     - Total (items a. through m.)        **$1,651.00**
5. Unpaid Balance (3 plus 4) ...................... **$40,320.00**
6. Prepaid Finance Charges ....................... **$.00**
7. Amount Financed (5 minus 6) ................... **$40,320.00**

\*\* Seller may retain, or receive, a portion of these amounts

### INSURANCE:

**PROPERTY INSURANCE ON THE MANUFACTURED HOME IS REQUIRED FOR THE TERM OF THIS CONTRACT. BUYER HAS THE RIGHT TO OBTAIN SUCH INSURANCE FROM ANYONE AUTHORIZED BY LAW TO SELL IT.**
However, by checking the appropriate box below, Buyer elects to buy through Seller property insurance of the specified coverage, term and premium.

| Type of Insurance | Term | Premium |
|---|---|---|
| ☒ MobilOwners | 12 | $1,432.00 |
| ☐ | | |

Buyer's signature indicates Buyer's election to obtain the above marked insurance coverage for the term and premium.

Signature _Ramon Hays_ Date 7-10-06
Signature _____ Date _____
Signature _____ Date _____
Signature _____ Date _____

### SERVICE PLAN:

Service plans are <u>voluntary</u> and are <u>not</u> required to obtain credit. If the box is checked, Buyer(s) has elected to purchase the service plan at the terms shown below.

| Type of Plan | Term | Cost |
|---|---|---|
| ☒ Home Protection Plan (HPP) | 60 | $769.00 |

Buyer's signature indicates Buyer's election to obtain the above marked service plan for the term and cost.

Signature _Ramon Hays_ Date 7-10-06
Signature _____ Date _____
Signature _____ Date _____
Signature _____ Date _____

**SECURITY INTEREST:** Buyer gives Seller a security interest under the applicable certificate of title law and the applicable Uniform Commercial Code in the Manufactured Home and any property added or attached to it, and if indicated above the real property as described, to secure Buyers obligation under this Contract. If this loan is also secured by a Deed of Trust or Mortgage on my real property, then this security agreement is not exclusive. If, and to the extent permitted by applicable law, Buyer agrees that Seller or its assignee may charge and collect from Borrower a reasonable fee for preparing documents related to this transaction, such as applications for certificates of title, financing statements, mortgages and deeds of trust, as well as any amendments to or terminations of any security interests created by any of the foregoing. All rights and remedies under this Note and any Deed of Trust executed herewith are cumulative, but Buyer's right to a written notice of default and 30 days to cure shall not be affected by any inconsistent provision of any Deed of Trust. Buyer also assigns directly to Seller any interest Buyer may have in premium refunds or proceeds under any insurance covering the Manufactured Home. Buyer agrees to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect Sellers security interest in the Manufactured Home. Buyer authorizes Seller to sign Buyer's name to any financing statement or application or other document which may necessary to perfect the security granted by Buyer herein.

**BUYER'S RIGHT TO PREPAY: BUYER MAY PREPAY ANY AMOUNTS DUE UNDER THIS CONTRACT AT ANY TIME WITHOUT PENALTY.** However, pre-paid finance charges (loan fees, points, finders fees or similar charges), if any, will not be refundable. Buyer has the right to make payments at any time before they are due. Unless Buyer directs Seller otherwise in writing, Seller will apply Buyer's prepayments to reduce the next scheduled payment or payments that Buyer owes under this contract. A partial prepayment will not change the due date or monthly payment amounts.

