9 - 1

1
                **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF TEXAS**
2
                    **HOUSTON DIVISION**

3

  UNITED STATES OF AMERICA       *   4:13-CR-00628-1
4
                          *
  VS.                      *   10:06 a.m.
5
                          *
  HORTENCIA MEDELES-ARGUELLO     *   APRIL 23, 2015
6
     **REDACTED EXCERPT OF TRIAL - CLOSING STATEMENTS**
7
       **BEFORE THE HONORABLE DAVID HITTNER**
              **AND A JURY**
8
           **Volume 1 of 1 Volume**

9 **APPEARANCES:**

10 **FOR THE UNITED STATES OF AMERICA:**
   Mr. Ruben R. Perez
11 Mr. Joseph C. Magliolo
   Assistant United States Attorney
12 1000 Louisiana
   Suite 2300
13 Houston, Texas 77002
   (713) 567-9344
14
   **FOR THE DEFENDANT, HORTENCIA MEDELES-ARGUELLO:**
15 Mr. Ali R. Fazel
   Scardino and Fazel
16 1004 Congress
   Third Floor
17 Houston, Texas 77002
   (713) 229-9292
18
   **INTERPRETERS:**
19 Mr. Ramon Del-Villar
   Ms. Linda Hernandez
20 Ms. Graciela Dachman
   Mr. Gregorio Ayala
21
   Court Reporter:
22 Laura Wells, RPR, RMR, CRR
   515 Rusk, Suite 8016
23 Houston, Texas 77002

24 Proceedings recorded by mechanical stenography.
   Transcript produced by computer-assisted transcription.
25

```
 1        (Beginning of requested excerpt, as follows:)
 2            MR. PEREZ:  Thank you, Your Honor.  Good morning
 3   or good afternoon?  It is still good morning.  Good
 4   morning.
```
11:58:03
```
 5        On behalf of the agents, these fine men and women who
 6   represent the United States in protecting us, on behalf of
 7   Mr. Magliolo and myself, and especially on behalf of the
 8   victims in this case, the victims of modern-day slavery, I
 9   want to really from the bottom of our respective hearts
```
11:58:22
```
10   thank you for your time and effort in listening to the
11   evidence in this case.  I know it's taken you out of your
12   jobs and your daily routines.  And as the Judge said, we
13   have moved along at a very fast pace.  But again, thank
14   you very much for your time.
```
11:58:37
```
15            THE COURT:  By the way, ladies and gentlemen,
16   this case moved along very quickly for this complex case.
17   I want to thank the attorneys, also, for moving it along.
18            MR. PEREZ:  Thank you, Your Honor.
19        I ask you, in listening to the evidence, you can use
```
11:58:49
```
20   your common sense.  You didn't leave your common sense at
21   the doorway when you came to court here today.  You can
22   use your common sense and your everyday experiences in
23   evaluating the facts in this case.
24        If I say something that did not come out in evidence,
```
11:59:04
```
25   please disregard it because 12 pairs of ears are better
```

```
 1   than the one here.  I don't mean to misstate the truth.
 2   So if I say something you didn't hear, you just disregard
 3   it.
 4        The Judge has given you instructions.  As he said, he
 5   is the judge of the law; and you are the judge of the
 6   facts.  I want to go over the law very briefly to
 7   emphasize some parts that I think were really important in
 8   this case.
 9        On Page 10, the defendant is the one on trial here.
10   You are here to decide whether the government has proven
11   its case beyond a reasonable doubt that the defendant is
12   guilty of the crimes charged.  Neither are you called upon
13   to return a verdict of guilty as to any other person or
14   persons not on trial as a defendant in this case.
15        So the defendant is the one on trial here.  I know
16   Mr. Ali has cross-examined numerous people on different
17   issues.  And again, as the Judge has instructed you, the
18   defendant is the one on trial.  We are here because of
19   what the defendant did.  That's why we are here.
20        The Judge is also going to -- has instructed you on
21   this issue.  The defendant is charged with conspiracy to
22   commit sex trafficking that occurred between 2009 and
23   October the 10th, 2013.  The defendant is further charged
24   with conspiracy to harbor illegal aliens between January
25   1999 and October the 10th, 2013.
```

11:59:21
11:59:36
11:59:56
12:00:17
12:00:34

1    Evidence of a crime, wrong or other acts that may have

2  occurred between 1999 and January of 2009, as testified to

3  by numerous young women, numerous victims, are not

4  admitted to prove the defendant's character in order to

5  show that on a particular occasion the defendant acted in

6  accord with her character.  You must not consider any of

7  this evidence in deciding the defendant committed the acts

8  charged relating to the sex trafficking conspiracy.

9    The evidence may be admissible in the sex trafficking

10  conspiracy only to prove the defendant's motive,

11  opportunity, intent, preparation, plan, knowledge,

12  identity, absence of mistake or lack of accident.  The

13  evidence is admissible for all purposes as to the

14  conspiracy to harbor illegal aliens charge that occurred

15  between January 1999 and October the 10th, 2013.

16    Another thing that I would emphasize to you on the

17  same page, on this Page 11, is that if a defendant is

18  found guilty it will be the Judge's duty to decide what

19  the punishment will be.  You should not be concerned with

20  punishment in any way.  It should not enter into your

21  consideration or discussion.

22    I know Mr. Ali talked about the ranges of punishment

23  that different people may have been exposed to, what

24  punishment the defendant may be exposed to.  That is not

25  your concern.  That is up to the Judge.  And he has told

1  you, this Honorable Judge, has given it to you in writing

2  that it's up to him.

3      At the beginning of this case in opening statements I

4  told you that at the end of the trial the Judge was going

12:02:24  5  to instruct you as to what crime the defendant is accused

6  of and what you as the judges of facts are determined to

7  find the defendant guilty or not guilty.  Obviously, based

8  on the evidence that we have submitted, I submit to you

9  that the evidence clearly shows she is guilty of all

12:02:42  10  counts.

11      Now, the conspiracy to commit sex trafficking is on

12  the bottom of Page 15; but I'm going to try to break it

13  down.  Okay.  One way for the defendant, Tencha, to be

14  found guilty of conspiracy to sex traffic is -- one way is

12:03:17  15  for her to agree with at least one other person to provide

16  a place for prostitution to occur, knowingly or recklessly

17  disregarding the fact that the girls were doing it against

18  their will.  That is, they were forced or tricked or both.

19  If you find unanimously that she did that, she is guilty

12:03:37  20  of conspiracy to commit sex trafficking.

21          THE COURT:  Hold it.  Yes, sir.

22          MR. FAZEL:  Objection, Your Honor.  That

23  misstates the law.  That's incorrect.

24          MR. PEREZ:  That is not incorrect, Your Honor.

12:03:44  25          THE COURT:  What is your objection?

```
 1              MR. FAZEL:  That is a misstatement of the law.
 2     The prostitution term he threw in there is a misstatement.
 3              THE COURT:  Say it again.
 4              MR. FAZEL:  The term prostitution is a
 5     misstatement of the law.  I object.
 6              THE COURT:  What should it be?
 7              MR. FAZEL:  It can't be prostitution if -- what
 8     he is saying is that if she agreed for prostitution and he
 9     ought to say if she is aware of the fact that these girls
10     are engaged in some activity then that's an element to the
11     crime of conspiracy.
12              MR. PEREZ:  Not true, Your Honor.  It's a
13     conspiracy, Your Honor.  She didn't even have to touch
14     them.
15              THE COURT:  Ladies and gentlemen, you read the
16     instructions as I gave it to you.  Okay.  What the
17     attorneys say is not the law and is not the facts of the
18     case.  It's as they remember it and they want to bring it
19     to my attention.
20          For the record, he is entitled to a ruling.
21     Overruled.
22              MR. FAZEL:  Yes, sir.
23              MR. PEREZ:  As I was saying, the defendant agrees
24     with at least one other person to provide a place for
25     prostitution to occur, knowingly or recklessly
```

Timestamps in left margin:
12:03:53 (line 5)
12:04:04 (line 10)
12:04:13 (line 15)
12:04:28 (line 20)
12:04:38 (line 25)

1  disregarding the fact that the girls were engaged in

2  prostitution there doing it against their will, that is,

3  that they were either being forced or tricked or both.  Or

4  a second way --

12:04:56  5      THE COURT:  I'll tell you what I'm going to ask

6  you to do.  I am going to stop the clock.  I want those

7  charts down unless you need them.  If you need them, pull

8  them up.  Are you going to use them right away?

9      MR. PEREZ:  Not right away, Your Honor.

12:05:07  10      THE COURT:  All right.  Put them down.  When you

11  need them, we'll put them up.  Okay.  It's just that we

12  have the problem here with the pole, and it's a public

13  forum.  I just don't want people blocked.  Okay.  I have

14  stopped the clock, by the way.  Any time you need them up,

12:05:22  15  we'll get them up; and we will put them right down.

16      MR. PEREZ:  Thank you, Your Honor.

17      THE COURT:  Go right ahead, please.

18      MR. PEREZ:  Now, A-3a, doing it against their

19  will.  They were forced or tricked or both.  A-3a, Page

12:05:52  20  3 -- actually, Page 4.

21      THE COURT:  Okay.  Do you want to now enlarge it

22  a little bit?

23      MR. PEREZ:  Yes.  Page 3 or --

24      THE COURT:  What we are looking at?

12:06:05  25      MR. PEREZ:  Page 3.  This is evidence that the

```
 1   girls were doing it against their will.
 2          THE COURT:  Now, what is it we are specifically
 3   looking at?
 4          MR. PEREZ:  Your Honor, I was going to read this.
 5   There is an excuse going to a doctor where there is a
 6   discussion about one of the girls being black and blue.
 7   It says there --
 8          THE COURT:  What is "UI", just for those who may
 9   not know what that is?
10          MR. PEREZ:  Unintelligible.
11          THE COURT:  What is "OV"?
12          MR. PEREZ:  Not sure, quite frankly, Your Honor.
13          THE COURT:  Somebody tell me.  What does "OV"
14   mean?
15          AGENT BRADLEY:  Overlapping.
16          THE COURT:  Overlapping.  Do you mean talking one
17   over the other?
18          AGENT BRADLEY:  Yes, sir.
19          THE COURT:  Okay.
20          MR. PEREZ:  She says, "I saw her black and blue
21   marks, big ones.  One here and -- and I saw that she had
22   one here.  And I saw one here, a big, huge black and blue
23   mark and -- and I think she also had one over here."
24          THE COURT:  Now, "CHS," confidential human
25   source?  The undercover person?
```

12:06:18
12:06:35
12:06:46
12:06:53
12:07:10

```
 1              MR. PEREZ:  Yes, sir.
 2              THE COURT:  All right.
 3              MR. PEREZ:  Tencha then says, "I think he put her
 4   in the hospital."
 5         Confidential source says, "Who put her in the
 6   hospital?"
 7         She then says, "Her pimp."
 8         "You think the pimp put her in the hospital?"
 9         "Yes.  He beat her up and put her in the hospital.
10   She was going to bring that thing."
11         From her own mouth -- from her own mouth she says, I
12   know that the pimps put them in the hospital.  From her
13   own mouth.
14         Then on Page A-1a, Page 4, starting right there.  "But
15   that one, she says that she requested a two-weeks
16   vacation."
17         Tencha says, "Oh, yes.  She told me that."
18         CHS says, "Maybe she was also beaten up by her pimp."
19         She mumbles, "Right."
20         He goes, "Uh?"
21         She chuckles.  She laughs.  She knows that the pimps
22   beat those girls to make them work at her location.
23         A second way that this defendant can be convicted of
24   conspiracy to commit sex trafficking is for her to agree
25   with at least one other person to provide a place for
```

Closing Statement by Mr. Perez - 10

1    prostitution to occur, knowingly or recklessly

2    disregarding the fact that the girls are minors. That is,

3    that they are under the age of 18.

