1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
2                          HOUSTON DIVISION

3

4    UNITED STATES OF AMERICA      .   4:13-CR-00628-1

5    VERSUS                        .   HOUSTON, TEXAS

6    HORTENCIA MEDELES-ARGUELLO  .   JANUARY 20, 2016

7    . . . . . . . . . . . . . .   1:30 P.M.

8

9                      TRANSCRIPT OF SENTENCING
                  BEFORE THE HONORABLE DAVID HITTNER
10                  UNITED STATES DISTRICT JUDGE

11

12

13                          *APPEARANCES*

14

15

16   FOR THE GOVERNMENT:

17        Ruben R. Perez
          Joseph Magliolo
18        Assistant United States Attorneys
          1000 Louisiana
19        Suite 2300
          Houston, Texas   77002
20
     FOR THE DEFENDANT:
21
          Ali R. Fazel
22        SCARDINO FAZEL
          1004 Congress
23        Third Floor
          Houston, Texas   77002
24

25

**APPEARANCES - CONTINUED**

OFFICIAL COURT REPORTER:

     Mayra Malone, CSR, RMR, CRR
     U.S. Courthouse
     515 Rusk, Room 8004
     Houston, Texas  77002

Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

- - - - -

1              **PROCEEDINGS**

2        *(Official court interpreter translating)*

3              THE COURT:  Court calls for sentencing Criminal Matter

4   13-628, United States versus Hortencia Medeles Arguello.

13:43:00   5              Who represents the government?

6              MR. PEREZ:  Ruben Perez and Joe Magliolo.  Good

7   afternoon, Your Honor.

8              THE COURT:  All right.  And for the defense?

9              MR. FAZEL:  Good afternoon, Your Honor.  Ali Fazel.

13:43:05   10  Also in court with me is Carin Stoelker, my paralegal, and I

11  ask permission from the Court to allow her inside the bar.

12              THE COURT:  That's fine.  Have you got your client

13  here?

14              MR. FAZEL:  Yes, sir.

13:43:17   15              THE COURT:  Get her up here, please.

16        *(Compliance)*

17              THE COURT:  As we are looking here at the possible

18  sentence, there is a total offense level of 43; criminal

19  history category of one.  As to the possible sentence as to

13:43:40   20  Count 1 -- 1S.  I'm going to mention the "S" for superseding

21  indictment.  1S would be life in the federal penitentiary

22  without parole.  Count 2, it is not more than 10 years.  And

23  let's see.  Let me make sure.  Count 2 is a conspiracy to

24  harbor aliens.  And the third one is money laundering.  That is

13:44:15   25  more than 20 years imprisonment.

13:44:17    1          I have read the presentence report, which is

            2    quite lengthy.  I have also read the objections.  I do want to

            3    note there were no objections by the government and there are a

            4    number of objections by the defense.  I want to go over some of

13:44:33    5    the defense objections.

            6          First of all, I want to mention throughout all of

            7    this that on December 10, 2015 not only was the second addendum

            8    filed but also a new PC -- presentence report was completed,

            9    the revised presentence report dated the same date.  So

13:44:54   10    everything I'm reading in here of the objections, as I will be

           11    noting, have been already attended to in the presentence

           12    report, including dates of one of the minors and the dates

           13    of -- the inclusion of various dates.

           14          Also, I do want to state as I go over the

13:45:14   15    objections generally by the defense, I'm not going over in

           16    detail.  As you will note, everything is done, highlighted, my

           17    notes have notes.  In fact, I even came across one addition,

           18    one word addition, a correction that will have to be made as we

           19    go through.

13:45:32   20          I do want to state as to the reliability of the

           21    testimony and any statements made, included in that is my own

           22    observation that this was a jury trial and I also heard all of

           23    the testimony.  A lot of them -- you will see there is a phrase

           24    I will keep repeating, and that also includes but not -- it

13:45:53   25    doesn't include because I didn't debrief -- hear any of the

13:45:58   1   debriefings, but I also heard all of the testimony in this

2   case.

3            With that as a background, I want to briefly go

4   through this, just briefly.  It will take a bit of time.  The

13:46:09   5   first objection is paragraph 10, where there is an objection to

6   the statement that she used the services of pimps to provide

7   prostitutes for the brothels.  Okay.  A lot of this information

8   was secured by the files of the government agencies and, what

9   is it, and interviews with law enforcement.

13:46:30  10            And that generally, as far as summarizes -- I'm

11   just summarizing page one and two of the objections.

12            There is an objection to paragraph 27 relative --

13   that you object that the conspiracy began -- the statement that

14   the conspiracy began no later than the summer of 1999.  You

13:46:52  15   argue that the charging instrument began January 2009 and ended

16   October 2013.

17            There is a response in the presentence report

18   that the defendant engaged in an ongoing commercial sex

19   enterprise, and that was one thing I noted because back here --

13:47:12  20   and I'm going to jump around -- as far as her prior convictions

21   are concerned, she was convicted in 1971 of theft in Harris

22   County, but in 2007, engaging in organized criminal activity.

23   And she was charged in the 228th District Court of Harris

24   County.  She got just three years probation and, what is it,

13:47:38  25   the actual sentence itself was deferred, so it was just three

13:47:42  1   years probation.  But that is accounted for as relevant conduct

2   in this case and, therefore, no criminal points are being

3   awarded back there in 2007.  But do I want to mention that

4   these dates as objected to are identified in the charging

13:48:02  5   instrument as to Count 2S and as to Counts 3, 4, 5 and 6S, the

6   charging instruments reflect overlapping dates, from June 2010

7   through May 2012 for money laundering and also Counts 2S

8   through 6S, and it is basically that her conduct and the

9   jointly undertaken conduct of other coconspirators.  And there

13:48:29  10  is a reference to Guideline 3B1.2(d) and also Guidelines

11  1B1.3(a)(1) and (a)(2).

12         There is an objection to paragraph 28, as to the

13  statement that the defendant relied on pimps to provide women

14  to work at the defendant's bar.  The response is also made to

13:48:52  15  the previous objection but also -- and this is the statement

16  you will hear a lot -- that the information has sufficient

17  indicia of reliability to support the probable accuracy of the

18  information.  I'm going to repeat that many times, just with

19  the term "sufficient indicia."

13:49:14  20         You object to paragraphs 31 to 45 and 56 relative

21  to the statements made by victim MDG, and you argue that there

22  are multiple discrepancies.  And, once again, it goes through a

23  number of responses, including the sufficient indicia of

24  reliability.

13:49:34  25         You object to paragraphs 46 and 47, relative to

13:49:39  1  victim AA and, once again, sufficient indicia, together with

2  other reasons.