**PROPERTY INSURANCE:** Buyer is required to insure the Manufactured Home against physical damage for the term of the contract at Buyer's expense, subject to Sellers approval. If Buyer purchased and financed the premium(s), the premium is financed over the term of the loan, even though the term of insurance is less than the loan term. The amount of coverage must provide the types and amounts required by Seller. The insurance policy will contain a loss payable clause protecting Seller (Seller's interest may appear), and provide for at least a 10 day notice of cancellation to Seller. Buyer agrees to provide written proof of such coverage to Seller at Seller's request within 5 days notice. Buyer has the right to choose the person through whom the property insurance is obtained. If Buyer's insurance coverage expires or is canceled prior to payment in full of this contract, Buyer must obtain no less than the minimum coverage at Buyer's expense for the remaining

Page 2

002061701-00005

13cr628-026949

term of the contract. Should Buyer fail to maintain coverage or fail to provide proof of such insurance, Seller may, but is not obligated to, at Seller's sole discretion, obtain coverage in an amount and type it deems necessary. Buyer agrees that such coverage may cover Seller's interest and Buyer's interest or only Seller's interest. Seller may, at its sole option, insure against losses in amounts equal to the unpaid balance due on the note. Buyer understands the insurance premiums may be higher if Seller purchases the insurance than might be the case if Buyer had purchased the insurance. Seller may purchase the insurance from an affiliated company which may receive a profit for this service. Seller has no obligation to Buyer to search for any lower cost premiums that may be available to Buyer by other insurance companies.

**ADVANCES TO PROTECT THE MANUFACTURED HOME:** If Buyer fails to pay for required insurance, if Buyer fails to pay park or lot rent (and any other related charges), if Buyer fails to satisfy taxes, assessments, or other liens or encumbrances against the Manufactured Home, if Buyer fails to keep the Manufactured Home in good repair or if Buyer fails to make any other payments required by this contract or applicable law, Seller may (but is not required to) make such repairs or payments Seller chooses. Any and all of such payments made by Seller, and any amounts Seller pays to protect or enforce Seller's security interest, will be added to the amount Buyer owes Seller on this contract, and will be secured by the Manufactured Home. Buyer agrees to pay interest on these amounts at the Contract Rate provided for in this contract on any such amounts Buyer does not repay immediately. At Seller's sole option, Seller may (1) demand that Buyer repay these amounts immediately, or (2) add these amounts to Buyer's regularly scheduled payments, or (3) add these amounts as additional installments due or (4) add these amounts to the final installment due on this contract.

**DELINQUENCY AND DEFAULT:** Time is of the essence. If a payment is more than 15 days late, Buyer agrees to pay a late charge of 5% of the unpaid amount, not to exceed $5.00. If any check, negotiable instrument of withdrawal or share draft is dishonored and returned to Seller by Buyer's financial institution, Buyer will pay a processing fee of a maximum of $20.00 or the maximum amount permitted by law, whichever is less, in addition to being required to make payment on the item, and late charges. Buyer will be in default on this contract if: (1) Buyer fails to make any payment when due; or (2) otherwise fails to perform any of Buyer's obligations under this contract; or (3) Buyer dies or becomes legally unable to manage Buyer's affairs; or (4) any statement of fact, representation or warranty Buyer makes to Seller in Buyer's loan application, or in any loan document is false, misleading, inaccurate, or incomplete. In the event of Buyer's default, Seller will give Buyer notice of the right to cure the default ("Notice of Default") when required by law. Buyer is not, however, entitled to a Notice of Default more than twice in any one-year period. Under no circumstances is Buyer entitled to a Notice of Default if Buyer has either abandoned or voluntarily surrendered the Manufactured Home, or if other extreme circumstances occur. If Buyer has not cured the default within 30 days after the postmarked date of the notice, Seller may accelerate the maturity of the debt and require Buyer to pay Seller the entire remaining balance due on the contract. Seller may take legal action against Buyer, and Seller may repossess the Manufactured Home. In the event of default, Buyer also agrees to pay Seller's expenses for (a) reasonable attorney's fees, not to exceed 15% of Buyer's unpaid debt, after referral to an attorney who is not Seller's salaried employee; (b) court costs and disbursements; and (c) costs of repossessing the Manufactured Home including the costs of storing, reconditioning, and reselling it. Before Seller sells the Manufactured Home, Buyer can get it back (redeem) if Buyer (1) pays Seller amounts which are past due, including late charges; (2) pays Seller the cost of taking and storing the Manufactured Home and other expenses that Seller incurs; (3) pays Seller all other charges or other expenses to which Seller is entitled under this contract; and (4) cures any other defaults which may have occurred. Buyer's right to redeem will end when the Manufactured Home is sold unless otherwise required by law. Any personal property of Buyer's in or attached to the Manufactured Home which is not subject to Seller's security interest may be held by Seller without liability if the Manufactured Home is repossessed. Buyer will be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within ten (10) days after repossession.