4         MR. FAZEL: Judge, may I have a continuing

5    objection to the term "prostitution"? It has to be forced

6    sex.

7         MR. PEREZ: Not if it's a minor, Your Honor.

8         THE COURT: Okay. You have a running objection.

9    You needn't get up each time.

10         MR. FAZEL: Yes, sir.

11         MR. PEREZ: In the first two ways of committing

12   the sex trafficking Tencha is actually a member of a sex

13   trafficking conspiracy. Other people supply the girls.

14   Tencha provides the place. She provides Las Palmas. The

15   pimps provide the place -- provide the girls. She

16   provides the place knowing that they are either forced to

17   go there or tricked to go there; or if they are minors, we

18   don't have to prove force, fraud or coercion.

19        A third way that Tencha can be guilty of conspiracy to

20   commit sex trafficking is to agree with at least one other

21   person to benefit financially; that is, to make money.

22   And, whoa, we know she made a lot of money from a sex

23   trafficking conspiracy. Again, knowingly or recklessly

24   disregarding the fact that the girls were doing it against

25   their will.

```
             1      Four -- a third -- a fourth way for her to be guilty

             2   of conspiracy to commit sex trafficking is to agree with

             3   at least one other person to benefit financially; that is,

             4   again, to make money.  And again, made a lot of money from

12:10:19     5   the sex trafficking conspiracy knowingly or recklessly

             6   disregarding the fact that the girls were minors.  Again,

             7   we don't have to prove force, fraud or coercion if they

             8   were minors under the age of 18.

             9      And the third and fourth way of committing this

12:10:48    10   conspiracy to commit sex trafficking, she doesn't even

            11   have to engage in any of the sex trafficking activities,

            12   as the Court instructs you on Page 19.  At the top of the

            13   page it says the government would not have to prove that a

            14   defendant himself or herself engaged in any of the

12:11:10    15   trafficking activities.  Very clear.  That's what the

            16   Court gave you.

            17      As the Court instructs you on Page 19, which I just

            18   read, just that she agrees with someone else, who would

            19   include anybody she paid for working with her facilitating

12:11:28    20   the prostitution.  That would include anybody from the

            21   person who took the $5 at the booth, from the person who

            22   took the money on the second floor of the prostitution

            23   rooms, for the people who receive the money for the

            24   condoms, for the towels, for everything that occurred that

12:11:46    25   made money at that location.  The evidence is overwhelming
```

 1    that the defendant was running her brothel and profiting

 2    from it.

 3            Exhibit 39a, please.

 4            Okay.  This was not put up there, but I know it was

 5    introduced into evidence.  All these, the analysis that

 6    Agent Tan testified to -- when she testified, her

 7    testimony showed that from February 15th through 2012

 8    through August the 26th of 2013, which is certainly within

 9    the time of the conspiracy for the sex trafficking, she

10    made a total of $1,607,400, U.S. dollars.

11            MR. MAGLIOLO:  The final one.

12            MR. PEREZ:  $1,607,400.  I can't count that high.

13    $1,607,400.  Look at the number of times providing this

14    place for the prostitution to occur.  From that time

15    period, in the 19 months that Agent Tan did an analysis --

16    this comes from the room sheets.

17            Remember Juan Carlos Munoz, one of the informants,

18    produced these line sheets every day and would meet every

19    Tuesday with Deputy Edwin.  64,296 times were those rooms

20    used.  Overwhelming evidence that she provided a place for

21    these girls to engage in prostitution there against their

22    wills or being minors.

23            64,296 just in that time period.  That doesn't include

24    all the rest of the time that she ran that prostitution

25    place from January 2009, that you can consider, to October

1    2013.

2        And on some days the rooms were used over 300 times a

3    day.  And she wants to -- 300 times a day that these young

4    girls were subjected to slavery.

12:14:52  5        You also heard from Jorge Teloxa-Barbosa, how he gave

6    her the first $20,000 every week.  Just imagine $20,000

7    every week.  Yes, she benefited financially from that

8    place, from that sex trafficking conspiracy, from these

9    girls who were adults but they were forced or tricked into

12:15:19  10   working there, or minors.

11       Of course, the sex trafficking activities have to

12   affect interstate or foreign commerce, which means

13   basically state lines have to be crossed.  One of the

14   reasons we brought you the box of condoms is to show you

12:15:32  15   that they were made in Korea, distributed out of

16   California.  That affects interstate commerce.

17       One of the questions that I asked the informant was

18   "Was Corona sold there?"

19       "Yes."

12:15:46  20       "Where was it made?"

21       "In Mexico."

22       Again, that affects interstate commerce.  If you read

23   the instruction that the Court gave you, however

24   minimal -- however minimal it affects interstate commerce

12:15:58  25   is enough.

1    Now I'm going to go over the testimony that these

2  victims testified to.  Before 2009 you can use the

3  testimony of these girls, as I said, only for the other

4  things the Judge gave you, like opportunity, plan, motive

12:16:26   5  and so forth; but you can't consider their testimony in

6  the harboring conspiracy that occurred from 1999 to 2013.

7    Let's talk about XXXXXXXXXXXX.  The defendant

8  specifically asked her if she had any papers; and she

9  said, no.  XXXXXXXXXXXX said no.  That's evidence that you

12:16:53  10  can consider about the harboring.  She is from Mexico.

11    XXXXXXXXXXXXXXXXXX, also an illegal alien from Mexico,

12  testified that the defendant complained that a person had

13  not paid her for the cost of smuggling the two male

14  relatives working for the defendant.  Again, evidence of a

12:17:17  15  conspiracy to harbor aliens.

16    You heard from XXXXXXXXXXXXX, who worked there from

17  May 2003 to May 2007, illegally from Mexico.  Certainly

18  she testified that she was illegal.  She worked there.

19    Then you heard from XXXXXXXXXXXXXXX, who was a minor

12:17:42  20  who worked there.  And again, you can consider this for

21  the harboring conspiracy.  She worked at Las Palmas in

22  2004 and a second time from April to July of 2005.  You

23  can consider that for the harboring.

24    You heard from XXXXXXXXXXXX, also a minor, illegally

12:18:06  25  from Mexico.  She was hired by the defendant to work at

1    Las Palmas.  She was an illegal alien.  Another victim

2    that -- or another witness that you can use to evaluate

3    whether she is guilty of the conspiracy of harboring

4    aliens.

12:18:24    5        You heard from XXXXXXXXXXXXX, who is also a minor, an

6    illegal from Mexico, who worked at Las Palmas from May of

7    2005 to July of 2005, that she also was an illegal alien

8    who was from Mexico.

9        It seems like everybody who worked there, anybody she

12:18:43   10    dealt with was an illegal alien.  And remember at the time

11    that the officers arrested these defendants in October

12    2013, Pierre Perry from Homeland Security said that, I

13    think it was, like, 26 people -- I don't want to misstate

14    what he said.  Out of the 26, I think 25 or possibly 26

12:19:04   15    were all illegal aliens.  He told you all that.  Again,

16    this place was just running over with illegal aliens.

17    It's a place to conspire to harbor illegal aliens.

18        Let's talk about the witnesses who testified about

19    events that occurred after 2009.  You heard from XXXXX

12:19:28   20    XXXXXXXXXX, an illegal from Mexico.  And at the beginning

21    when I did the opening statement I told you you were going

22    to hear from these young women, and I told you what I

23    anticipated their testimony would be.  And they testified

24    as to what happened.  And I'm going to go ahead and tell

12:19:44   25    you.  I will try to summarize, at least briefly, as to

Closing Statement by Mr. Perez                                16

1    what their testimony was.

2        She worked at Las Palmas from December of 2008 to

3    April 2012.  She identified Tencha as the owner of Las

4    Palmas.  If you will recall, she testified that the

12:20:01  5    defendant addressed her and about 30 other women that she

6    did not want their pimps bringing them to work.  Again,

7    aware that pimps were supplying the girls.  She set the

8    rules.  The girls were to take a taxi or drive themselves

9    because the police were taking down license plates of the

12:20:20  10    vehicles.

11        The defendant did not want the girls to show up with

12    signs of bruises because she did not want the police

13    alerted.  She did not care that they were beaten.  She

14    just did not want the police snooping around.  Again,

12:20:33  15    evidence that she was aware that the girls were forced to

16    work at her place.

17            THE COURT:  Yes, sir.

18            MR. FAZEL:  Objection.  That is misstating,

19    mischaracterizing the evidence.  There was no evidence

12:20:42  20    that she did not care whether they were beaten, bruised or

21    she just didn't want to get caught.  That's a misstatement

22    of facts.

23            THE COURT:  Ladies and gentlemen, I elect not to

24    comment on the evidence.  You heard the objection.  You

12:20:54  25    will recall the evidence as you heard during trial, and

1    you'll act upon that evidence as you perceived it and

2    remember it.

3        Go right ahead, sir.

4        MR. PEREZ:  Certainly the jury can infer from the

12:21:04  5    evidence as to what occurred, as well, Your Honor.

6        THE COURT:  Well, you are talking about what?

7    The circumstantial?

8        MR. PEREZ:  Well, I'm just saying that --

9        THE COURT:  Well, that's -- you can argue to the

12:21:11  10    jury.  Not to me.

11        MR. PEREZ:  Okay.

12        THE COURT:  Talk to the jury, please.

13        MR. PEREZ:  There can be direct evidence.  There

14    can be circumstantial evidence.  You can certainly infer

12:21:18  15    from either direct or circumstantial evidence what

16    occurred.

17        You can also infer or there may even be testimony the

18    defendant didn't care how old the girls were so as long as

19    they showed IDs showing they were older.  Every girl who

12:21:37  20    testified who was a minor had a fake ID.  So long as you

21    have a fake ID, I don't care whether you are a minor or an

22    adult so as long as you have one.  I don't care if you are

23    a minor.  You can work here.

24        Further evidence that the defendant knew that the

12:21:49  25    girls who worked there were forced or beaten or whatever,

1   forced to work there, was according to Rosa Tzompantzi's

2   testimony.  La Morena, Tencha's niece, a co-conspirator in

3   this case, La Morena-Hernandez' picture on the board over

4   there, she would check for bruises on the girls.  In one

12:22:10   5   instance La Morena, XXXXXXXXXXXXXXX told you, sent a girl

6   home for having bruises after one of the pimps had beat

7   her up after doing a check; and the poor girl gets beaten

8   up for getting sent home because of the bruises that he

9   had inflicted on her and beat her up again.