3          Objections to paragraph 48 to 50, object to the

4  statements by victim MR, indicating that she worked at Las

13:49:54  5  Palmas where she outlined her experiences.  And, once again, I

6  believe it has sufficient indicia from all the sources

7  available, together with any testimony, if any, at court.

8          And that goes to all of them that are also --

9  were discussed in court.

13:50:17  10          There are objections to paragraphs 51 and 52 that

11  the presentence report did not mention AL was allowed to date

12  other men, including some other individuals who were the

13  confidential source.  It has an indicia of reliability, and

14  also, engaging in sexual activity with persons outside of the

13:50:35  15  commercial sex operation or resided by herself are not mutually

16  exclusive of her reports of being a victim of the instant

17  offense.

18          There is also an objection to paragraph 52,

19  failed to include that AL left her boyfriend pimp, became an

13:50:53  20  independent operator.  We have sufficient indicia.  And later

21  voluntarily engaging in commercial sex activity does not

22  preclude and negate the status as a victim.

23          You object to paragraph 63 and 65 relative to no

24  evidence being provided to establish information in these

13:51:13  25  paragraphs relative to pimps taking over the operation in

13:51:19   1   November 2012.  Once again, sufficient indicia.

2            And so we take this into consideration, in

3   assessing an aggravated role as a manager or leader to another

4   conspirator does not preclude or negate the assessment of an

13:51:36   5   aggravating role as to the defendant in this conspiracy.

6            You also object to paragraph 72.  You say:

7   Mischaracterizes the statement of Lugo who allegedly indicated

8   the girls at Las Palmas denied being forced to be there.

9            I'm also going back to the statement together

13:51:57  10   with all the other objections made in the, what is it, in the

11   longer responses to the initial objections and the sufficiency

12   of reliable -- indicia of reliability.

13            Objections to paragraphs 86, 92, 93 and 30 to 34.

14   No involvement with any of the activities of the women or pimps

13:52:22  15   other than allowing them to work at her place of business.

16            You also argue that any facts that increase the

17   maximum sentence authorized by a jury must be admitted by the

18   defendant or found by a jury, and you cite to Booker and to a

19   guideline.

13:52:41  20            I do want to state as far as response, there is

21   sufficient indicia.  Also, the revised PSR has been prepared

22   which omits the pseudo counts involved with MDG as it occurred

23   prior to January 2009.  As far as your objection, the

24   applicable cases, Booker and/or Apprendi, that any act that

13:53:10  25   increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

It is noted that the statutory maximum for Count 1S, the maximum is life imprisonment in the federal penitentiary and that aggravating and mitigating factors addressed by the guidelines in this case do not alter the statutory maximum.

Here is where I came across one slight typo.  So it's on page seven on the third paragraph up.  I'm going to just state it -- just correct it this way:  Aggravating and mitigating factors addressed by the guideline applications in this case do not -- I'm adding the word "not" -- alter the statutory maximum.  That's the one change that I'm making here in court.  And it is noted that the defendant recruited or directed family members, friends and others to serve as employees at the bars and brothels.

Objection to 93 and 98:  No evidence in discovery at trial indicated that the defendant was involved with AA and notes that AA was 18 years old when she worked at the defendant's bar.  I'm going as far as the response to the objection relative to the indicia of reliability.

I also do note that relative to this defendant, this accountability during this period of time has been addressed in the revised presentence investigation report relative to AA.

13:54:45   1        Objections to paragraph 99 to 103, 104 to 108,

2   109 to 113 and 114 to 118 relative to MR engaging in

3   prostitution voluntarily.

4        The response:  Again sufficient indicia and also

13:55:06   5   the note -- the same notes relative to the preparation of a

6   revised PSR, which omits the pseudo counts involving MR as far

7   as at least one, relative to the period prior to 2009.

8        I'm looking now at the final few.  Paragraphs 119

9   to paragraphs 148 objects to the enhancement in the guideline

13:55:33   10   calculations for matters that were outside the scope of the

11   conspiracy not foreseeable by the defendant and involved

12   matters outside the illegal agreement.

13        Again, we turn to the key word "sufficient

14   indicia" and also the presentence report has been prepared and

13:55:51   15   revised.

16        You are also discussing paragraphs 124 to 128,

17   129 to 133, 134 to 138, 139 to 143 and 144 to 148.  All of that

18   is applicable to the prior response to objections made under

19   the broad term of sufficient indicia.  Again, I'm using that

13:56:19   20   just as shorthand, and it has been fully explained in the

21   second addendum.

22        Objections to paragraphs 152 and 155 objects to

23   any enhancement of physical injury in the guideline

24   calculations.  You say the defendant was not charged with

13:56:38   25   workers.  And as described in the PSR, there was an ongoing

13:56:42   1   commercial sex operation at these locations and controlled by

2   pimps, and the pimps would beat up the women and the girls who

3   told them no.  The investigation clearly demonstrates the

4   conspirators were aware that the ongoing alien harboring

13:56:57   5   offenses involved conduct constituting criminal sexual abuse

6   under 18 United States Code, Sections 2241 or 2242.

7   Basically -- those statutes involve sex by coercion or threat.

8          And also an objection that the defendant is given

9   an organizer/leader role, and it is just noted she recruited

13:57:23   10   and directed family members, friends and others.

11          Objection to paragraph 157 to 184 incorporates --

12   the objections incorporate all the arguments previously

13   discussed, and the response also refers in part and spells out

14   sufficient indicia and a revised PSR to omit pseudo counts

13:57:47   15   related to MDG, AA, MR, IF, RA and RM as to Count 1S, and all

16   of those are initials of victims.

17          There is also an additional -- some additional

18   information, and it has all been incorporated in the final

19   presentence report and in the sentencing.  I think that -- I

13:58:15   20   believe that deals with confidential sources and so forth.

21          Let's see if there is anything else.  I do want

22   to state that I have a motion for order of mandatory

23   restitution and for attorney's fees, filed by the pro bono

24   attorney representing at least one of the defendants.  And I

13:58:40   25   will deal with that later.

13:58:41   1            If I forget, if you would, Probation, remind me

2   to deal with that if I have to add anything further, but I have

3   considered that.  And as of now, that's included in the

4   restitution as to that one victim.

13:59:00   5            There is a request for attorney's fees in the

6   amount of $73,541.10.  It does state here that this attorney,

7   which we appreciate the work -- don't get me wrong on that --

8   we appreciate the work, but it is stated that it was pro bono.

9   But, you know, if they get attorney's fees, they state they

13:59:21   10   will use it for other sex trafficking victims; however, the

11   statute says "costs incurred by the victim," so I'm not going

12   to give a separate order of attorney's fees.  It will be

13   incorporated in that 400 some odd thousand dollar restitution

14   amount as to one of the defendants.  I'm just making sure.