**OTHER TERMS AND CONDITIONS OTHER TERMS AND CONDITIONS:** Buyer will not move the Manufactured Home from the address above without Seller's prior written consent. Buyer will not sell the Manufactured Home without Seller's prior written consent. Buyer will not let the Manufactured Home become part of any real estate. Buyer agrees that the Manufactured Home sold by the terms of this contract is personal property. Unless Seller gives prior written consent, Buyer shall not allow the Manufactured Home to become a part of real estate or to otherwise lose its status as personal property under applicable law, and doing so shall constitute willful and malicious injury to the Manufactured Home and Seller's security interest herein. Buyer will not encumber or abandon the Manufactured Home or use it for hire or illegal activity, nor allow any lot lien, landlord lien, or similar lien to encumber the Manufactured Home. Buyer will pay promptly all taxes and any liens and encumbrances of the Manufactured Home. Buyer will notify Seller promptly of any loss or damage to, or confiscation or theft of the Manufactured Home. When Seller asks for it, Buyer promptly will provide Seller with proof that (1) Buyer has the insurance required under this contract; (2) all taxes assessed against the Manufactured Home have been paid; (3) all park or lot rent (and any other related charges) due has been paid; (4) Seller's lien is the only lien against the Manufactured Home, and (5) the Manufactured Home is in good condition and repair. Seller can inspect the Manufactured Home at any time. If Buyer is married, and residing in a community property state, both Buyer's community property and separate property will be liable for all payments under this contract. Buyer will cooperate with Seller regarding any requests after closing to correct errors made concerning this contract or the transaction and to provide any and all additional documentation deemed necessary by Seller to complete this transaction. Buyer acknowledges that Buyer has examined the Manufactured Home and that, if it is used, Buyer accepts the Manufactured Home as is. The year of the Manufactured Home as specified in this contract is for identification purposes only. Seller may rely on a telecopy or photocopy of this agreement as if it were an original. Buyer acknowledges that any Broker or other third party used to facilitate this transaction may receive compensation from Seller for its services. If the Home Buyer Protection Plan (HBPP) or Credit Life were purchased, the premium(s) are financed over the term of the loan, even though the term of insurance is less then the loan term.

**ARBITRATION:** All disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties, including the enforceability or applicability of this arbitration agreement or provision and any acts, omissions, representations and discussions leading up to this agreement, hereto, including this agreement to arbitrate, shall be resolved by mandatory binding arbitration by one arbitrator selected by Seller with Buyer's consent. This agreement is made pursuant to a transaction in interstate commerce and shall be

002081701-00005

13cr628-026950

4

governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.** The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract. The parties agree that the arbitrator shall have all powers provided by law, the contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, Seller retains an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by Seller pursuant to this provision.

**INFORMATION SHARING:** Seller may investigate Buyer's credit history and credit capacity in connection with opening, updating, modifying, extending, and/or collecting Buyer's account, and share information about Buyer and Buyer's account with credit reporting agencies. Seller may sell or otherwise furnish information about Buyer, including insurance information, to all others who may lawfully receive such information. Seller may furnish specific information about the Manufactured Home and any insurance policies on the Manufactured Home to any insurance agent to enable such agent to quote premiums to Buyer and solicit Buyer's insurance business. Seller may also verify Buyers employment, pay, assets, and debts; and anyone receiving a copy of this contract is hereby authorized to release such information to Seller.