12:22:30   10   There was also testimony from XXXXXXXXXXXXXXX that she

11   recalled five underage girls were working at Las Palmas

12   and that everybody knew that anybody there at Las Palmas

13   was illegal.  Again, you can consider this for either the

14   sex trafficking and the harboring.

12:22:47   15   You heard from XXXXXXXXXXXXX.  She was from Honduras.

16   She worked at Las Palmas from November to December 2012.

17   A method of control for her was threats to harm her child

18   and forced abortion prior to the pimp bringing her to the

19   U.S.

12:23:07   20   Again, Tencha, the owner of the bar.  All of the money

21   these girls gave to Las Palmas, they all went to the

22   defendant.

23   Evidence about harboring, she told Odelia, another

24   co-conspirator in this case pictured on the board, that

12:23:21   25   she was illegally in the United States.  Again, a

Closing Statement by Mr. Perez

conspiracy and the Judge has extensively read the
conspiracy statute to you.

     You also heard from XXXXXXXXXXXXXXX, another illegal
from Mexico.  She worked at Las Palmas from May/June 2010
to March 2011.  Method of control for her was beating her.
She knew the defendant as the owner, as they all knew the
defendant as the owner.  The defendant would come every
night to pick up the money from the use of the
prostitution rooms.  Benefited financially.  Every night
she would come to pick up the money from the use of the
prostitution rooms.  She would also see Tencha counting
money there at that location.  Other evidence that she
benefited financially from her location.

     She testified that the defendant held at least two
meetings where the defendant told the girls not to mention
her or anything about the pimps if the police came.  Other
evidence that she was in the conspiracy with the pimps.
She provided the place.  They provided the girls.  But
don't tell the police about the pimps.

     You heard from XXXXXXXXXXXX, a minor.  Again, no need
to prove force, fraud or coercion.  That she was illegally
in the country while working at Las Palmas as a
prostitute.  That she worked there from February of 2011.
That she again knew the defendant as the owner.  And just
like the other girls, the defendant received a portion of

1    the prostitution money for the use of the room and the

2    condoms.

3         She also identified Tencha as the owner of Las Palmas

4    who represented -- reprimanded her for being near the

5    front door.  And again, all this is additional evidence

6    that Tencha was the owner, the outside manager.  She knew

7    -- was always trying to keep up with what was going on

8    there at that location.

9         You heard from XXXXXXXXXXXXXX, also a minor, who was

10   also known as XXXXXXXXXXXXXXXXXXX.  She was illegally in

11   the country.  She worked at Las Palmas from January 2011

12   through November 2011.  Again, that Tencha kept a portion

13   of the money made from the use of the room and the condoms

14   and that her pimp regularly controlled her by beating her.

15   Co-conspirator Odelia Hernandez also reprimanded her for

16   taking a break inside the room.

17        You heard testimony that she came forward and told

18   Deputy Chapuseaux that on March 28th, 2015, about her

19   being a victim of human trafficking.  She told you.  She

20   told you that Deputy Chapuseaux tried to rescue her in

21   2011 and 2012, but she did not come forward because of the

22   overwhelming fear of her pimp and for the safety of her

23   family.

24        The pimps provided the girls.  She provided the place.

25        You heard from XXXXXXXXXXXX, another minor from

```
12:26:49
```

 1  Mexico, also illegally in the country, when she worked at

 2  Las Palmas.  She worked at Las Palmas from March to August

 3  2012.  She also identified Tencha as the owner of the

 4  place and that Tencha kept the money made from the use of

 5  the prostitution rooms.

 6      You heard testimony from two HPD officers about the

 7  numerous law enforcement raids and operations that took

 8  place at that location.  And, you know, they kept going

 9  there to no effect, going there to no effect, going there

10  to no effect.  The money was just too great.  You can

11  infer from the evidence that the money was just too great.

12  They would try to get there and try to shut it down, and

13  they just kept moving and moving.  The money was just too

14  great.  But what she tries to do is distance herself from

15  the operation of Las Palmas.

16              THE COURT:  Now, are you done with those charts?

17              MR. PEREZ:  Yes, Your Honor.

18              THE COURT:  For now?

19              MR. PEREZ:  Yes, Your Honor.

20              THE COURT:  Get them down, please.  Thank you.

21              MR. PEREZ:  Thank you, Your Honor.

22      You heard testimony that the defendant is trying to

23  distance herself from that location and maybe even trying

24  to sell the place for $450,000.  You heard testimony, as

25  she told the confidential informant, to erase those phone

Closing Statement by Mr. Perez                22 of 70 - 22

calls. I just don't want to be known as having anything
to do with this location, with this place.

Juan Carlos Munoz, A-6a, Page 4; and in that
particular transcript in her own words Tencha says that
the pimp talked to her to try to convince her for one of
the girls to work there. And then, on Page 4, she also
says that the pimps trained the girls well. Again, she
knows what those pimps do in order for them to work at
that location.

You can take that down.

On Page 22 -- I'm going slowly because I want to make
sure. I usually don't talk this slow, as you can tell
from when I'm asking questions. I'm going really slow
here to make sure that I don't misstate anything, to make
sure that I get all the evidence that was presented and
that I make sure that I really direct your attention to
what this defendant did.

On Page 22, the Court instructs you that in order for
you to find the defendant guilty of conspiracy to commit
sex trafficking you have to be unanimous on at least one
of the ways I just discussed with you, the four ways. The
testimony and evidence you have heard in the case clearly
dictates that you should find that she committed
conspiracy to commit sex trafficking in all four ways even
though you only need to find one way to find the defendant

 1    guilty of conspiracy to commit sex trafficking.

 2        Four different ways that you can find.  I submit to

 3    you that based on the evidence we have proved to you

 4    violation of all four ways and at least one for sure.  At

 5    least one but all four ways.

 6        On Page 24, Count 2, the defendant is charged with

 7    conspiracy to harbor illegal aliens.  The Judge has told

 8    you that just in the sex trafficking conspiracy,

 9    conspiracy is an agreement between two or more persons to

10    join together to accomplish some unlawful purpose.  It is

11    a kind of partnership in crime in which each member

12    becomes the agent of the other person.

13        It also says that a defendant, just like in the sex

14    trafficking conspiracy, if a defendant understands the

15    unlawful nature of a plan or scheme --

16            THE COURT:  Slow down.  Now, I know you don't

17    want to go slow but slow down a little bit because it's --

18    I want to get it all down.

19            MR. PEREZ:  I'm trying to not run out of time.

20            THE COURT:  I had the same thing when I had to

21    read it.  If you read it, slow down.

22            MR. PEREZ:  All right.  Thank you, Your Honor.

23        If the defendant understands the unlawful nature of a

24    plan or scheme and knowingly and intentionally joins in

25    that plan or scheme on one occasion, that is sufficient to

1    convict that person for conspiracy even though the

2    defendant had not participated before and even though the

3    defendant only played a minor part.

4         It's really important because in both the sex

5    trafficking conspiracy and in the conspiracy to commit

6    harboring she didn't play a minor role.  She played a

7    major role.  The law says even if you just commit a minor

8    role, that's enough to get convicted of conspiracy.  In

9    this case, again, she didn't just play a minor role.  She

10   played a major role.

11        It says if she intentionally joins in a plan or scheme

12   on one occasion.  Well, the evidence introduced in the

13   last week and a half showed that she just didn't do this

14   on one occasion.  She did it throughout the time that she

15   operated there at Las Palmas.

16        And on Page 26 the Judge defines "harboring" as the

17   aliens remained or entered in the United States in

18   violation of law, that she either knew or acted in

19   reckless disregard of the fact that the illegal alien had

20   entered or remained in the United States, and that she did

21   it for the purpose of commercial or private financial

22   gain.

23        Everything this woman did -- everything Tencha did was

24   for money.  No question that it was for commercial

25   advantage or private financial gain because everything,

1  again, that she did was for money.  For money.  For money.

2  For money.

3       Page 27, aiding and abetting to commit money

4  laundering, in Counts 3, 4 and 5 there is a lot of

12:33:45  5  language, a lot of legalese, a lot of legal terminology;

6  but it basically boils down to in Counts 3, 4 and 5 that

7  the defendant tried to hide the money she made at Las

8  Palmas.  She tried to hide the money from the government,

9  from you and me, tried to hide it.

12:34:01  10          THE COURT:  Yes, sir.

11          MR. FAZEL:  Judge, I object.  That's a

12  misstatement of the law.

13          THE COURT:  Ladies and gentlemen, I have given

14  you the law.  You'll follow it as I have it written.

12:34:07  15  Anything you hear from the attorneys is merely their

16  interpretation.  It's not evidence or the law itself.

17  What you have in writing, that's what you will consider.

18          MR. FAZEL:  May I have a ruling on that, Your

19  Honor?

12:34:17  20          THE COURT:  I have given, I think, sufficient

21  instruction.  I think the instruction is sufficient.  I'm

22  not going to rule necessarily on it.  I have given them

23  the law, and you are instructed to follow the law.

24          MR. FAZEL:  Yes, sir.

12:34:31  25          MR. PEREZ:  I think during some of the

1   examination of some of the witnesses Mr. Ali kept saying,

2   well, you can find this information by going to Harris

3   County or you can go to this and find, you know, because

4   Tencha wasn't very good at maybe not hiding the money or

12:34:46  5   hiding the proceeds from where it was coming.  And just

6   because she was not very good at it does not make you any

7   less guilty.  She shouldn't be given any brownie points

8   for not being very good at trying to hide the source of

9   the moneys.

12:34:59  10      For Count 3 we called witnesses to show that around

11  2012 she purchased a house and trailer in Channelview,

12  Texas and transferred the title to these properties to her

13  son, David Garcia, to hide the source of the moneys.  That

14  is, the unlawful activity of sex trafficking.

12:35:17  15      We're saying she tried to hide the money from sex

16  trafficking.  It doesn't mean -- the law doesn't say that

17  we have to say that she tried to hide the money, the

18  proceeds from the sex trafficking at Las Palmas.  It had

19  to be from Las Palmas.  We suspect, based on the evidence,

12:35:35  20  that it did come from Las Palmas.  It doesn't have to come

21  just from Las Palmas.  It can come from any sex

22  trafficking activity.

23      And on Count 3 that house and trailer were located at

24  403 Elsbeth in Channelview, Texas.  That house and trailer

12:35:57  25  in Channelview, Texas were in David Garcia's name.

1   Remember, Mr. Magliolo asked one of the witnesses, "Well,

2   if David never managed any of those properties, it would

3   be a slam dunk for the United States."

4       Well, let me say this:  Listen to the evidence that

12:36:16   5   David Garcia testified to.  He told you, I never put up

6   any money.  I never collected any rents.  I never managed

7   those properties.  Period.  I mean, he had nothing to do

8   with those properties other than these properties being

9   placed in his name.  And if she chose to put that under

12:36:35   10   her son's name and didn't do a very good job of hiding the

11   proceeds, then it doesn't make her any less guilty.