13:59:55   15            Aside from what you have in writing, any

16   additions or corrections by the government?

17            MR. PEREZ:  No, Your Honor.

18            THE COURT:  Any additions or corrections by the

19   defense?

14:00:03   20            MR. FAZEL:  Yes.  There are additions, not

21   corrections.

22            THE COURT:  Go on.

23            MR. FAZEL:  Yes, sir.  If it please the Court, I

24   understand the Court's rulings, and I do not mean to argue with

14:00:13   25   it whatsoever.  I understand the indicia arguments that the

14:00:15  1    Court has made very clear in its rulings and its position.

2             I would like to add some additional information

3    for the record for appellate purposes and for edification of

4    the Court, and I will try to do this as fast as possible so I

14:00:29  5    don't take --

6             THE COURT:  Why don't you file it?

7             MR. FAZEL:  I will, Your Honor.

8             THE COURT:  Why do you have to get it in the record

9    now?

14:00:34  10            MR. FAZEL:  I would like the Court to hear some of it

11    at least.

12            THE COURT:  What is it entitled?

13            MR. FAZEL:  Yes, sir.

14            THE COURT:  What is it entitled so I know --

14:00:42  15            MR. FAZEL:  These are affidavits of witnesses -- of

16    complainants.

17            THE COURT:  Affidavits of complainants at this stage?

18            MR. FAZEL:  Yes, sir.

19            THE COURT:  Are they here?

14:00:51  20            MR. FAZEL:  I don't know who is here, who's not here.

21    Statements that are made --

22            THE COURT:  Victim impact statements?

23            MR. FAZEL:  No, Your Honor.

24            THE COURT:  Affidavits of what?

14:00:59  25            MR. FAZEL:  Yes, Your Honor.  As part of the discovery

14:01:00   1   in this case, they were -- we were produced immigration

2   documents and immigration files.  Most of the witnesses or

3   complainants in the case went through the immigration process

4   in order to obtain documents to be able to reside in this

14:01:15   5   country and additionally to work in this country.

6              As part of that, they went into a lot of detail

7   as to what occurred in their lives, what happened, what caused

8   them to be here, who they dealt with, what happened in their

9   lives, including --

14:01:26  10         THE COURT:  I'm going to ask the government's position

11   on this in a moment.

12         MR. FAZEL:  -- including their interaction with the

13   accused, the defendant.  These documents that I'm producing to

14   the Court are Bates stamped by the government.  They are

14:01:39  15   government documents produced to the defense.  These documents

16   detail descriptions of activities undertaken by MDG, AA, MG, LL

17   and so forth.  And what I would like to do is put these into

18   evidence before the Court as to how they are different than the

19   representations made in the PSIR and --

14:02:09  20         THE COURT:  Were those provided to probation?

21         MR. FAZEL:  Probation has the complete file of the

22   government, so I have to assume yes.

23         THE COURT:  Did you specifically file those in your

24   objections?

14:02:19  25         MR. FAZEL:  No, Your Honor.  This is pursuant to this

14:02:20  1    hearing.  I wanted to rebut what was in the amended PSIR.

2         THE COURT:  Why didn't you file it as objections?

3         MR. FAZEL:  But these objections are already made.

4    This is just buttressing what I have already made objections

14:02:34  5    to.

6         THE COURT:  What is the government's position?

7         MR. PEREZ:  This outline, Your Honor, if he had access

8    to that discovery.  We provided it.  The victims, witnesses

9    testified.  He had a chance to cross-examine them.

14:02:43  10        THE COURT:  Cross-examine them where?

11        MR. PEREZ:  On the witness stand.

12        THE COURT:  On the witness stand?

13        MR. PEREZ:  Yes, sir.

14        THE COURT:  Were they witnesses?

14:02:48  15        MR. FAZEL:  Yes, sir.  This is not new evidence.  This

16    is nothing surprising to anybody.

17        THE COURT:  But it was presented in court, correct?

18        MR. FAZEL:  No.

19        THE COURT:  No?  Why?  You didn't ask the questions in

14:03:01  20    court?

21        MR. FAZEL:  I did cross-examine them on it, but the

22    thing is the young ladies that testified in court did not quite

23    say all the things that are in the PSIR.

24        THE COURT:  All right.  Then you can file them.  I'm

14:03:11  25    not going to permit you to go into them at this time.  You can

14:03:14    1    file them.  If it is reversible error, then we will come back

2    and listen to them.  Okay?  But you certainly can file them.

3    If you would, file them for the record.

4                MR. PEREZ:  I just want to make sure the record is

14:03:25    5    clear that he did have them prior to --

6                THE COURT:  He did?

7                MR. PEREZ:  He did have them, Your Honor.

8                THE COURT:  Prior to trial?

9                MR. PEREZ:  Prior to trial, yes.

14:03:33   10                THE COURT:  It is so noted.  You can put that not into

11    evidence but attached to the records in this case.  And if need

12    be, you can raise them -- or whoever is appointed as appeals

13    counsel can raise it on appeal.

14                Anything further, then, aside from what you have

14:03:46   15    in writing and what you are submitting under that order of the

16    Court?

17                MR. FAZEL:  Just argument, but no.  Other than that,

18    no.

19                THE COURT:  Any objections are overruled that have not

14:03:57   20    already been granted, and the presentence report and all

21    addendums are hereby adopted by this Court.

22                Counsel, do you desire to make a statement on

23    behalf of your client?

24                MR. FAZEL:  I do, Your Honor.

14:04:07   25                THE COURT:  By the way, we also are going to get to

14:04:09  1  the victim impact statements.  We are going to hear from

2  everybody, and then we will hear if any of the victims want to

3  be heard.  And I will go through how I have read all of the

4  letters, translated and I got a whole file.  I have gone

14:04:24  5  through the whole thing.

6            Counsel, do you desire now to make a statement on

7  behalf of your client?

8            MR. FAZEL:  I do, Your Honor.  If it please the Court

9  and the government.  Your Honor, I know that the Court has

14:04:35  10  heard about a week and a half worth of testimony in this case,

11  and I don't want to be repetitious.  I do want to bring up to

12  the Court that --

13            THE COURT:  Pull the microphone over a little bit.

14            MR. FAZEL:  I'm sorry, Your Honor.

14:04:48  15            THE COURT:  That will do it.

16            MR. FAZEL:  I do want to bring up to the Court that

17  the things that I wanted to attach as addendums to the record

18  outline a detailed repetition of what occurred to the

19  complainants in this case.

14:05:04  20            THE COURT:  Say that again.  You are going to go into

21  it or not in detail?