**WAIVER AND MODIFICATION:** Seller's waiver of any default shall not constitute a waiver of any other default. The procurement of required property insurance, or the payment of taxes, or other liens, or other charges, by Seller shall not be a waiver of Seller's right to accelerate the maturity of this contract and declare a default herein.

**WARRANTIES:** Any warranties relating to a new Manufactured Home have been provided to Buyer by Seller, or a warranty company, or the manufacturer in a separate writing, receipt of which Buyer hereby acknowledges. Except as provided in such writing, if any, there are no **warranties, express or implied, including but not limited to warranties of merchantability or fitness for a particular purpose.** Buyer acknowledges that Buyer has examined the Manufactured Home and that, if it is used, Buyer accepts the Manufactured Home "as is". The year of the Manufactured Home is for identification purposes only. Except to the intent expressly stated herein, or as otherwise required by law, no assignee of this contract shall be liable, either in tort or contract, for any direct or indirect damages or for any special, incidental, or consequential damages arising out of or in connection with this contract or transaction. This disclaimer of warranties does not affect service contracts made with the Seller within 90 days from the date of this contract.

**VALIDITY:** Wherever possible each provision of this contract shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this contract shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this contract. The contract shall be governed both as to issues of formation and performance, by the laws of the State where the contract was executed by Buyer, provided that to the extent Federal preemption applies, Federal rights and remedies will be applied. This contract shall be of no effect until and unless signed by Buyer and Seller. In no event shall any charge under this contract exceed the highest amount allowed by applicable law. If any excess charge is received such excess shall be refunded or applied to the amount due.

**ASSIGNMENT:** Seller may assign this contract to any person or entity. All rights granted to Seller under this contract shall apply to any assignee of this contract.

**ENTIRE AGREEMENT:** This contract, any separate written warranty and the "Retailer Closing Agreement" constitute the entire agreement between Buyer and Seller. Buyer agrees that no representations, oral or written, have been made to Buyer to induce Buyer to enter into this contract, other than the representations expressly set forth in this contract and in any separate written warranty.

**GUARANTY:** Co-Signer agrees that all amounts owed under this contract will be paid when due. Co-Signer will still be obligated even if Buyer is released or if Seller waives or delays enforcement of any of Seller's rights under this contract. Seller does not have to give Co-Signer notice of any such waiver, delay or release. See attached Notice to Co-Signer before signing this guaranty.

**TO CONTACT VANDERBILT MORTGAGE AND FINANCE, INC. ABOUT THIS ACCOUNT CALL (865) 380-3000 OR (800) 970-7250. THIS CONTRACT IS SUBJECT IN WHOLE OR IN PART TO TEXAS LAW, WHICH IS ENFORCED BY THE CONSUMER CREDIT COMMISSIONER, 2601 N. LAMAR BLVD. AUSTIN, TX 78705-4207. TELEPHONE (512) 479-1285 OR (800) 538-1579. CONTACT THE COMMISSIONER RELATIVE TO ANY INQUIRIES OR COMPLAINTS.**

**NOTICE TO THE BUYER: 1. DO NOT SIGN THIS DOCUMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO AN EXACT COPY OF THE DOCUMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 3. CAUTION: YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS RETAIL INSTALLMENT CONTRACT CONSISTING OF FIVE (5) PAGES.**

002061701-00005

13cr628-026951

5

**SELLERS AGREEMENT:** Seller agrees to this contract, and subject to acceptance by Vanderbilt Mortgage and Finance, Inc. at its designated office, assigns it to Vanderbilt Mortgage and Finance, Inc. in accordance with the assignment set forth herein. Notice of acceptance is hereby waived.