12       For Count 4 the evidence we presented further showed

13   that around 2012 she purchased a house in Channelview,

14   Texas and transferred the title to this property to her

12:36:53   15   son's name David, again, to hide the source of the money.

16   This house is located at 16501 North Shore Drive;

17   Channelview, Texas.

18       For Count 5 we presented evidence that around 2012 she

19   purchased a house in Houston, Texas and again transferred

12:37:11   20   the title to this property to her son's name, again, to

21   hide the source of the money.  And this is Count 5.  And

22   the house is located at 1919 Freeport; Houston, Texas.

23       Again, you heard her son, David, testify that he did

24   not put up any money for the property, that he did not

12:37:29   25   actually own the properties, did not manage the

properties, didn't collect any money from those
properties.  It was just under his name.

          Then in Count 6 we presented evidence that from
September 2011 to November 2011, she and her daughter,
Delia, recruited others to conduct financial transactions.
This was a total of 29 checks, all under $10,000, for a
total of $259,689.07.  This, obviously, based on the
evidence, was an effort to evade the bank filing
requirements.  You heard testimony that the banks are
required to file a terms and transaction report for cash
transactions over $10,000.

          She purchased a total of 29 cashier's checks.  It's
not a coincidence all these checks were for under $10,000.
They were all $9,000 checks made from September 2011 to
November 2011.  And you will recall the testimony that
some of these were at the same location.  Some purchases
within minutes of each other.  Some purchases within days
of each other.  All under $9,000.

          You heard testimony from David Garcia, her son, who
said that she told him just to keep them under $9,000.
Her own son testified to that.  Keep it under $10,000.
Keep it at about $9,000.

          THE COURT:  You have used 41 minutes if that's --
I know you are checking.  41 minutes.

          MR. PEREZ:  Thank you, Your Honor.

1          THE COURT:  You wanted to know.  I'll still give

2     you a 45-minute notice.

3          MR. PEREZ:  Thank you, Your Honor.

4          You know, we have been at this for over a week, been

12:39:27    5     listening to a lot of witnesses.  There were 12 girls who

6     testified, two informants, two police officers.  You heard

7     Ms. Constance Rossiter testify about -- Mr. Ali kept

8     talking about all these benefits these people received,

9     how people received benefits.  You heard Constance

12:39:48   10     Rossiter tell you that the benefits they are entitled to

11     them because they are victims.

12          The U.S. Congress -- you heard them testify.  The U.S.

13     Congress bestows these benefits on them if they are

14     victims.  They certainly are victims.  Under the vigorous

12:40:04   15     cross-examination one of the girls, XXXXXXXXXXXXX, is not

16     even in the United States.  She went back to Mexico.  So

17     she has no reason for her to get up here and tell you any

18     lie.  She came in here to tell you the truth.  Again, some

19     of these people did get status in the U.S. but not her.

12:40:22   20     She went back to Mexico.  She went back to her country.

21          Now, I will say this.  There has been some levity in

22     this case.  I think even I cracked a few jokes,

23     Mr. Magliolo, Mr. Ali, the Judge.  There has been some

24     laughter and some chuckles and some levity; but this is

12:40:41   25     serious, serious, serious business.  You know, these girls

12:41:05

1    came to the U.S. looking for the American dream; and they

2    instead found the American nightmare.  It's a nightmare

3    what they went through.  Think about the courage it takes,

4    the embarrassment that they went through for them to get

5    on that witness stand and under vigorous cross-examination

6    by a very skilled attorney to tell you what happened to

7    them.  Think about that.

8         Now, if you feel that they are not telling you the

9    truth, everything that they have told you has been

12:41:25

10   corroborated by this agent, by Deputy Edwin and the FBI

11   and all the agents involved in this case.

12        They came here in search of the American dream and

13   instead incurred the American nightmare.  And they endured

14   that slavery, that entrapment, that enslavement of them

12:41:48

15   being in slavery because of people like the pimps and

16   Tencha conspiring to force them into prostitution and them

17   being minors.

18        They didn't escape or wake up from this nightmare

19   until the angel showed up.  That angel was Deputy

12:42:10

20   Chapuseaux and his group.  Did you hear -- did you see --

21             MR. FAZEL:  I object to any type of

22   characterization of any government employee as being

23   angels.  That's bolstering.  That's inappropriate

24   argument, and it's crossing the line.

12:42:22

25             THE COURT:  Overruled.

```
 1            MR. PEREZ:  He is an angel.  He is an angel.  He
 2    is an angel to these young girls who he rescued.  Just
 3    from right there from the witness stand when they said,
 4    Well, did you trust law enforcement?
 5            No.  I was told not to trust law enforcement.
 6            Well, do you recall Deputy Edwin?
 7            Yes.
 8            Do you trust him?
 9            Oh, yes, I trust him.
10            He rescued them from this nightmare.
11            I am going to go ahead and close.  And I just want you
12    to try to remember this in closing:  The guts that it took
13    for those girls to come here before you and tell you what
14    happened and the vigorous cross-examination, what it took
15    for them to tell you what happened to them and all the
16    agony, the abuse, the ridicule, the embarrassment.
17            And then, as I said, I don't care what anybody says.
18    Deputy Edwin is an angel.  He rescued them.
19            Remember, I asked one of the girls or several of the
20    girls what is your life now compared to what it was when
21    you were at the hands of people like Tencha and those
22    pimps?
23            Oh, much better.  Much better.
24            They woke up from that nightmare.  And they are
25    babies.  And Deputy Edwin tried -- do you remember he
```

12:42:38
12:42:49
12:43:28
12:43:48
12:44:04

1    said, Whenever I get a call from a victim I try to

2    corroborate their story; and especially if it's a minor, I

3    try to get them out of that situation.

4         Well, XXXXXXXXXXXXXXX he tried twice to get her out of

12:44:25    5    that situation.  Because of the fear she didn't come

6    forward.  Thank God she came forward very recently.  And

7    again, this angel rescued her.

8         I submit to you that -- and I'm running out of time.

9         THE COURT:  You have used 46 minutes.  You are

12:44:38   10    well within the bounds.

11         MR. PEREZ:  Thank you, Your Honor.

12         I submit to you that based on all the evidence that

13    we've presented to you, all the evidence we've presented

14    to you, all the credible evidence we've presented to you,

12:44:50   15    that this defendant is guilty of Count 1, conspiracy to

16    commit sex trafficking; Count 2, conspiracy to harbor

17    aliens; Counts 3, 4 and 5, aiding and abetting to money

18    laundering; to Count 6, conspiracy to evade the bank

19    filing requirements.

12:45:11   20         I'm not saying that because I say so, but that's what

21    the evidence introduced in this case dictates that you

22    should find her guilty of all these counts.  Again, on

23    behalf of all these people, fine people, thank you very

24    much for your time.

12:45:23   25         THE COURT:  You have used 47 minutes, and you

Hearing on Defendant's Motion

```
  1    have an hour and 15 minutes.
  2         Ladies and gentlemen, I think we're moving along.
  3    We're right on schedule.  We'll take a bit of a shorter
  4    lunch break.  I understand that your lunch is available in
  5    there, but everybody has to get something to eat and take
  6    a break.  So we'll take 15 minutes off our usual break.
  7    We'll be back in one hour ready to resume at 1:45.  We'll
  8    see you at 1:45.
  9              THE MARSHAL:  All rise.
 10         (Jury exited courtroom at 12:45 p.m.)
 11              THE COURT:  Do you need to put something on the
 12    record?
 13              MR. FAZEL:  I do, Your Honor.  I completely
 14    appreciate the Court's ruling on the last objection I
 15    made.  I want to put a couple of cases on the record as
 16    far as inappropriate argument.
 17              THE COURT:  Go on.  Just speak up in the
 18    microphone.
 19              MR. FAZEL:  That would be United States vs.
 20    Garcia 522, Fed 3d, 597, Fifth Circuit, 2008; United
 21    States vs. Carol, 26 Fed 3d, 1380, Sixth Circuit 1994;
 22    United States vs. Manning, 23 Fed 3d, 570, Fifth Circuit
 23    1994; United States vs. Kerr, excuse me, 981 Fed 2d
 24    1050 --
 25              THE COURT:  What are you reading from?  You are
```

1  not reading from my book, are you?

2          MR. FAZEL:  No, sir.  These are all reversibles

3  by circuits talking about the type of argument that

4  Mr. Perez made.  With all due respect, I would request a

12:46:59  5  mistrial based on that.

6          THE COURT:  Which is what?  For what reason?

7  State it again.

8          MR. FAZEL:  Sure.  Vouching for the

9  credibility --

12:47:05  10          THE COURT:  Hold it.  Slow down, please.

11          MR. FAZEL:  I'm sorry.  Vouching for the

12  credibility of the prosecution witnesses.

13          THE COURT:  All right.  What is your response?

14          MR. PEREZ:  My response is:  Of course I'm going

12:47:12  15  to say that they are good people, Judge.

16          THE COURT:  Well, what about all those cases?

17          MR. PEREZ:  Well, I don't -- I think they are

18  distinguishable, Your Honor.

19          THE COURT:  You haven't read them, right?

12:47:21  20          MR. PEREZ:  I haven't read them.  I didn't know

21  he was going to make that argument.

22          THE COURT:  You heard the cases.  Discuss it with

23  him.  Take a look.  Okay.  If it's marginal or close, we

24  don't want to jeopardize anything.  I can -- if I need to,

12:47:32  25  I'll cure it with an instruction.  My inclination now is

                 not to.  If it comes close, let me know at the end of the

                 lunch break.  Okay.  And if you have no problem with some

                 sort of a qualifying instruction, I'll consider it, if you

                 know what I'm saying.  Okay.

12:47:49         MR. PEREZ:  I understand.

                 THE COURT:  I saw nothing wrong with it

                 initially.  But based upon counsel's statements, he has

                 got cases there.  Take a look at them.  And if you need --

                 and we have.  We have conceded, all three of us, both the

12:48:03         two attorneys and myself, from time to time on

                 instructions and additions and corrections and pulling

                 them and putting them in.  If you need one out of an

                 abundance of caution, I'll give it because that's what he

                 is asking for.

12:48:15         However, motion for mistrial is denied.

                 MR. FAZEL:  Yes, sir.  I'm going to e-mail it to

                 the government right now.

                 THE COURT:  Let's put it this way:  As an

                 alternative, do you want an instruction?

12:48:25         MR. PEREZ:  I think it would be --

                 THE COURT:  Well, hold it.  I'm trying to put him

                 in a box.  Okay.  Hang on.  Motion for mistrial is denied.

                 Would you, as an alternative, would you want an

                 instruction?

12:48:36         MR. FAZEL:  Given the ruling, yes, Your Honor, I

 1   would.

 2           THE COURT:  All right.  Just consider it.  I'm

 3   not saying I'm going to do it.  See what it says.  All

 4   right?