22            MR. FAZEL:  I'm not.

23            THE COURT:  Because I sat and we all listened to it.

24            MR. FAZEL:  You did.  As I indicated earlier, the

14:05:14  25  witnesses who testified at trial did not testify to what is in

14:05:17  1    the PSIR.  The PSIR indicates other material, other information

2    that they obtained, the probation department obtained by

3    looking at the 302s, the FBI reports --

4            THE COURT:  Can't you do that when you develop a

14:05:31  5    presentence report?

6            MR. FAZEL:  You sure can.  But when you do that, you

7    also ought to be able to look at other documents that the

8    government has, and presumably they have got all of them,

9    including affidavits of the complainants who are directly

14:05:43  10   contradicting what is in the PSIR.

11           There are two affidavits by MDG that directly

12   contradicts --

13           THE COURT:  Hold it, Counsel.  I'm saying, do you

14   desire to make a statement on behalf of your client?  This is

14:05:57  15   allocution.  I think that you have been protected as best I can

16   by going through the objections, even filing the papers you

17   have.  This is allocution now on behalf of your client, not

18   going over what we heard at trial.

19           MR. FAZEL:  Yes, Your Honor.  All right.  In that

14:06:12  20   case, Your Honor, I would submit this:  The defendant before

21   you is 70 years old.  There has been multiple defendants

22   aligned with this case, other pimps in this case that have been

23   sentenced by another court.  I have a list of those defendants

24   here and their sentences, along with the judgment and

14:06:35  25   commitment documents, if the Court wants to look at them.

14:06:38  1           THE COURT:  I have got that spreadsheet, I believe.

2           MR. FAZEL:  This is one I created.

3           THE COURT:  Okay.

4           MR. FAZEL:  Those defendants --

14:06:43  5           THE COURT:  Do you have a copy of that sheet?

6           THE PROBATION OFFICER:  I don't have one with me.

7           THE COURT:  Don't worry about it.  Go on.

8           MR. FAZEL:  Do you want my copy?

9           THE COURT:  No.  Go on.

14:06:53 10           MR. FAZEL:  The pimps in question include Gerardo

11  Salazar --

12           THE COURT:  You don't have to go over names.

13           MR. FAZEL:  Yes, Your Honor.  One was sentenced to

14  time served.

14:07:05 15           THE COURT:  Who was the sentencing judge?

16           MR. FAZEL:  Judge Gilmore.

17           THE COURT:  Go on.

18           MR. FAZEL:  One was sentenced to 16 months.  One was

19  sentenced to 60 months.  The other was sentenced to 60 months

14:07:17 20  and one was sentenced to 51 months.  These are the individuals

21  that had hands-on, literally hands-on activity with the folks

22  that are going to be allocuting before the Court, the

23  complainants.  These are younger individuals all charged with

24  sex trafficking, and now the government wants this Court to

14:07:36 25  sentence this individual to life in prison.  And I understand

14:07:38  1  the guidelines --

2        THE COURT:  Not wants to.  That is what it is.

3        MR. FAZEL:  I have a feeling the government is going

4  to be seeking life in prison.  So I'm just going to argue that.

14:07:47  5        I would also submit to the Court that the

6  individual before the Court is different than, separate than

7  and apart from and her activities make her different than those

8  other individuals that are, quote, the pimps.  I understand the

9  idea of conspiracy and aiding and abetting, and I'm not going

14:08:05  10  to argue the law here with the Court.  But what I will tell you

11  is there is no evidence that this individual had anything to do

12  with the movement of the complainants from Mexico to the United

13  States, how they were treated, where they lived, how or what

14  they did.

14:08:21  15        Even assuming what they said in the PSIR is

16  correct, which I would submit to the Court is not, but even

17  assuming that is correct, she had nothing to do with it.

18        What she did do, what there is no debate about

19  and what I said in my opening statement is she did have a

14:08:38  20  brothel.  There is no debate about that and she did make money

21  in that endeavor, and there is no doubt about that.  But there

22  should be a difference made and the sentence ought to be

23  different for an individual such as her versus such as

24  individuals -- the pimps that did the beating, the coercing,

14:08:55  25  the transporting and taking of the money of the girls.

14:09:00  1              I would submit to the Court that because those

2    folks are sentenced to 60 months, because the other folks, the

3    other codefendants in this case were sentenced from 48 months

4    at the low to 88 months high by Judge Werlein, who I will not

14:09:15  5    submit to the Court -- he is not exactly somebody who sentences

6    lightly.  I would submit to the Court that a sentence in that

7    range is a correct and appropriate sentence.

8              THE COURT:  Did any of them go to trial?

9              MR. FAZEL:  I don't believe so.

14:09:32  10             THE COURT:  Did they actually go to trial?

11             MR. PEREZ:  Did not, Your Honor.

12             THE COURT:  By the way, it was your client's absolute

13    right to have a jury trial.  Absolute right.  And certainly

14    that is not held against her at all, but at that point, she

14:09:43  15    doesn't get acceptance of responsibility, any kind of downward

16    departure or cooperation or so forth.

17             MR. FAZEL:  I understand that.  But I think the

18    question then ought to be asked in that vein, did any of them

19    get the opportunity to plead to anything other than Count 1?

14:09:59  20             THE COURT:  I'm not the charging authority.  They are

21    the charging authority.

22             MR. FAZEL:  Yes, sir.  Absolutely.  But when the Court

23    brings that up, I just want the record to be clear that they

24    pled to something that allowed them to get capped at 10 years

14:10:11  25    or 15 years versus this individual who was not able to do that.

14:10:15    1            So looking at the totality of the circumstances,

         2   looking at the fairness involved here, I would submit to the

         3   Court that a sentence for a 70-year-old ought to be something

         4   in that range.

14:10:31    5            Thank you, Your Honor.

         6            THE COURT:  Okay.  Ms. Medeles-Arguello, do you want

         7   to make a statement on your own behalf?

         8            MR. FAZEL:  If it please the Court, one other thing.

         9   I spoke with the defendant earlier today as I have many, many

14:10:45   10   times.  I did tell her that she does have a right to allocute.

        11   I want her to allocute, but I have cautioned her to be careful

        12   not to go into details because of the appellate right.

        13            With that, she is prepared to make a statement.

        14            THE COURT:  Swing that around.  Yes, ma'am?

14:11:12   15            THE DEFENDANT:  I only want to say that I don't have

        16   anything to do with those pimps that were involved with the

        17   girls.  I don't have anything to do with that, and I'm very

        18   sorry about it because of my family.  That's all.

        19            THE COURT:  I want to be clear.  She had nothing to do

14:11:40   20   with any of the prostitution?  Is that what she said?

        21            THE DEFENDANT:  No.  That I'm not involved with those

        22   women that they brought over.