Seller _____ CLAYTON CHANNELVIEW

By _____
      (Signature)             (Title)

Seller's Address

         CHANNELVIEW , TX
         (City)        (State)

Date of this Contract _____ JULY 10, 2006

CMH Homes Inc.
Tmya oods IDC

IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_Ramon Flores_ (signature)
(Buyer)                       RAMON FLORES

7-10-06
(Date)

_____
(Buyer)

_____
(Date)

**GUARANTY OF BUYER'S PROMISES:** The undersigned, separately and together, agree(s) to pay all amounts due on this contract until all amounts due on this contract are paid in full. The undersigned also agree(s) to all the terms and conditions of this contract.

_____
(Co-Signer)

_____
(Date)

_____
(Co-Signer)

_____
(Date)

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR (BUYER) COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR (BUYER) SHALL NOT EXCEED AMOUNT PAID BY THE DEBTOR (BUYER) HEREUNDER.

(See above for Buyer's and Seller's Signatures)

## ASSIGNMENT BY SELLER

**TO VANDERBILT MORTGAGE AND FINANCE, INC. (VANDERBILT):** For value received, Seller hereby assigns within contract and all Seller's right, title and interest in it, and its collateral to Vanderbilt Mortgage and Finance, Inc. (Assignee), together with certain warranties and recourse obligations, if any, contained in the underlying agreement between Seller and Vanderbilt.

VANDERBILT MORTGAGE AND FINANCE, INC. assigns

_____

the foregoing contract including all amounts payable by buyer and the security interest in the collateral, without recourse.

Date_____ By:_____ Title:_____

TX  Fixed-Rev 02/2003

002061701-00005

13cr628-026952

| Date Payment received | Amount Received | MTCN |
|---|---|---|
| 1/21/2008 | $684.00 | 7862095089 |
| 2/8/2008 | $689.00 | 6401558958 |
| 3/17/2008 | $684.00 | 1508424947 |
| 4/24/2008 | $700.00 | 2911906630 |
| 6/2/2008 | $684.00 | 3791917228 |
| 6/26/2008 | $686.00 | 3386847134 |
| 8/6/2008 | $684.00 | 9801458041 |
| 9/10/2008 | $685.00 | 8176611404 |
| 1/16/2009 | $686.00 | 4771786795 |
| 2/3/2009 | $686.00 | 7073282804 |
| 2/20/2009 | $686.00 | 6422722904 |
| 3/21/2009 | $685.00 | 5102862146 |
| 4/28/2009 | $686.00 | 6061555153 |
| 5/11/2009 | $685.00 | 5581089743 |
| 6/5/2009 | $685.00 | 4400237674 |
| 7/8/2009 | $688.00 | 3503576349 |
| 8/3/2009 | $1,400.00 | 2108180729 |

13cr628-026953



**RAQUEL GARCIA**
1347 DELL DALE ST.
CHANNELVIEW, TX  77530-2203

32-61/1110 3802

840

PAY TO THE
ORDER OF  _Vandenbilt    MortgageFinc_  $ 4,580.7

_four  thausnd five hundred eighty 78/100_  DOLLARS

**CHASE** ⬡
JPMorgan Chase Bank, N.A.
Dallas, Texas 75201
www.Chase.com

MEMO  _Pay Full  #844340_                    _Raquel Garcia_

⑈111000614⑈  4222416350⑈0840

Ramon Flores
1347 Dell Dale St
Channelview TX 77530-2203

A late charge of $5.00 will be
assessed if your loan payment is
not received by 09/16/10.

☐  Check this box if your address or personal information
has changed or you are signing up for Automated Draft
and complete the form on the reverse side.

**Monthly Loan Notice**
Loan Number:                                   **844340**
Due Date:                     September 1, 2010
Total Amount Due:                     $2,022.89

Amount Enclosed    $4580.78

VANDERBILT MORTGAGE & FINANCE
P.O. BOX 660238
DALLAS, TX  75266-0238

120844340900069483002022899

13cr628-026954