 5           MR. PEREZ:  Yes, sir.

 6           THE COURT:  We'll see you back.  The advocacy

 7   never ends.  That's all right.  That's all right.  We'll

 8   see you back ready to resume at, what is it, 1:45.

 9           MR. PEREZ:  Thank you, Your Honor.

10      (Recess from 12:48 p.m. to 1:50 p.m.)

11           THE COURT:  All right.  What have you discussed

12   or decided concerning that objection defense counsel has?

13           MR. PEREZ:  Out of an abundance of caution, Your

14   Honor, an instruction would be fine.

15           THE COURT:  All right.  What kind of instruction

16   do you suggest?

17           MR. PEREZ:  Just argument and to follow the

18   Court's charge and the triers of fact and you are the

19   judges.  Give them instructions.  That is basically it,

20   Judge.

21           THE COURT:  Well, what do you say?  Insufficient?

22           MR. FAZEL:  I would say it's insufficient, --

23           THE COURT:  What else?

24           MR. FAZEL:  -- for the record.  However, if the

25   Court is to instruct, my suggestion is it would be an

 1  instruction discussing the fact that witnesses and folks

 2  that work for lawyers and folks that work for the

 3  government and the folks that work for the defense are

 4  just that and that they should not be given any credence

 5  to allow the lawyers to inflate the stature of certain

 6  individuals at their table.  And I mean that in, of

 7  course, a friendly way.

 8              THE COURT:  All right.  Okay.  Hang on one

 9  second.  And you are referring to the comment about an

10  angel, correct?

11              MR. FAZEL:  Correct.

12              THE COURT:  Okay.

13              MR. FAZEL:  I believe it was "angel."

14              MR. MAGLIOLO:  I thought he said angle, Your

15  Honor.

16        (Laughter.)

17              THE COURT:  Okay.  All right.  Let's call the

18  jury in.

19        (Jury entered courtroom at 1:53 p.m.)

20              THE COURT:  Thank you.  Be seated.

21              MR. FAZEL:  Can I use the microphone?

22              THE COURT:  Might as well.

23        Ladies and gentlemen, I'm going to give you an

24  instruction that, as you noted, that counsel for the

25  government made a comment concerning a deputy to be

01:54:46

1  considered an angel.  Keep in mind that whether you work

2  for the government or work for the defense, no special

3  credence should be given as far as extra weight goes just

4  because someone is classified either as a police officer

5  or an angel or whatever, okay, relative to that.

6      Any comments by the government attorney or the defense

7  attorney is not evidence.  You will consider the evidence

8  as submitted to you and the testimony that you receive

9  during the trial and weigh it as you see fit.  All right.

01:55:03

10 The instruction has been given.

11     Counsel, your time has started.  Go right ahead.

12         MR. FAZEL:  Thank you, Your Honor.  May I

13 proceed?

14         THE COURT:  Yes.

01:55:11

15         MR. FAZEL:  Thank you.  Ladies and gentlemen of

16 the jury, Mr. Prosecutors, agents.

17     Ladies and gentlemen, when I first spoke with you ten

18 days ago or so, I brought out eight points that I recall;

19 and I took notes from it.  I told you who the defendant

01:55:26

20 was.  I told you her name, Raquel Medeles-Garcia.  I told

21 you how old she was, 68.  I told you that she was from

22 Mexico.  I told you when she was born, and I told you that

23 she has four children.

24     And on the first day I told you that you will find out

01:55:43

25 that there is prostitution involved.  We knew that on the

01:55:58

01:56:18

01:56:41

01:57:00

01:57:19

1    first day.  In my opening statement I admitted to that,

2    and I fully admit to that right now.  There is no doubt --

3    there is no debate about the fact that there was

4    prostitution going on at Las Palmas.

5         But I also told you something else, something that's

6    fundamental that I want you to keep in mind; and it's very

7    simple.  We are in the federal courthouse in Houston.  We

8    are not at 1201 Commerce, which is the Harris County

9    courthouse.  We are not under Texas law.  Under federal

10   law, prostitution is not illegal.

11        That is a fundamental fact that I want you to keep in

12   mind.  What they are trying to do, my esteemed colleagues

13   are trying to do, is bootstrap a state case and make it

14   into a federal case.  That's all they are trying to do.

15        Now, I can tell you I'm not going to take all the hour

16   and 15 minutes.  I'm going to give you some time back.  I

17   do want to go over the instructions that the Judge gave

18   you.  I don't want to read it to you again because I know

19   you guys will take care and read it, but I do want to

20   point out some important things in the instructions that I

21   want you all to be careful of.

22        The first one is right off the bat on the second page,

23   the last -- to the last full paragraph.  It simply says

24   that the charging instrument that you are about to get a

25   copy of is just that, a charging instrument.  It puts us,

01:57:34

the accused, the citizen accused, on notice as to what it
is that we are charged with.  Now, this is -- the
indictment or formal charges against the defendant is that
paragraph that I'm referring to.

There is another part to this that's important.  It's
the last sentence.  The law does not provide the defendant
-- excuse me, require the defendant to prove his innocence
or produce any evidence at all.

01:57:52

I want you all to understand something.  You are the
only part of the legal system that presumes a citizen
innocent.  It's not the police.  It's not the judge.  It's
not the lawyers.  It's you, the judges of the facts.  If
you don't presume someone innocent, the system has failed.

01:58:16

So all this TV stuff you hear about presumption of
innocence, all that, put that aside for a second and
understand something.  Today you are living it.  Because
it is your job and you took an oath that you will presume
the accused innocent in this case.  And I'm going to hold
you to that oath.  And I promise you so will the accused.

01:58:34

The next thing, again, is reasonable doubt.  Next
page.  It defines "reasonable doubt" for you.  I'm not
going to read it for you, but it's important for you to
understand that's the standard.

01:58:46

Why is it so important in this case?  It's because
there are so many moving parts in this case.  The statutes

1    themselves are confusing.  They are confusing to lawyers.

2    I can tell you, and they can object.  This is not in

3    evidence.  But we were here until 6:00 yesterday going

4    over statute and law.  It's confusing to us.  So I know

01:59:04    5    it's going to be confusing and time-consuming for you

6    guys.

7        I do ask you to take your time reading the statutes

8    themselves.  These are conspiracies to commit underlying

9    crimes, aiding and abetting to commit underlying crimes.

01:59:19    10    It is -- it's a maze.  And the Judge has done a wonderful

11    job of putting it down on paper for you, but I know it's

12    confusing.  So please keep that in mind.

13        Now, I want to talk to you about -- I want to talk to

14    you -- I want to interlay when we go over these documents

01:59:39    15    with the evidence that was provided to you.  I just want

16    to briefly but quickly go through all of that.

17        Your Honor, if we could have the screen, I would

18    appreciate it.

19        Ms. Stoelker, if you could put up the chart.  Okay.

02:00:13    20    Whenever you can, double it.  I think it's on the bottom,

21    Karen, on the left.

22        That is the chart you guys have seen a lot of.

23    Whoops.  That was the chart you all have seen a lot of.

24        There you go.  Thank you, Karen.

02:00:27    25        But this chart is a little different.  This chart

1  deals with --

2          THE COURT:  Do you want to pull that mic, the

3  little mic, up a little higher.

4          MR. FAZEL:  Yes, Your Honor.

02:00:40  5          THE COURT:  There you go.

6          MR. FAZEL:  This charge deals with something

7  fundamental -- excuse me, Mr. Magliolo.  And this is it.

8  You have to understand that the first count -- and this is

9  critical.  The first count starts sometime in 2009, right

02:00:55  10  here.  All the evidence and all the witnesses prior to

11  this time cannot be considered as far as Count 1 is

12  concerned unless you are considering it for the statements

13  that are made in the instructions the Judge gave you, and

14  I will go over that in a minute.

02:01:16  15      What I need to explain to you all is this:  Anything

16  before 2009, any of the witnesses, any of the ladies who

17  testified before 2009 are not witnesses, or facts that

18  they provided to you, are not relevant to the first count.

19          And here is why.  The first count, according to the

02:01:42  20  charging instrument, begins in 2009.  Now, what I want to

21  do is just, if I can, jump to that count.  You will find

22  that on Page 15.  It's a conspiracy.

23      I am going to read this to you.  I can't help it.  I

24  think it's the only way to do this.  "The defendant and at

02:02:12  25  least one other person made an agreement to commit the

Closing Statement by Mr. Fazel - Vol 9 - 43

       1    crime of sex trafficking."  At least one other person made

       2    an agreement to commit the crime of sex trafficking.

       3        "The defendant knew the unlawful purpose of that

       4    agreement."  So there are two people that get together

02:02:33   5    that make an agreement to commit the crime.  They have to

       6    have the same mental intent.  They have to both agree as

       7    to the crime.  They have to agree to it.  And they have to

       8    join it willfully.  That's what a conspiracy is.

       9        Then it describes what it is, the crime that they

02:02:56  10    agreed to do.  And that's what the next paragraphs are

      11    about.  So it's a conspiracy to commit the crimes that are

      12    explained behind it.

      13        Now, let's think about that with the facts of the

      14    case.  They are alleging that this 68-year-old woman, who

02:03:18  15    I will tell you right now was involved in prostitution,

      16    was in a conspiracy with other people to have sex

      17    trafficking occur.

      18        Here is the problem.  Not one single pimp came to

      19    testify.  The only one they called a pimp was Mr. Barbosa,

02:03:42  20    if I'm saying his name correctly.  He testified that he

      21    had one girlfriend or wife that worked at Las Palmas.  Do

      22    you all remember him?  He was towards the end.  He was one

      23    of the people that allegedly wanted to take over and

      24    manage the place.  If you look at that chart --

02:03:58  25        Excuse me, Mr. Magliolo.

1    If you look at that chart, we're talking about this

2  gentleman right here.  This gentleman right here.  And the

3  government was nice enough to put his name for you on this

4  one.  This guy right here.

02:04:12    5    So he and three other people were supposed to manage

6  it, and they called him a pimp.  But throughout the entire

7  testimony of the trial you heard over and over and over

8  again what a real pimp is.  Every single female that

9  testified -- and I am not here to tell you that what they

02:04:31   10  went through is okay.  That's not what this case is about.

11  This case is not about what the pimps did to those girls

12  or didn't do to those girls, whether you believe that or

13  not.

14    This case is about whether my client, the defendant,

02:04:45   15  the accused, engaged in a conspiracy involving those

16  girls.  And the answer to that, folks, is no; and they

17  certainly didn't prove it.  Every one of those girls said

18  the same thing.  They were recruited in Mexico.  Every

19  single one.  Not by the accused.  They were dragged from

02:05:02   20  Mexico into the United States by different means,

21  different manners, different reasons.  Every single one

22  said that.  Every single one said they were brought in by

23  coyotes illegally.  Every single one said that.  Every

24  single one said the money went to them, the pimps, not the

02:05:21   25  defendant.  Every single one said that.  Every single one

02:05:36

said they did what the pimps asked them to do. They went
where the pimps wanted them to go when the pimps wanted
them to go. Every single one said that. Every single one
said that.