        23            MR. FAZEL:  I'm just a little nervous for her to say

        24   something that is going to cause her appellate issues.  I think

14:12:06   25   what she is trying to tell the Court --

```
14:12:09    1              THE COURT:  Wait a second.  Don't tell me what she is
            2     trying to tell the Court.  Okay?  If she wants to stop, fine.
            3     If she wants to tell me a bit more, she can.
            4              MR. FAZEL:  Yes, Your Honor.  May I have a moment with
14:12:20    5     my client, Your Honor?
            6              THE COURT:  Okay.
            7        (Pause)
            8              MR. FAZEL:  Thank you.
            9              THE DEFENDANT:  I don't know what they were doing with
14:12:40   10     the girls.  I don't know anything about that.  That's all.
           11              THE COURT:  Government's position, please?
           12              MR. PEREZ:  I'm not going to regurgitate all the
           13     evidence that was heard at trial.  The Court heard all of the
           14     evidence.  She keeps talking about the pimps, the pimps, the
14:13:03   15     pimps.  She herself was a pimp, but because she is a female, I
           16     don't know of any other word to describe her.  I guess she is a
           17     pimpette because she is a pimp.
           18              THE COURT:  What do you mean, she is a pimp?
           19              MR. PEREZ:  She is a pimp, Your Honor.
14:13:20   20              THE COURT:  How?
           21              MR. PEREZ:  She is the one who provided the place.
           22     She is the one that worked with the pimps.  She is the one that
           23     made money.  As the Court recalls, in a 19-month period --
           24              THE COURT:  What?
14:13:32   25              MR. PEREZ:  In a 19-month period, her brothel, her
```

14:13:35   1   brothel that posed as a bar, her rooms were used 64,296 times

2   in a 19-month period.  That was in evidence, Your Honor.  She

3   generated $1.6 million tax free.  She is a pimpette.  She used

4   women.  Now, the focus right now is on her.  It is.  But I also

14:14:02   5   want the Court to understand that there are women in the

6   courtroom who were her victims, and it took a lot for these

7   women to come forward and to tell this Court and the jury what

8   this pimpette did to them.

9          So for her to try to remove herself from -- I had

14:14:22   10   nothing to do with the pimps, the pimps.  She is a pimpette,

11   Your Honor, and she deserves the maximum.  The guideline --

12   Congress provided the guidelines, gave us the guidelines and

13   she should go to prison on the conspiracy to sex traffic for

14   life, conspiracy to harbor for the maximum, 10, and money

14:14:45   15   laundering on Counts 3 through Count 6 for 20 years, the

16   maximum.  She deserves the maximum because of the evidence.

17          Again, I know we are here and we are focusing on

18   her right now, but the Trafficking Victims Protection Act said

19   that our focus should be twofold.  Number one, to prosecute

14:15:06   20   defendants but also to rescue and restore victims.  I don't

21   want us to forget about the victims in this case, Your Honor.

22   So she deserves life based on the evidence.

23          MR. MAGLIOLO:  I would just like to add, Your Honor,

24   counsel for the defense talks about many of the other

14:15:24   25   defendants in this case and what they got.  The government's

14:15:28  1  position is that those defendants would not be in this case

2  other than for the ringleader, the person who is operating the

3  brothel.  Many of those defendants he talked about got lesser

4  sentences, but many of those defendants cooperated with the

14:15:46  5  government.  Many of those defendants testified.  But for those

6  defendants, the people in lesser roles, the salaried employees

7  in some cases -- by the way, many of those people were her

8  relatives that she brought into this conspiracy and basically

9  ruined the lives of people who, many otherwise, would not have

14:16:12  10  been in this business.

11  The Court heard testimony of her two daughters,

12  one of her sons.  It is reasonable to infer from the testimony

13  that they would not have been in this business -- most of them

14  were otherwise decent human beings.  But this defendant used

14:16:29  15  her manipulative skills to get them into this business and

16  basically ruin their lives and ruin their family's lives.

17  So the reason this defendant deserves the

18  sentence that the guidelines suggest she should have and a

19  maximum sentence and a much higher sentence than anyone else in

14:16:51  20  this case, because she did use her constitutional right to go

21  to trial and did not do the things the others did, either

22  admitted their guilt, which the guidelines makes an accounting

23  for, cooperating with the government, ultimately be forced into

24  the position as her children were, that they wanted to tell the

14:17:12  25  truth.  And in order to tell the truth, they had to testify as

14:17:16   1   to their mother's actions, things that they started seeing, I

           2   believe the testimony was, when she was 13 years old, she

           3   started seeing what her mother did for a living, running the

           4   brothel.  And then all of those -- many of the kids, many of

14:17:32   5   the sisters, brothers were lured into this type of behavior.

           6            For those reasons, not only what she did to our

           7   victims, some that you will hear testify here today, but what

           8   she did to a different kind of victim, her own family, by

           9   leading and running this organization for many, many, many

14:17:52  10   years.  That's pretty much it.

          11            THE COURT:  Yes, sir.

          12            MR. FAZEL:  If it please the Court, since two lawyers

          13   talk, I would like to take an opportunity to rebut what they

          14   are saying, if it please the Court.

14:18:04  15            THE COURT:  Pull the mic over.

          16            MR. FAZEL:  Yes, Your Honor.  It is imperative to

          17   distinguish in this case between pimps, those are the ones who

          18   handled the women, who beat them, who transported them and what

          19   this defendant before the Court did.  Because there is no

14:18:17  20   doubt, there is a difference between the two.

          21            Additionally, the pimps, the bad guys, the ones

          22   that did the beating, that took the money, that did all of

          23   that, are the ones that I have told the Court received 51

          24   months, 61 months, 50 months respectfully, with the same

14:18:34  25   prosecutor.  The same prosecutor.  Yes, she chose her

14:18:37   1   constitutional right to go to trial.  That is true.  But at the

2   same time she -- if she had not done that and if she had pled

3   guilty, I would submit to the Court she would be before the

4   Court with the same 302s and the same PSIR as she is right now.

14:18:52   5   The same thing.  Because I have tried -- I have contacted

6   probation.  I told them about the affidavits in question.

7          When I spoke to one of the probation officers,

8   which I will not mention on the record, this PSIR never changed

9   nor did they seek those copies from me.  So I would submit to

14:19:10   10   the Court that it is inaccurate for these prosecutors who are

11   the ones that chose to charge her the way they did, chose to

12   offer her whatever it is -- I know we cannot discuss that --

13   and then come in and say, well, she is the one that went to

14   trial, yes, she did.  But perhaps something forced her in that

14:19:28   15   corner, perhaps something that she could not avoid.