So the question I have for you, the thing I want you
all to think about is this: If this is a conspiracy, who
are the other conspirators? Where are they? Where are
these pimps? What happened to them? Why aren't they
here? If they are the conspirators with the defendant,
02:05:55 where are they? They are not here. None of them
testified. They don't have a single one.

This is why they don't have the first case, the first
count, because it's not a conspiracy. Think about
something else. They talk about this idea of the -- the
02:06:21 idea of these girls coming in with bruises. Do you all
remember that? The bruises? That they had bruises. That
they didn't want the cops to see the bruises and so forth.

So how could it be a conspiracy if they have
recordings talking about the fact that the accused didn't
02:06:37 want the bruises to be shown? If it's a conspiracy,
wouldn't they just go talk to the pimps and say, hey, I
can't have girls with bruises coming in. And the pimps
would say, okay, well, I'm not going to do that because
I'm going to lose the money. It defies common sense that
02:06:53 these people were working together.

02:07:07

1    You heard over and over and over again the fact that
2    these girls worked at other bars, that they went where
3    they were told to go.  So if they are working together,
4    why not just work at her bar?  Because they weren't
5    working together.  Because these pimps were independent.

6        I will tell you who the conspiracy is.  The conspiracy
7    are the pimps and the family of the pimps that were
8    running the girls in Houston.  Maybe they ought to charge
9    them with sex trafficking since clearly they did it.  And

02:07:24

10   there is plenty of evidence to that.  But there is no
11   evidence before you that she was involved in any of that.

12       This is why this case is not something that should be
13   in this court but should be something in Harris County
14   because in Texas prostitution is illegal.  I agree with

02:07:45

15   you.  But not in this court, not before David Hittner,
16   Judge David Hittner.  Sorry, Your Honor.  Not before him.

17       If I'm repetitive, I apologize; but I want to make
18   sure I hit every point.  The pimps transported.  They
19   pimped the girls.  They did pimp the girls.  They were

02:08:06

20   mean about it.  There is no debate about that.  I am truly
21   sorry about that.  Nobody likes those facts.  They
22   manipulated the girls, and you heard about it.  Some of
23   the girls fell in love with the pimps.  Some of the girls
24   just -- you wonder sometimes what, for God sakes, but they

02:08:22

25   involved themselves in these activities.  That's all true.

1    None of them said, oh, she was the one that did it.

2    Oh, this lady right here took me from Mexico and brought

3    me over here and asked me to engage in prostitution.  None

4    of them said that.  None of them.

02:08:39   5    They paid for the trip illegally to the United States.

6    You had girls -- and I know you all heard the testimony --

7    going back to Mexico on a plane and called their pimps

8    before they got on the plane.  You all remember that

9    testimony.  She had nothing to do with any of that.

02:08:59  10    Then we heard ad nauseam about these rules.  You

11    remember these rules.  You remember the talk about the

12    rules?  What is the rules?  What is the rules?  Let's talk

13    about those rules.  Because there was prostitution,

14    because the house was involved in prostitution, there was

02:09:15  15    money to be made.  And the house had rules.  And they had

16    to pay the house.  That's true.

17    But if this was a conspiracy, why do it that way?  You

18    can take whatever inferences you want from the evidence.

19    Why not just have the pimps pay them?  Why have the girls

02:09:34  20    pay them?  Why have these sheets?  Why have all this

21    activity going on about what these girls did?  We'll talk

22    about these sheets and money laundering in a minute.

23    All this evidence, I would submit to you, shows one

24    thing.  There is no conspiracy.  None.

02:09:54  25    Let's talk about the other elements because this is

        1   also important, as well.  If you switch to Page 22 --
        2   excuse me, 23 and 24.  This is one of the most confusing
        3   parts of this document.  On the last page of 24 I'm not
        4   going to -- I don't want to read all this to you, but I do
02:10:25  5   want to encourage you to read some of this.  The last full
        6   paragraph.  It says, "Proof beyond a reasonable doubt on
        7   one is enough but in order to return a guilty verdict all
        8   must agree that at least one has been proven."
        9       What we are all trying to tell you there is, as the
02:10:46 10   government has said, there are four ways to prove the
       11   underlying charge of sex trafficking, four different ways.
       12   The law requires you to all agree as to one of them, at
       13   least one of them.  So if six agree on one, six agree on
       14   the other, you don't have an agreement.  All 12 have to
02:11:08 15   agree as to one and at least one.
       16       You have to be unanimous as to which one you agree to.
       17   I want to be very clear about that.  So it's not that you
       18   have to pick one.  Yes, you have to pick one, at least
       19   one.  But you have to also be unanimous as to that one,
02:11:25 20   and that's important for you all to remember.  Please keep
       21   that in mind.
       22       All right.  Lots of testimony about blue lights.  Do
       23   you remember that?  There are blue lights here, blue
       24   lights there.  Oh, we are worried about police.  Yes.
02:11:42 25   Yes.  They are worried about illegal activity.  Every

            1    witness that you heard about I asked the same question.

            2         Are you worried about HPD?

            3         Yes.

            4         Houston Police Department?

02:11:50    5         Yes.

            6         Are you worried about getting arrested for

            7    prostitution?

            8         Yes.

            9              THE COURT:  Slow down a little bit, Counsel,

02:11:55   10    please.

           11              MR. FAZEL:  Yes, Your Honor.  I'm sorry.

           12         That's what they were worried about, not sex

           13    trafficking.  They had no idea the feds were doing this.

           14    They were worried about HPD and vice.  And HPD and vice

02:12:10   15    came in a couple of times.  There is a video recording of

           16    it.

           17         Okay.  I'm going to talk to you a little bit about

           18    each one of the girls that testified just briefly and hit

           19    them very, very briefly.  I'm not looking to go over

02:12:34   20    everything they said, but I wanted to talk to you just

           21    briefly about each one of them.

           22         XXXXXXXXXXXXXXXXXXXX was the first lady who testified.

           23    There is one defense exhibit in evidence, and that's her

           24    statement.  Please compare what she told you to what she

02:12:52   25    swore an oath to before.  I don't want to call her a liar,

70 - 50

1   but I'm telling you it is completely different.  Nobody

2   ever said that they were locked up in rooms.  As a matter

3   of fact, everybody said I don't know what you are talking

4   about.  Nobody said, Oh, we were locked up in Las Palmas.

02:13:16   5   Nobody but her.

6       What happened to her was terrible.  I agree.  But is

7   she making it bigger?  I don't know.  That's your job to

8   make that decision.  I am glad it's not mine.  Is she

9   making a bigger deal than what happened to her?  Is she

02:13:35  10   conflating?  Is she confused?  Is she just angry and mad?

11   I don't know.  I don't know.  But I can tell you her

12   statement was written, and what she told you all is

13   completely different.

14       The next lady who testified, her last name was

02:13:51  15   XXXXXXXX.  I'm just going to use the last name.  She was

16   not a minor.  Her pimp -- and I'm going to name every one

17   of these pimps for you -- Armando Flores.  They fell in

18   love.  She was 24 years old in the United States.  She is

19   another one that I confronted with her sworn statement on

02:14:12  20   cross-examination.  I know you remember the testimony.  I

21   don't want to go into it.  She is the one that was the one

22   that escaped from her pimp, called him on the way to

23   Mexico and said I'm coming and flew back to Mexico and

24   then came back into the country again.

02:14:31  25       The next one they talked about was XXXXXXXXXXXXX.

02:14:58

02:15:10

02:15:17

02:15:36

02:16:01

1  Her pimp, Ivan Salazar.  She engaged in prostitution for

2  two years in Mexico before she came into the country.  She

3  worked at four locations, at least, as well as Las Palmas.

4  And she was arrested on a raid in 2006 and deported from

5  the United States.  That's it.

6      The first one -- excuse me, the second one I asked

7  her, Was it your pimp that told you where to go?

8      Yes.

9      Was it your pimp that told you how much money to make?

10     Yes.

11     Was it your pimp that told you what to do with the

12 money?

13     Yes.

14     Every single one of these girls said that.  Every

15 single one of them said the pimp is the one that did it.

16     The next one, XXXXXXXXXXXXXXXX.  She was a minor in

17 Mexico when she met her pimp.  She fell in love with her

18 pimp.  Her pimp's name is Luis Moreno-Salazar.  Perhaps a

19 codefendant in a conspiracy not involving this defendant

20 but the actual conspiracy, the real thing that happened,

21 which is these pimps, the criminals.  She changed her

22 story several times with immigration, at least this is

23 what she told us.

24     The next one is XXXXXXX -- Ms. XXXXX, if I'm saying

25 that name correctly.  Excuse me if I'm not.  Her pimp's

name was Solomon Guzman-Lila.  This is the young lady who
went from Houston to Florida and then back to Houston.
And this is the one that we confronted with the fact that
she could not identify previously the defendant as easily
as she could identify in court.  You can take whatever
thought into that as you will.  You heard several times
that I asked whether these folks had met with the
government before testifying and whether they have seen
photos before they testified and took the stand and said,
oh, yeah, yeah, that's Tencha.  It's a lot easier when her
picture is right there with her name underneath it.  It's
not that complicated.

The next one is XXXXXXXXXXXXX.  Her pimp's name was
Gerardo Salazar.  Again, the same stuff.  Over and over
again the same things.  All these girls said the same
things.  That they were the pimps that controlled them.
They were the pimps that told them where to go.  The pimps
that told them how much money to make, how much money to
charge.

I'm going to skip to XXXXXXXXXXXXX.  Ms. XXXXX was a
young lady who had an affair with one of the confidential
sources, the first one, Mr. Cepeda.  Mr. Cepeda admitted
to having sex with a 16-year-old to this detective right
here.  And according to my notes, he made that admission
in 2013, April.  That confidential source was still

1    allowed to continue to do his activities.

2        This detective got on the witness stand and said, Oh,

3    she said that he is lying.  It didn't happen.

4        He got on the witness stand and said, I'm offended at

5    these girls wearing short skirts; but then, I decided to

6    have sex with one of them, over again, a couple of times.

7    Oh, and I dated her.  But I was offended.  That

8    confidential source we'll talk about in a second.

9        Ms. XXXXX admitted that she was allowed to travel

10   freely, that she was allowed to date other people and she

11   was allowed to go out.

12       Ms. XXXXXXXXX or Ms. XXXXX, I'm not sure which name is

13   correct, was the next one.  She was the one that met her

14   -- again, her pimp in Mexico.  And she was also in Las

15   Palmas for a short period of time.  And a lot of these

16   gals were there for a short period of time.  Again, I know

17   you all remember this.  I don't want to repeat everything

18   that you heard.  Her pimp, by the way, was Clemente

19   Melendez.

20       Ms. XXXXX was a minor.  This is the young lady who we

21   heard about that fell in love with her pimp, came to the

22   United States because she thought she was doing him a

23   favor.  She thought that she was her -- his wife, found

24   out she wasn't and then got upset; and she was allowed to

25   leave.