16          I would submit to the Court there is a difference

17   between those pimps and the woman before the Court.  She is 70

18   years old.  How much time does a 70-year-old need before she

19   gets it?  Like the Court said, she got a three-year deferred

14:19:45   20   adjudication out of Mark Carter's court and --

21          THE COURT:  That's state court.  That is not federal.

22          MR. FAZEL:  I agree 100 percent.  In federal court,

23   she is going to do time.  I understand that.  The question is:

24   How much time is fair?  The guidelines are absolutely not fair.

14:20:00   25          Thank you, Your Honor.

14:20:01    1        MR. MAGLIOLO:  Just in response to that, one thing,

            2   Your Honor?

            3        THE COURT:  Yes.

            4        MR. MAGLIOLO:  Those three pimps all cooperated with

14:20:05    5   the government.  All told us things that we would not have

            6   known about the defendant and could not have prosecuted her in

            7   the manner that we did without their information.

            8            Additionally, one of those pimps -- actually, all

            9   three volunteered to testify and one of them actually testified

14:20:20   10   before the Court, and the Court heard that pimp's testimony,

           11   Your Honor.

           12        MR. FAZEL:  Your Honor, one is a fugitive and I'm

           13   talking about the Salazars.  They did not cooperate.  They were

           14   given sentences in Judge Gilmore's court.  That is inaccurate.

14:20:55   15        THE COURT:  I'm going to move to hear any of the

           16   victims that may want to come up.

           17            What I'm going to ask, if you would have your

           18   defendant sit down in the last chair over there.  Okay?  At

           19   that table, that second chair in.  Okay.  If you would, just

14:21:15   20   have her have a seat over there.

           21        MR. FAZEL:  Did the Court want counsel to sit down, as

           22   well?

           23        THE COURT:  No.  You can stand or you can be seated.

           24   I'm going to go into this just briefly.  I know we have some of

14:21:49   25   the folks here who may want to make a statement.

14:21:51    1            First of all, I want to state that I have read,

2    first of all, the first packet, 61 pages of victim impact

3    statements, including translations.  Many of you wrote, and I

4    have read everything that you stated.  I have considered all of

14:22:07    5    the -- there was some late filings that were actually put on

6    the desk of the probation department on January 19, but dated

7    January 14th, from the victim witness specialist, and they also

8    are in the record.  I have considered all of that.

9            You are certainly free, if you would like, to

14:22:29   10    just come up and give just me a brief word, brief word.

11            I'm going to ask the attorneys, what do you think

12    is a fair time?  Two, three minutes each?

13            MR. PEREZ:  That's fine, Your Honor.

14            THE COURT:  Is that all right with you?

14:22:40   15            MR. FAZEL:  That's fine with us.

16            THE COURT:  Two to three minutes.  Okay.  You are

17    welcome to come up, if you would like.  What I'm going to have

18    you do is come to that microphone right over here by the court

19    reporter and just talk to me and it will be picked up.

14:22:52   20            If any of you want to come forward, we have an

21    interpreter.  If they speak Spanish, I'm going to need it

22    interpreted into English, of course.  So you will need to get

23    to a microphone yourself if you want to stand there.

24            Let's go one at a time.

14:23:06   25            Yes, ma'am?  If you want to come forward right to

14:23:09   1  that microphone.

          2           Ask her to come up to that microphone and talk to

          3  me.  Yes, ma'am?  What do you want to say?

          4           VICTIM AA:  What I wanted to tell you, Judge, is that

14:23:31   5  this lady says she didn't have anything to do with all of us,

          6  but the woman was in contact with the pimps that we had.  She

          7  was well aware of everything that they were doing to us.

          8           THE COURT:  One second.

          9           MR. FAZEL:  I would respectfully object to any

14:23:55  10  testimony being given at this time because I can't

         11  cross-examine her.

         12           THE COURT:  I understand that.  I understand that.

         13  Just tell me how it has impacted your life.  We understand.  We

         14  heard the testimony during the trial as to her involvement, and

14:24:08  15  that is going to be a portion, if it goes on appeal, but I need

         16  to know of the victim impact, meaning how it impacted you as a

         17  person, you and your family or any children.  Okay?  How it

         18  impacted your life.  Yes, ma'am?

         19           VICTIM AA:  This impacted me greatly because when I

14:24:35  20  hear about all of this, I feel very, very bad.  My life is

         21  not -- it is bad.  My life has a lot of emotions of everything,

         22  the feelings that I experienced.  For me to be able to have a

         23  different life is -- this was real hard on me.  Everything that

         24  happened to me throughout all of this, I think it is real tough

14:25:26  25  for me to go on with my life and I need therapy.  And that's

14:25:34   1   what I wanted to tell you, Judge.  Thank you very much.

2                  THE COURT:  Thank you for coming forward.

3                        What is the name or initials?

4                  MR. MAGLIOLO:  We are getting it, Your Honor.

14:25:49   5                  THE COURT:  Do we have an initial?

6                  MR. PEREZ:  AA, Your Honor.

7                        May I have a moment, Your Honor?

8        *(Pause)*

9                  THE COURT:  What is the initial for this young lady,

14:26:12  10   please?

11                  MR. PEREZ:  AB, Your Honor.

12                  THE COURT:  Yes, ma'am?  Speak into the microphone.

13                  VICTIM AB:  I'm coming here because I personally have

14   felt very bad because of everything I went through.  They did

14:26:36  15   lots of things to me.  They did a lot of things to me.

16   Everything I went through was pain.  It was suffering that I

17   had.  Not even therapy.  I have gone and I will never be able

18   to forget what happened.

19                        What I went through is hard, what we all went

14:27:20  20   through.  Not just me.  I give you thanks and to everyone who

21   helped us.  Because thanks to all of you, this woman won't be

22   able to do what she did to all of us anymore.  And I feel

23   stronger now that she is going to pay for everything.  And I

24   give many thanks to everyone, to all of you because I know that

14:27:58  25   I will recover because she is going to pay for this.

14:28:03   1            THE COURT:  Thank you for coming here.

           2            MR. PEREZ:  RM as in Mary.

           3            THE COURT:  Yes, ma'am?

           4            VICTIM RM:  I want to tell you that during the eight

14:28:42   5   months that my daughter was kidnapped by a pimp, those were the

           6   months that I was working at that cantina.

           7            THE COURT:  By kidnapped, you mean, where was the

           8   child kidnapped?

           9            VICTIM RM:  The pimp was holding her, kidnapped.

14:29:06  10   Well, I wasn't able to have communication with her for eight

          11   months with her.

          12            THE COURT:  What were you supposed to do during that

          13   time?

          14            VICTIM RM:  Work in the bar.

14:29:16  15            THE COURT:  Okay.  Go on.

          16            VICTIM RM:  Those are some terrible months that I went

          17   through, having to put up with the customers.  On one occasion,

          18   a man tried to kill me in the room.

          19            MR. FAZEL:  Again, Your Honor, if this witness is

14:29:41  20   testifying, I apologize, but I have to object.