       1        Now, what is interesting about that is this:  When I
       2   confronted her with the fact, did anybody at Las Palmas
       3   stop you from leaving?
       4        No.
02:19:36   5   Could you leave if you wanted to?
       6        Yeah.
       7        She left, and she heard from somebody at Las Palmas
       8   about another place of prostitution in Chicago.  So she
       9   went to Chicago and continued to prostitute herself.
02:19:48  10        Again, I'm not saying this is a good thing.  I'm just
      11   saying this is what she said.  She came back to Houston;
      12   and then, they got her.
      13        If this is a sex trafficking case involving a
      14   conspiracy, why is it that these girls when they can leave
02:20:04  15   whenever they want and come whenever they want, where is
      16   the slavery of it other than --
      17        THE COURT:  The what?  Speak up a little bit,
      18   please.
      19        MR. FAZEL:  I'm sorry.  Where is the slavery of
02:20:14  20   it unless you look at the pimps?  They are the folks that
      21   are enslaving them.
      22        Juan Cepeda, the first confidential source.  He was
      23   arrested and then decided to become a confidential source
      24   at some point in time.  He is the one that had sex with
02:20:38  25   XXXXXXXXXXXXX.  He decided when to turn on the recorder

02:20:59

02:21:20

02:21:43

02:22:00

02:22:17

1    and when to turn off the recorder.  He got paid for his

2    services.  He wasn't deported.  He got to keep the money

3    he made when he was working there.

4        And, of course, I'm sure there is no recording of him

5    dating XXXXXXXXXXXXX.  I'm sure the government would have

6    turned that over.  One of the other things he did when he

7    didn't have the recording on.  They never charged him with

8    sexual assault.  If you believe their story, the

9    government's story, then he ought to be charged along with

10   the accused that's sitting before you here today.  He is

11   not.

12       And the other source, Juan Carlos Munoz, he has

13   recordings of them talking about pimps.  Okay.  The

14   government wants you to believe just because somebody

15   knows that there are pimps out there that makes them a

16   conspirator.

17       Please don't agree with that.  And here is why.  In

18   order to have a conspiracy, you have to have an agreement

19   between two people.  And that agreement has to be clear.

20   The intent has to be the same for two people if there is

21   nobody that they are presenting to you that's a

22   conspirator, not one single person that you can think of

23   that took that witness stand and you can say, "Oh, that's

24   her conspirator."  Not a single one of them.

25       MR. MAGLIOLO:  Your Honor, we have to object to

1    that.  That's not the law that a conspirator has to take

2    the witness stand and testify.  It is clearly not the law,

3    Your Honor.

4              MR. FAZEL:  Your Honor, may I respond?

02:22:24    5              THE COURT:  Yes.

6              MR. FAZEL:  I can certainly argue that.  I'm not

7    saying that's the law.  I can certainly say they could

8    have easily got one and put them on the witness stand.

9    That's an argument.

02:22:34    10              MR. MAGLIOLO:  As long as he concedes it's not

11    the law, Your Honor, I have no objection.

12              THE COURT:  All right.  Continue, please.

13              MR. FAZEL:  Here is what I do concede.

14              THE COURT:  By the way, just a moment, if any of

02:22:40    15    you people can't see behind the pole, you are free to move

16    throughout the courtroom.  I just want to let you know

17    that.  Okay.  I can't do anything with that pole.  All

18    right.  Even with all those screens.

19         Okay.  Go on, please.

02:22:52    20              MR. FAZEL:  Thank you, Your Honor.

21         Here is what I do concede.  Here is the charge the --

22    that the Judge gave you.  The defendant and at least one

23    other person made an agreement to commit the crime of sex

24    trafficking as charged in the indictment, made an

02:23:05    25    agreement to commit the crime of sex trafficking.  That

Closing Statement by Mr. Frazel

1    doesn't -- they don't have that here.

2         Then we had the three individuals.  Mr. Barbosa came

3    on the witness stand and testified.  His nickname was Eli.

4    He talked about when they allegedly became the managers

02:23:28    5    there.  What is interesting to me there was, again, the

6    one thing that I have already told you about, which is

7    that each one of those three managers -- and they are up

8    there.  I'll go with nicknames:  Eli, El Pantera, and

9    Mr. Flores -- Mr. Mendez-Flores.

02:23:43   10         Every one of them had either girlfriends working there

11   or wives that were working there.  Neither one of them

12   were pimps.  None of them -- there is no testimony that

13   any of them forced anybody to do anything.  Not one.

14        And, by the way, in cross-examination we found out

02:24:02   15   that Teloxa-Barbosa was actually just charged with one

16   count of harboring.  No sex trafficking.  He was running

17   the place.  So if he is not sex trafficking, then why is

18   Ms. Medeles-Garcia sex trafficking?  Because she is not.

19        I want to talk to you about XXXXXXXXXXXXXXXXXXXXXX.

02:24:39   20   She was the young lady that was on the witness stand

21   towards the end.  She worked at Las Palmas for eight

22   months.  I do want to concentrate on her a bit because she

23   said two things that I thought were very interesting.

24   First of all, she said she heard girls talking about the

02:24:53   25   fact that if they say certain things they were able to

02:25:09

1    obtain immigration documents.  She heard that.  She

2    testified to that.  She also testified to the fact that

3    the girls were talking about all the times their pimps

4    would take them out to have fun and go out.

5        Why do I say this?  Because I want to talk about

6    something that's fundamental that's missing with the

7    government's case, as well.  The government, in order to

8    make their case as far as money laundering -- and I'm

9    going to go into the money laundering now.

02:25:25

10                THE COURT:  Raise your voice a little bit.

11                MR. FAZEL:  Each one of those counts -- sorry,

12   Your Honor.  I just don't want to scream.

13                THE COURT:  Your voice is just trailing off a

14   little.

02:25:32

15                MR. FAZEL:  Each one of those counts -- I

16   apologize.  Thank you.  Each one of those counts involved

17   moneys obtained from sex trafficking.

18        Do you remember the sheet that Mr. Perez put up there?

19        Ms. Stoelker, can you pull that up?  I forget the

02:25:52

20   exhibit number.

21        I found something interesting about this the entire

22   time of the case.

23        If you can.  I think it's Exhibit 39.

24                MS. STOELKER:  I've got it.

02:26:19

25                MR. FAZEL:  In all fairness, Ms. Stoelker hasn't

Closing Statement by Mr. Fazel                        59

```
 1   done this before.  This is her first time.  So it's okay.
 2   Take your time.
 3              MS. STOELKER:  It's my mouse.  I'm sorry.
 4              MR. FAZEL:  Do you mind doing it for me?
 5              MS. POUNCEY:  No.
 6              MR. FAZEL:  Judge, can we switch to the
 7   government so that we can -- I hate to do that to
 8   Ms. Stoelker.
 9              MR. PEREZ:  We have to plug in, Your Honor.
10              MS. STOELKER:  Thanks, Lolita.
11              MR. FAZEL:  While they are doing that, I want you
12   to look at, if you don't mind, looking at the counts
13   involving money laundering.  These would be on Page 27.
14   Again, somewhat convoluted because it's actually not money
15   laundering.  It's aiding and abetting money laundering.
16   But look at Page 29.
17        Thank you.
18              THE COURT:  I think you have got it up there now.
19   You want, what, 39?  Or do you want to look at money
20   laundering first?
21              MR. FAZEL:  While she was pulling it up, if you
22   don't mind pulling it up and leaving it up there.
23        Thank you, ma'am.  Thank you.  That is perfect.  On
24   Page 29 at the very end of it, please, for the totals.
25        On Page 29 it talks about money laundering and the
```

01  elements of money laundering.  Starting on the top of the
02  page you'll see that it says the offense of money
03  laundering alleged in Counts 3, 4 and 5.  And then it
04  talks about it has to be associated with a venture, just

02:28:02  05  like any aiding and abetting.  Then it goes down the page
06  and it talks about Count 3, Count 4 and Count 5 are about
07  the same thing except different activities that they are
08  calling money laundering.

09       But if you go to Page 30 it will tell you on the sixth
02:28:22  10  element, excuse me, which involved proceeds of specified
11  unlawful activity, that is sex trafficking.  Look at that.
12  Mr. Perez said, Oh, any sex trafficking.  Okay.  Let's
13  take any sex trafficking.

14       Well, here is my problem.  Do you see all those
02:28:39  15  numbers up there?  We know -- let's assume for the sake of
16  argument this all came from Las Palmas and from
17  prostitution.  How do we know that all this money came
18  from folks that were forced, coerced, duressed?  We don't.
19  They are wanting you to believe that.  They are making
02:28:59  20  that giant leap.  There is no proof.  They didn't put on
21  one single piece of evidence that shows all this money was
22  from all girls --

23            MR. MAGLIOLO:  We would have to object again,
24  Your Honor.  Counsel is misstating the law that all the
02:29:11  25  money has to come from sex trafficking.  Just proceeds

1    have to come.  Not all the proceeds, not all the money.

2    Proceeds come from it, Your Honor.

3         THE COURT:  All right.  Continue.

4         MR. FAZEL:  Thank you, Your Honor.

02:29:21    5    Do you remember Mr. Perez going out there and saying,

6    look at how many times these poor girls went in there,

7    64,000 times?  Here is the problem with that theory.  We

8    don't know which girls, and we don't know if they were

9    forced.

02:29:33    10        And here is another thought.  Do you remember Agent

11   Perry, Pierre Perry, talking about there were 30 people

12   that were arrested and these 30 people were deported and

13   most of them were women?  Surely if these women that were

14   arrested at the very end, surely if they were trafficked,

02:29:49    15   surely if they were forced and coerced, surely these

16   able-bodied prosecutors would have stopped and said these

17   are witnesses.  And they didn't.  They deported all of

18   them.

19        So when you look at this charge --

02:30:01    20        MR. MAGLIOLO:  We have to object again.  We don't

21   deport people, Your Honor.  So we object to him saying we

22   deported some people.  We didn't deport anybody.

23        MR. FAZEL:  I'm sorry, Your Honor.  I'm not sure

24   who deports people other than the United States

02:30:12    25   Government.

1          THE COURT:  Just keep going.

2          MR. FAZEL:  I'll move forward.

3          THE COURT:  Keep going.

4          MR. FAZEL:  So before you do that, just keep that

02:30:19  5  in mind that these proceeds that they have starting on

6  Page 30, the $22,265.78; Page 31, the $21,330.28; and

7  Page 32, the $26,242.36 have to be involved in sex

8  trafficking.  They didn't prove that.  They just didn't do

9  it.  They didn't connect the dots.  You have no idea where

02:30:48  10  that money came from.  You know it came from Las Palmas.

11  Let's assume that for a second.  Let's just assume that.

12          What you don't know is if it's young ladies who were

13  forced, coerced or not.  Because even every single witness

14  said there are over 30 women there a night, and they

02:31:08  15  brought you 12.  And I would submit to you even if those

16  folks were coerced, the defendant didn't know about them.