          21            MR. MAGLIOLO:  Your Honor, he doesn't have a right to

          22   object to their statement.

          23            THE COURT:  I understand.  I'm going to use some

          24   discretion in this.

14:29:53  25                  Go ahead.

14:30:03  1      VICTIM RM:  The woman forced me to give her back all

2    of the money, even though she saw that this man had raped me in

3    every way possible.

4           MR. FAZEL:  Your Honor, I'm sorry.  I have to object.

14:30:14  5    I apologize.  There is no way around it.  I can't cross-examine

6    this.

7           MR. MAGLIOLO:  The Court has the right to understand

8    the context of what they tell the Court.

9           THE COURT:  Overrule the objection.  I will give you a

14:30:23 10    running objection.  If it gets to the point I think it ought to

11    stop, I will do that also.

12           MR. FAZEL:  Yes, Your Honor.

13           THE COURT:  Yes, ma'am?  How this impacted you as a

14    person?

14:30:37 15      VICTIM RM:  As a result of that, it has had a great

16    impact on my life.  This has been very difficult for me.  My

17    daughter is 13 years old now.  She asks questions.  She asks me

18    a lot of questions about why am I this way, very solitary, a

19    very isolated person.  I have always, always been afraid to get

14:31:15 20    near people because of that same reason; that I'm afraid they

21    will do something to me.  Life is not the same.  That's why I

22    ask that you please give her the fair sentence because she is

23    someone who doesn't deserve to be free.

24           THE COURT:  Thank you.

14:31:39 25           VICTIM RM:  Thank you.

14:32:10   1          MR. PEREZ:  EE.

2          THE COURT:  EE?

3          MR. PEREZ:  Yes, sir.

4          THE COURT:  Yes, ma'am?

14:32:25   5          VICTIM EE:  Many -- there were years that I suffered

6    for being apart from my son, knowing I wouldn't be able to see

7    him again.

8          THE COURT:  Where was your son?

9          VICTIM EE:  In Honduras.

14:32:43  10          THE COURT:  What effect -- what is the connection

11   between your son being in Honduras and you being involved with

12   this matter?  You need to let us know.  Was somebody holding

13   him there or what?

14          VICTIM EE:  I'm sorry.  It was my daughter.  She was

14:33:02  15   in Mexico.  Her dad was holding her.  They used her to threaten

16   me so that they could make a prostitute of me.

17          THE COURT:  How are you doing now?  How do you feel

18   now?  That's what we are here for today.

19          VICTIM EE:  I feel calm.  I have been going to

14:33:35  20   therapy.  I spent two years going to therapy.  I have a husband

21   who, I give God thanks, has supported me a lot.  I'm ashamed to

22   say this, but it's something that I have to tell you.

23   Sometimes a month will go by and I'm not able to have relations

24   with my husband.  He gets frustrated, but at the same time he

14:34:12  25   understands me.  And thanks to my therapy that I have received,

14:34:20   1   I have been able to move forward.  That's all I have to say.

2           THE COURT:  Thank you.  Thank you for coming.

3           MR. PEREZ:  AD, Your Honor.

4           THE COURT:  AD.  Thank you.  Yes, ma'am?  Go on.

14:35:32   5           VICTIM AD:  At this time I think that the woman was

6   guilty.

7           THE COURT:  How do you feel?  We need to know how you

8   feel.  The jury found her guilty and I will have to sentence

9   her, but we are here to understand how you feel.

14:36:01  10           VICTIM AD:  I feel bad because I don't -- I have two

11   kids in Mexico.  I haven't heard from them.  I don't know them

12   and they don't know me.  The time in which I was working at the

13   cantina, at the bar, I didn't want to stay there working,

14   because there was a guy there who all he wanted to do was

14:36:48  15   manhandle all of the girls.

16           MR. FAZEL:  Objection as to that testimony.

17           THE COURT:  Overruled.

18           VICTIM AD:  And he always keeps coming to my mind.  I

19   have got my family in Mexico, and 17 years later, I don't know

14:37:14  20   anything about them.  And I have my husband.  I have my family

21   now, but I still haven't -- I have spent two years going to

22   therapy, but I haven't gotten any results, like the girl said

23   who came up just now.  Sometimes my husband wants to touch me

24   and I can't.

14:38:04  25           Two years ago, I was hospitalized for the same

14:38:14    1    thing, for the problem that I had from working at the cantina.

2    And they had to hospitalize me because I wasn't able to

3    tolerate my children anymore.  I wanted to hurt them.

4    Sometimes that person that doesn't want to give me the children

14:38:51    5    comes to my dreams.  And despite going to therapy, I can't get

6    over it.  I feel very depressed, alone, sad sometimes.  I don't

7    want to do anything.  I feel like I don't want my children to

8    come near me, but I'm going to church right now to be able to

9    get over it.  And right now, well, my husband is the one that's

14:39:42   10    been helping me to get through this.

11            THE COURT:  Okay.  Thank you.

12            I appreciate everybody else being here.  I know

13    we have some other folks out there, and I appreciate you all

14    coming today.

14:40:06   15            Counsel, may I see the attorneys back up here?

16    Leave your client sitting there.

17            Counsel, do you know of any reason why your

18    client should not be sentenced at this time?

19            MR. FAZEL:  No, Your Honor.

14:40:16   20            THE COURT:  She can remain seated.  She can remain

21    seated.  Usually I have them up here, but in this instance, she

22    can remain seated.

23            There are just a number of things as far as -- I

24    will just read one paragraph.  The defendant is before the

14:40:38   25    Court for her second felony offense and second conviction

14:40:41  1   involving commercial sex acts.  Even though the defendant has a

2   minimal criminal history, investigation revealed that she was

3   also involved in criminal conduct by operating bars and

4   brothels since 1999.  She was on probation for engaging in

14:41:00  5   organized crime under Harris County Docket 1120112.  The

6   defendant was determined to be the organizer or leader of this

7   criminal enterprise for at least 14 years, which included the

8   time she was on probation in state court.

9          The investigation was only able to capture 19

14:41:19  10  months of profits, from February 2012 to August 2013, which

11  revealed an average of $80,000 each month.  The defendant

12  operated at least three bars and/or brothels.  She pulled into

13  the offense all of her three own -- of her own three children,

14  her two sisters and extended family members.  She employed

14:41:45  15  pimps who provided the adults and minors for commercial sex

16  acts.  The investigation identified 12 victims, all

17  undocumented aliens, which included five adults and seven

18  minors.

19         I've considered 18 United States Code, Section

14:42:02  20  3553(a) -- again, 18 United States Code, Section 3553(a) -- and

21  I feel that a sentence within those guidelines is appropriate

22  in this case.  And there are no apparent factors warranting a

23  sentence outside the advisory guideline range.