17  And even if they were, that's only 12 of them.

18          This is why I would respectfully submit to you that

19  the answer to the money laundering counts, all of them,

02:31:33  20  including the last one on Page 36, the fifth element,

21  which transactions involved proceeds of specified unlawful

22  activity, even that element they didn't prove.

23          Judge, how much time do I have?  I'm sorry.

24          THE COURT:  You've used 37 minutes.

02:32:07  25          MR. FAZEL:  Thank you.

02:32:30

1    When I first started I told you that you all took an
2    oath and that you guys are the people that assume her
3    innocent.  She has absolutely no duty to testify.  It's in
4    the charge.  Absolutely no duty to put on evidence.
5    That's in the charge.  And she has a lawyer who tells her
6    what his opinion is, and she followed it.  Don't hold that
7    against her.  Hold it against me.

8    I would submit to you that what you have seen today
9    and this week and the previous week is simply that they
02:32:53    10   have a prostitution case and they are trying to boost up a
11   federal case in front of it.  I would ask for you to
12   return a not guilty verdict as to every single count and
13   send her home.

14   They had confidential sources that they didn't charge
02:33:11    15   with zero to life counts like they charged the defendant.
16   They had co-defendants that they brought in.  They brought
17   her children in to testify against their mother, and every
18   single one said the same thing.  Yeah, we knew about
19   prostitution; but nobody sex trafficked, nobody enslaved
02:33:28    20   anybody.  We don't know what you are talking about.  Every
21   one of them said there was nobody locked up anywhere.
22   These are their witnesses.  They brought them in.  They
23   charged them; and then, they gave them a reduction in
24   time.

02:33:44    25   And they charged a 68-year-old woman with a zero to

1    life count.  Didn't bring you a single pimp.  Didn't bring

2    you anybody like that.

3         I ask you to do what I think is the legally correct

4    thing to do, which is to find her not guilty of every

02:34:07   5    single count in this case.  They talked about the fact

6    that, oh, there is a human trafficking statute that

7    Congress has passed; and there is funding for it.  Sure.

8    I understand that.  And I appreciate the fact that they

9    want to use those funds and they feel like they need to

02:34:26  10    charge people.  I appreciate that, too.

11         But this particular case involving these particular

12    facts, the only correct answer, I would submit to you, is

13    a verdict of not guilty as to all counts.  Thank you for

14    your time.

02:34:42  15         THE COURT:  Okay.  Why don't you shift over the

16    microphone.

17         MR. MAGLIOLO:  If it's okay with the Court, I'm

18    just going to get a little closer to them.

19         THE COURT:  Move wherever you want.  It doesn't

02:34:53  20    matter.  You can stand up there.  Okay.  Hang on one

21    second.  Let me get the time straight.

22         MR. MAGLIOLO:  Am I on?

23         JURORS:  Yes.

24         THE COURT:  You have 27 minutes left.

02:35:03  25         MR. MAGLIOLO:  Thank you, Your Honor.

|      |    |                                                          |
|------|----|----------------------------------------------------------|
|      | 1  | THE COURT:  All right.  Are you ready?                   |
|      | 2  | MR. MAGLIOLO:  Yes, sir.                                 |
|      | 3  | THE COURT:  All right.  Go right ahead.                  |
|      | 4  | MR. MAGLIOLO:  The good news is I'm not going to         |
| 02:35:10 | 5 | take very long.  It's just I'm almost -- well, I need to |
|      | 6  | respond to a couple of things counsel for the defense    |
|      | 7  | said.  He spent a lot of time talking about what's a     |
|      | 8  | conspiracy and what is not.  You look at your charge.    |
|      | 9  | Conspiracy is just an agreement.  What is the            |
| 02:35:25 | 10 | agreement?  The agreement is to engage in sex trafficking. |
|      | 11 | It takes two things, primarily, to engage in the sex     |
|      | 12 | trafficking; that is, the girl and a place to commit sex |
|      | 13 | acts.                                                    |
|      | 14 | MR. FAZEL:  Objection, Your Honor.  That's              |
| 02:35:38 | 15 | incorrect.  That's a misstatement of the law.           |
|      | 16 | THE COURT:  How so?                                     |
|      | 17 | MR. MAGLIOLO:  Yeah.  How so?                           |
|      | 18 | MR. FAZEL:  That it takes two things to sex             |
|      | 19 | traffic.  No, actually, it takes seven elements to sex   |
| 02:35:49 | 20 | trafficking.  It's in the charge.                       |
|      | 21 | THE COURT:  Ladies and gentlemen, you consider         |
|      | 22 | the law as I have provided it to you.  It's all written in |
|      | 23 | there.  You heard the objection.                       |
|      | 24 | Now you may move on, please.                            |
| 02:35:57 | 25 | MR. MAGLIOLO:  Two of the things that it takes         |

1   that have to be involved in sex trafficking are the girls

2   and a place to commit it.

3        The agreement is we bring the girls.  The defendant

4   supplies the place, and everybody makes money.  That's the

02:36:14   5   agreement.  If you are part of that agreement, then you

6   are in the sex trafficking conspiracy.

7        Counsel went over some of the charge with you; but he

8   neglected, accidentally, to go over perhaps other parts of

9   the charge.

02:36:31   10      Okay.  So that's one way for her to be guilty is tacit

11   agreement and, again, you look to your charge and it talks

12   about conspiracy.

13           MR. FAZEL:  Object to the term "tacit agreement."

14           THE COURT:  Overruled.

02:36:44   15           MR. MAGLIOLO:  It doesn't -- it explains it

16   doesn't have to be a formal agreement.  It's an agreement

17   that doesn't have to be spoken, words spoken; and it tells

18   you everybody doesn't have to agree to it.  In fact, you

19   just commit one one time; and you are in the conspiracy.

02:36:59   20   But that's one way to do it, be part of the -- conspire to

21   be part of the sex trafficking conspiracy.

22        The other way, which counsel forgot to mention, was

23   all you have to do is conspire with someone to benefit

24   financially from the sex trafficking conspiracy.  So even

02:37:17   25   if she wasn't part of the sex trafficking conspiracy, if

1   she conspired with someone like her employees who all made

2   money off this deal to benefit from the sex trafficking

3   conspiracy that his pimps, he talks about, were doing and

4   he admits, then she is guilty.  Again, as long as either

02:37:36   5   the girls were forced and/or the girls were underage.  She

6   doesn't even have to know that if she unreasonably

7   disregards it.

8            MR. FAZEL:  Your Honor, I'm sorry.  I'm going to

9   have to object again.  Counsel is misstating the law.  The

02:37:55   10   law on Page 15 is clear.

11            THE COURT:  Hang on.  Put the microphone on,

12   please.

13            MR. FAZEL:  As to the first element on Page 15

14   it's crystal clear.  So he is misstating the law to the

02:38:04   15   jury.

16            THE COURT:  Which one?

17            MR. FAZEL:  Well, on Page 15.

18            MR. MAGLIOLO:  It's knowing or reckless

19   disregard, Your Honor.

02:38:10   20            THE COURT:  The jury has it in front of them.

21   You have heard both sides.

22            MR. MAGLIOLO:  She does not have to know.  Look

23   at it.  It is there.  She does not have to know they are

24   underage.  She does not have to know they are forced.

02:38:20   25   Know or recklessly disregard.  I'm not going to go through

1  all the facts.  You guys heard them.

2      And I'm not going to read through the definitions of

3  conspiracy and all it explains to you.  Just a couple of

4  lines.  Again, the government need not prove the defendant

02:38:38    5  entered any formal agreement with the conspirators nor

6  that they directly stated among themselves all the details

7  of the scheme.

8      Similarly, the government need not prove that all the

9  details of the schemes alleged in the indictment were

02:38:54   10  actually agreed on or even carried out nor must it prove

11  that all the persons alleged to have been members of the

12  conspiracy were such or that the alleged conspirators

13  actually succeeded in even accomplishing their goals.

14  Again, all in the charge.

02:39:14   15      Two or three other things, and I'll sit down.  You'll

16  probably get a copy of the indictment sent back with you.

17  The rules are we have to plead in the conjunctive, prove

18  in the disjunctive.

19          THE COURT:  What do you mean by that?

02:39:27   20          MR. MAGLIOLO:  In the indictment it will say

21  "and", "and", "and."  What we -- what you have to

22  determine is in the Judge's charge, and most of it are

23  alternate means.  So it's "or."  Even though it's pled

24  "and" in the indictment, you have -- the charge determines

02:39:44   25  what you all have to do as it reads "or."  It's just a

02:40:04

02:40:25

02:40:35

02:40:55

02:41:13

```
 1   legal kind of thing that we're forced to do.
 2        A little bit about interstate.  If the girls crossed
 3   in from Mexico, crossed lines, you can use that to find
 4   interstate commerce along with the prophylactics crossing
 5   from, I think, Tijuana to -- or Taiwan to California and
 6   then to Houston.
 7        We had some overt act language.  Every act would be an
 8   overt act.  I think there were 16,000 sex acts they talked
 9   about generating that money over a 20-month period or
10   64,000.  That's 64,000 overt acts.
11             MR. FAZEL:  Judge, I object.  That's a
12   misstatement of the law.  It's just not.
13             THE COURT:  Go on.  No.  State your point.
14             MR. FAZEL:  It's just a misstatement of the law.
15             THE COURT:  All right.  You got the law from me.
16   I think it's clear.  That's what you are to follow.
17             MR. MAGLIOLO:  As far as the money in the money
18   laundering coming from the sex conspiracy at Las Palmas,
19   again, even her own son, David Garcia, testified that the
20   money came from Las Palmas.  Again, David Garcia, when you
21   are thinking about whether she was trying to disguise the
22   nature, where her money came from, he said when put in his
23   name he had absolutely no control over any of the
24   properties that were bought with the Las Palmas moneys
25   that were put in his name.
```

Rebuttal Closing Statement by Mr. Magidson                                70

02:41:34

     On Counts 3, 4 and 5 each one was a deal buying land,
putting the money into it.  We show you in those counts
and in the counts I proved the checks, the number of
checks and you all saw all the evidence.  I believe every
single one of those checks was signed by the defendant
even though she put the property in other folks names.

     Counsel talked about some of the statements that he
brought out, the affidavits that the girls had done that
didn't have all the details in them.  Perhaps most of you

02:41:55

all have done affidavits.  Affidavits go to a certain
purpose.  Those affidavits had to do with them getting
status, not to do with what -- this particular crime.

     Also, he talked about proceeds from the specified
unlawful activity.  It doesn't say all proceeds.  It just

02:42:19

says proceeds from a specified unlawful activity.

     If you have any question, the charge lays it out in
detail.  Look at it.  Based on the evidence and only the
evidence, the credible, believable evidence, there is
sufficient evidence for you to find the defendant guilty

02:42:39

on all counts.  Thank you very much.

     *(End of requested excerpt.)*
*Date: August 4, 2016*

***COURT REPORTER'S CERTIFICATE***
     *I, Laura Wells, certify that the foregoing is a
correct transcript from the record of proceedings in the
above-entitled matter.*


                         */s/ Laura Wells*
                    *Laura Wells, CRR, RMR*