24         The defendant is hereby sentenced as follows:

14:42:27  25  The defendant is hereby committed to the custody of the Bureau

14:42:30   1   of the Prisons to be imprisoned in the federal penitentiary for

           2   a term of life as to Count 1, 120 months as to Count 2 and 240

           3   months as to each of Counts 3, 4, 5 and 6, all of the

           4   superseding indictment.  All such terms are to run concurrently

14:42:54   5   for a total term of life imprisonment without parole.

           6            Upon release from imprisonment -- and I need to

           7   state this because it is required, even though it is a life

           8   sentence.  It may seem inconsistent, but I'm required to do so.

           9            Upon any release from imprisonment, she will be

14:43:10  10   placed on supervised release for a term of five years, which

          11   consists of five terms as to Count 1, three years as to each of

          12   Counts 2, 3, 4, 5 and 6, and all such terms are to run

          13   concurrently, for a total of five years.

          14            And while on any supervised release, she will not

14:43:30  15   commit any other federal, state or local crime.  I'm just going

          16   to put that all in the final judgment.  I think I don't have to

          17   read through it all.  It will be incorporated in the final

          18   judgment, including not possessing a firearm and cooperation of

          19   a DNA sample.  It will all be in the final judgment.

14:43:48  20            And also, again, because she is a sex offender,

          21   if she ever were to get out, she would be required to report

          22   the address where she will reside and any subsequent change of

          23   residence to the probation officer responsible for any

          24   supervision, and the defendant shall register with the sex

14:44:07  25   offender registration agency in any state in which she will

14:44:11    1    reside, is employed, carries on a vocation or is a student, as

2    directed by the probation office.  This is required for anyone

3    who has a term of years once they get out, but it is required

4    to be read.

14:44:25    5         The probation officer will then provide any state

6    official with any and all information required by that state

7    sex offender agency where she is, including photography and

8    fingerprinting.

9         She will not seek or maintain employment,

14:44:41   10    supervise, volunteer or participate in any program and/or

11    activity where minors under the age of 18 would congregate,

12    without prior written approval of the United States Probation

13    Department.  And that would include, in appropriate cases,

14    athletic, religious, volunteer, civic or cultural activities as

14:45:01   15    designated for minors under the age of 18.  And she will not

16    have any contact with any minor children under the age of 18

17    without prior written permission of the probation office.  That

18    is in the -- if there was any possibility of being released.

19         It is further ordered that the defendant is

14:45:19   20    jointly and severally liable, that is to pay herself or in

21    conjunction with other codefendants -- I hope I pronounce the

22    names correctly -- Delia Diaz, Lilia Medeles Cerda, Diana

23    Medeles Garcia, Talat, T-A-L-A-T, Crippin and David Garcia to

24    pay restitution totaling $840,289.10 to be accounted for as

14:45:50   25    follows:  To the victim RT in the amount of $97,600; EE in the

14:45:58   1   amount of $75,680; AV in the amount of $87,100; D, like in dog,

2   DL, the amount of $89,680; and the one case that was heavily

3   documented, to AL, a total of $490,229.10.

4            It is ordered she pay to the United States a

14:46:30   5   special assessment of $100 as to each of the counts she was

6   convicted.  That is a statutory amount required by Congress.

7   One hundred dollars per count of conviction, and that amount is

8   $600.

9            Now, let me ask probation:  Do I have to set any

14:46:46   10   kind of a budget?  I guess I do.

11            THE PROBATION OFFICER:  Yes, Your Honor.

12            THE COURT:  Everybody needs to understand this is

13   statutory language that needs to be used.  Having assessed the

14   defendant's ability to pay, payment of the total criminal

14:47:00   15   monetary penalties will be due as follows:  Make a lump sum

16   payment of $600, due immediately.  The balance due in

17   50 percent of any wages earned while in prison.  In accordance

18   with the Bureau of Prisons Inmate Financial Responsibility

19   program, any balance remaining after any release from

14:47:20   20   imprisonment will be due in certain monthly installments.  I

21   know I need to set a certain amount, so I need to set some

22   amount, even in a case like this.  $200 to be paid 60 days

23   after any release from imprisonment to any term of supervision

24   and payment is to be made through the U.S. District Clerk,

14:47:40   25   Southern District of Texas.

14:47:43   1                 This forfeiture, do I need to give notice to the
           2   defendant?
           3                 MR. PEREZ:  Your Honor, I have a final order of
           4   forfeiture.
14:47:52   5                 THE COURT:  As to what?
           6                 MR. PEREZ:  As to this defendant, Your Honor.
           7                 THE COURT:  Have you seen a copy of that?
           8                 MR. FAZEL:  I have not, Your Honor.
           9                 THE COURT:  Any objection?
14:48:03  10                 MR. FAZEL:  No.
          11                 THE COURT:  No?  Okay.  The defendant is also notified
          12   she has a right to appeal.  Since this was a jury conviction,
          13   she has a right to appeal the jury finding of guilty and the
          14   sentence assessed by the Court and the right to the appointment
14:48:31  15   of counsel on appeal if she cannot afford one.
          16                 Anything further from the government?
          17                 MR. PEREZ:  No, Your Honor.
          18                 THE COURT:  Anything further from the defense?
          19                 MR. FAZEL:  For the record, Your Honor, we would
14:48:41  20   object to the sentence as imposed.
          21                 THE COURT:  That is so noted.  Yes?
          22                 MR. MAGLIOLO:  I don't know if the Court addressed the
          23   fine.
          24                 THE COURT:  I'm going to find she doesn't have the
14:48:50  25   ability to pay a fine, and I will waive a fine in this case

14:48:54  1    because she has been assessed so much.  Thank you for bringing

       2    it to my attention.

       3              Now, anything further from the government?

       4         MR. PEREZ:  No, Your Honor.

14:49:01  5         THE COURT:  Anything further from the defense?

       6         MR. FAZEL:  No, Your Honor.

       7         THE COURT:  I want to thank the attorneys for their

       8    work in this case because it is a difficult case.  Everybody

       9    that worked on it, witnesses for both sides, I need to say

14:49:10 10    that, I appreciate everybody coming today.

      11              As of now, anything further from the probation

      12    department?

      13         THE PROBATION OFFICER:  No, Your Honor.

      14         THE COURT:  Thank you.  We will stand adjourned in

14:49:19 15    this case.

      16                          *  *  *  *

      17         I certify that the foregoing is a correct transcript from

      18    the record of proceedings in the above-entitled cause.

      19

      20    Date: August 11, 2016

      21

      22              /s/ Mayra Malone
               ---------------------------------------
      23              Mayra Malone, CSR, RMR, CRR
                     Official Court Reporter

      24

      25